IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OLGA ALEXANDRA YATZUS, )
)
Plaintiff, )
)
v. )    C.A. No. 05-103-SLR
)
APPOQUINIMINK SCHOOL DISTRICT )
and TONY MARCHIO, individually and in )    **TRIAL BY JURY DEMANDED**
his official capacity, MARY ANN )
MIECZKOWSKI, individually and in her )
official capacity, DONNA MITCHELL, )
individually and in her official capacity, and )
MARION PROFFITT, individually and in )
her official capacity, )
)
Defendants. )

**OPENING BRIEF OF DEFENDANTS TONY MARCHIO, MARY ANN
MIECZKOWSKI, DONNA MITCHELL, AND MARION PROFFITT
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# REDACTED

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

DATED:    July 10, 2006

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ............................................................................................ 2

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

I.      THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED
        FROM THE FIRST AMENDMENT RETALIATION CLAIM
        UNDER SECTION 1983 ........................................................................................... 4

A.      Not All Of The Individual Defendants Were "Ultimate Decision
        Makers" for the Adverse Actions, and Therefore Cannot Be Held
        Liable for First Amendment Violations ................................................................. 4

B.      The Individual Defendants Are Entitled To Qualified Immunity ....................... 5

1.      Yatzus has failed to allege a violation of her constitutional rights .................... 6

2.      Yatzus has failed to establish that the alleged constitutional
        violation was "clearly established" at the time the individual
        defendants acted ....................................................................................................... 9

II.     THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED
        FROM THE TITLE VII CLAIM ............................................................................. 13

III.    THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED
        FROM THE IMPLIED COVENANT CLAIM ....................................................... 14

IV.     THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED
        FROM THE INTENTIONAL INFLICTION OF EMOTIONAL
        DISTRESS CLAIM ................................................................................................... 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

Cases

*Acierno v. Cloutier*,
  40 F.3d 597 (3d Cir. 1994) ................................................................ 6, 9

*Anderson v. Creighton*,
  483 U.S. 635 (1987)......................................................................... 5, 10

*Andrews v. Philadelphia*,
  895 F.2d 1469 (3d Cir. 1990) .............................................................. 15

*Assaf v. Fields*,
  178 F.3d 170 (3d Cir. 1999) .................................................................. 9

*Avallone v. Wilmington Medical Center*,
  553 F. Supp. 931 (D. Del. 1982)........................................................... 14

*Beattie v. Madison County Sch. Dist.*,
  254 F.3d 595 (5th Cir. 2001) ................................................................. 4

*Brewster v. Board of Education of Lynwood Unified School District*,
  149 F.3d 971 (9th Cir. 1998) ............................................................... 13

*Butz v. Economou*,
  438 U.S. 478 (1978)............................................................................. 5

*Castetter v. Del. Dep't of Labor*,
  C.A. No. 01C-03-007-HDR, 2002 Del. Super. LEXIS 300,
  (Del. Super. Apr. 30, 2002) ................................................................. 14

*Ceballos v. Garcetti*,
  126 S. Ct. 1951 (2006)................................................................... passim

*Ceballos v. Garcetti, et al.*,
  361 F.3d 1168, 1187 (O'Scannlain, J., concurring)
  (citing cases), *rev'd* 126 S. Ct. 1951 (2006).......................................... 11

*In re City of Philadelphia Litig.*,
  49 F.3d 945 (3d Cir. 1995) ................................................................... 6

*Connelly v. Texas Dept. of Criminal Justice, et al.*,
  C.A. No. H-03-1581, 2005 U.S. Dist. LEXIS 27489
  (S.D. Tex. Oct. 25, 2005)...................................................................... 4

059265 1007

*Connick v. Myers*,
461 U.S. 138 (1983)..................................................................................... 8, 10, 11, 13

*County of Sacramento v. Lewis*,
523 U.S. 833 (1997)............................................................................................ 5

*Dartland v. Metropolitan Dade County*,
866 F.2d 1321 (11th Cir. 1989) .......................................................................... 13

*DiMeglio v. Haines*,
45 F.3d 790, 806 (4th Cir. 1995) ........................................................................ 13

*E.I. DuPont de Nemours and Co. v. Pressman*,
679 A.2d 436 (Del. 1996) ................................................................................... 14

*EEOC v. Avecia, Inc.*,
No. 03-320-SLR, 2003 U.S. Dist. LEXIS 19325
(D. Del. Oct. 23, 2003) ....................................................................................... 14

*Foxworth v. Pa. State Police*,
C.A. No. 03-CV-6795, 2005 U.S. Dist. LEXIS 6169
(3d Cir. Apr. 12, 2005) ....................................................................................... 14

*Garcetti v. Ceballos*,
543 U.S. 1186 (2005).......................................................................................... 11

*Gonzalez v. Comcast Corp.*,
C.A. No. 03-445-KAJ, 2004 U.S. Dist. LEXIS 14989
(D. Del. July 30, 2004) ....................................................................................... 14

*Gregorich v. Lund*,
54 F.3d 410 (7th Cir. 1995) ................................................................................ 13

*Guercio v. Brody*,
911 F.2d 1179 (6th Cir. 1990) (1991).................................................................. 13

*Hameli v. Nazario*,
C.A. No. 94-199-SLR, 1994 U.S. Dist. LEXIS 20523
(D. Del. Sept. 2, 1994) ......................................................................................... 9

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)............................................................................................. 5

*Hauge v. Brandywine Sch. Dist., et al.*,
131 F. Supp.2d 573 (3d Cir. 2001) ...................................................................... 12

*Kincade v. City of Blue Springs*,
64 F.3d 389 (8th Cir. 1995) ................................................................................ 13

DB01:2110769 1                                                                                 059265 1007

*Larsen v. Senate of the Commonwealth of Pennsylvania,*
   154 F.3d 82 (3d Cir. 1998) .................................................................................. 6

*Lee v. Mahalich,*
   847 F.2d 66 (3d Cir. 1988) .................................................................................. 9

*Lloyd v. Jefferson,*
   53 F. Supp. 2d 643 (D. Del. 1999)...................................................................... 9

*Malley v. Briggs,*
   475 U.S. 335 (1986)............................................................................................ 5

*Melton v. City of Oklahoma City,*
   879 F.2d 706 (10th Cir. 1989),
   *modified in part on other grounds on reh'g en banc,*
   928 F.2d 920 (1991)........................................................................................... 13

*Mitchell v. Forsyth,*
   472 U.S. 511 (1985)............................................................................................ 5

*Noyola v. Texas Department of Human Resources,*
   846 F.2d 1021 (5th Cir. 1988) ............................................................................ 13

*O'Connor v. Steeves,*
   994 F.2d 905 (1st Cir. 1993)............................................................................... 13

*Pickering v. Board of Educ.,*
   391 U.S. 563 (1968)...................................................................................... passim

*Rankin v. McPherson,*
   483 U.S. 378 (1987)............................................................................................ 8

*Rappa v. Hollins,*
   991 F. Supp. 367 (D. Del. 1997).......................................................................... 10

*Rouse v. Plantier,*
   182 F.3d 192 (3d Cir. 1999) ................................................................................ 9

*Sharrar v. Felsing,*
   128 F.3d 810 (3d Cir. 1997) ................................................................................ 6

*Sheridan v. DuPont,*
   100 F.3d 1061 (3d Cir. 1996) .............................................................................. 13

*Siegert v. Gilley,*
   500 U.S. 226 (1991)............................................................................................ 6

*Thomas v. Harford Mutual Ins. Co.,*
  No. 01C-01-046-HDR, 2003 Del. Super. LEXIS 268
  (Del. Super. July 25, 2003) .................................................................................................. 15

*Town of Nahant v. O'Connor,*
  510 U.S. 1024 (1993) .......................................................................................................... 13

*United States. v. Nat'l Treasury Employees,*
  513 U.S. 454 (1995) .............................................................................................................. 8

*We, Inc. v. Philadelphia,*
  174 F.3d 322 (3d Cir. 1999) ................................................................................................. 5

*Wilcoxon v. Red Clay Consol. Sch. Dist.,*
  No. 05-524-SLR (D. Del. June 30, 2006) ............................................................................ 6

<u>Statutes and Other Authorities</u>

14 *Del. C.* § 1410(a) ................................................................................................................ 4

DB01:2110769 1                                                                                                          059265 1007

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Olga Alexandra Yatzus ("Yatzus") was hired by Defendant, Appoquinimink School District (the "District"), on August 28, 2001, as a school psychologist. On May 5, 2003, Yatzus received notification that her contract would not be renewed due to performance problems documented in her personnel file. On June 3, 2003, Yatzus filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL"), alleging that she was terminated in retaliation for making an internal complaint of sexual harassment. She further alleged that she was discriminated against based on her race, gender, and disability. The DDOL dismissed the charge on October 21, 2004, making a no-cause determination.

On February 21, 2005, Yatzus filed the complaint in this case against the District and four individual defendants: Tony Marchio (Superintendent), Marion Proffitt (Assistant Superintendent), Mary Ann Mieczkowski (Director of Special Education Services), and Donna Mitchell (Principal of Middletown High School) (collectively "Individual Defendants"). In her Complaint, she alleged retaliation based on her sexual harassment complaint and also based on the exercise of her free speech under the First Amendment. She also made claims of violation of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress.

The parties have completed discovery, and all defendants have filed for Summary Judgment. This is the Individual Defendants' Opening Brief in support of their motion. The District has filed a separate brief contemporaneously herewith.

DB01:2110769 1                                                                                                    059265 1007

## SUMMARY OF ARGUMENT

1.    The Individual Defendants must be dismissed from the First Amendment retaliation claim under Section 1983.

(a)    None of the Individual Defendants was an ultimate decision maker with respect to any adverse action, as required for individual liability under Section 1983.

(b)    The Individual Defendants are entitled to qualified immunity because they could not have known that their actions violated Yatzus's First Amendment rights based on: (1) the unresolved legal issue of whether a public employee speaking pursuant to her job duties is protected by the First Amendment; and (2) the inherently difficult nature of applying the *Pickering* balancing test to a specific sets of facts.

2.    The Individual Defendants must be dismissed from the Title VII Count because individuals are not liable under Title VII.

3.    The Individual Defendants must be dismissed from the implied covenant of good faith and fair dealing claim because none of the Individual Defendants was a party to the employment contract.

4.    The Individual Defendants must be dismissed from the intentional infliction of emotional distress claim because claims of intentional infliction of emotional distress are precluded under the exclusivity provision of the Delaware Workers' Compensation statute.

2

## STATEMENT OF FACTS

Individual Defendants incorporate by reference the Statement of Facts contained in the District's Opening Brief.

## ARGUMENT

I. **THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED FROM THE FIRST AMENDMENT RETALIATION CLAIM UNDER SECTION 1983**

A. **Not All Of The Individual Defendants Were "Ultimate Decision Makers" for the Adverse Actions, and Therefore Cannot Be Held Liable for First Amendment Violations**

Only an ultimate decision maker can be held liable for First Amendment retaliation under Section 1983. *See Connelly v. Texas Dept. of Criminal Justice, et al.*, C.A. No. H-03-1581, 2005 U.S. Dist. LEXIS 27489 (S.D. Tex. Oct. 25, 2005) (*citing Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)). In *Beattie*, the Fifth Circuit Court of Appeals held that where a school principal and district superintendent merely recommended the plaintiff's termination to the board, they did not cause the adverse employment action and cannot be held liable under Section 1983. Similarly, Donna Mitchell ("Mitchell") gave input into Tony Marchio's ("Marchio") decision to recommend Yatzus's termination to the Board. A266; 267-68; 269-71; 142. Marchio made the recommendation to the Board to not renew Yatzus's contract; however, it was the Board who retained the final authority to terminate. 14 *Del. C.* § 1410(a). Therefore, none of the Individual Defendants can be held liable for Yatzus's termination, because they were not the ultimate decision makers.

With respect to Yatzus's written reprimands, Yatzus had the opportunity to grieve her written reprimands, and the superintendent has the final authority on whether a reprimand would be placed in an employee's file. A256-57. Therefore, Mary Ann Mieczkowski ("Mieczkowski"), Mitchell, and Marion Proffitt ("Proffitt") have no liability under Section 1983 for the reprimands, because their decisions were reviewable.

**B.     The Individual Defendants Are Entitled To Qualified Immunity**

The Individual Defendants, as governmental officials, are entitled to qualified immunity from Yatzus's First Amendment claim. Qualified immunity gives the Individual Defendants "immunity from suit rather than a mere defense to liability . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original); *We, Inc. v. Philadelphia*, 174 F.3d 322, 325 (3d Cir. 1999). This entitlement "is effectively lost if a case is erroneously permitted to go to trial." *We, Inc.*, 174 F.3d at 325 (*quoting Mitchell*, 472 U.S. at 526). The Individual Defendants' entitlement to qualified immunity is a question of law, and the burden is on the plaintiff to defeat their claim of qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987).

Under the qualified immunity doctrine, the Individual Defendants are "shielded from liability for civil damages insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See also Harlow*, 457 U.S. at 807 ([O]ur cases make plan that "qualified immunity represents the norm."); *Butz v. Economou*, 438 U.S. 478, 508 (1978) ("qualified immunity from damages should be the general rule for executive officials charged with constitutional violations . . . .").

1.      **Yatzus has failed to allege a violation of her constitutional rights**

The first step in dealing with a claim of qualified immunity is to determine

"whether a plaintiff has alleged a violation of a constitutional right at all." *Siegert v.*

*Gilley*, 500 U.S. 226, 231 (1991); *Larsen v. Senate of the Commonwealth of*

*Pennsylvania*, 154 F.3d 82, 86 (3d Cir. 1998); *In re City of Philadelphia Litig* , 49 F.3d

945, 961 (3d Cir. 1995) (*quoting Acierno v. Cloutier*, 40 F.3d 597, 606 n.7 (3d Cir.

1994)). "Deciding this purely legal question permits courts expeditiously to weed out

suits which fail the test without requiring a defendant who rightfully claims qualified

immunity to engage in expensive and time consuming preparation to defend the suit on

its merits." *Siegert*, 500 U.S. at 232; *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir.

1997).

As discussed in the District's Opening Brief, Yatzus has failed to allege a

viable First Amendment claim because under the United States Supreme Court's holding

in *Ceballos v. Garcetti*, 126 S. Ct. 1951 (2006). The United States Supreme Court in

*Garcetti* held that "when public employees make statements pursuant to their official

duties, they are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline." *Id.* at

1960 (emphasis added). *See also Wilcoxon v. Red Clay Consol. Sch. Dist.*, No. 05-524-

SLR, Mem. Op. at 12 (D. Del. June 30, 2006) (holding that the first step in evaluating

whether speech by a public employee warrants constitutional protection is to "determine[]

whether the employee spoke as a citizen or an employee") (*citing Garcetti*).[1]  Yatzus

claims that she engaged in two different kinds of speech protected by the First

_____

[1]This opinion is not available electronically and is attached hereto.

Amendment: she "complained about violations of federal and state law with respect to treatment [of students with] special needs" and she "assist[ed] parents in raising claims against the District." A131. She testified that she was acting pursuant to her duties as a school psychologist with respect to both of these actions. A220; 223-25.

> Q.    Did you think it was part of your job as school psychologist to report this concern?
>
> A.    I think it's part of the role of the school psychologist to be an advocate for children and to see what we could do to make sure we're doing everything that we can to address the law and the needs of the student . . .
>
> Q.    So in your role . . .as student advocate, you thought it was important to report what you perceived as illegal behavior?
>
> A.    Yes
>
> Q.    Did you think that it was a part of your job?
>
> A.    I felt that it was part of my job.
>
> \*    \*    \*
>
> Q.    And your assistance with the OCR complaints, did you think that was part of your job as school psychologist?
>
> A.    I think that as an advocate for children, absolutely.

A210-11; 223. Yatzus further testified that an attorney at the Delaware State Education Association ("DSEA") advised her that she would be violating her responsibilities as a school psychologist if she did not report the alleged discrimination against special needs students and that he recommended pursuing her concerns with the Office of Civil Rights ("OCR"). A211-12; 224.

In *Garcetti*, plaintiff Ceballos, a deputy district attorney, had reported to his supervisor that he suspected a police officer may have falsified an affidavit to obtain a

7

search warrant. *Id.* at 1955. He prepared a memo explaining his concerns and

recommending dismissal of the case. *Id.* at 1955-56. Despite Ceballos's concerns, his

supervisor decided to proceed with the prosecution. *Garcetti*, 126 S. Ct. at 1956.

Ceballos claimed that in the aftermath of these events he was subjected to a series of

retaliatory actions, including reassignment of position, transfer to another courthouse, and

denial of a promotion. *Id.* at 1956.

The Supreme Court noted that "public employees do not surrender all their

First Amendment rights by reason of their employment. Rather, the First Amendment

protects a public employee's right, in certain circumstances, *to speak as a citizen*

*addressing matter of public concern.*" *Id.* at 1957. (emphasis added) (citing *Pickering v*

*Board of Educ.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 147 (1983);

*Rankin v. McPherson*, 483 U.S. 378, 384 (1987); *United States. v. Nat'l Treasury*

*Employees*, 513 U.S. 454, 466 (1995). With regard to Ceballos's memo, the Court held:

> The significant point is that the memo was written
> pursuant to Ceballos' official duties. Restricting
> speech that owes its existence to a public
> employee's professional responsibilities does not
> infringe any liberties the employee might have
> enjoyed as a private citizen. It simply reflects the
> exercise of employer control over what the
> employer itself has commissioned or created.

*Garcetti*, 126 S. Ct. at 1960. Like the plaintiff in *Garcetti*, Yatzus wrote internal memos

describing violations she believed it was her obligation to report. It is immaterial, as the

Court noted in *Garcetti*, whether Yatzus received any personal gratification from her

reports–the point is that the speech was within her job duties. *Id.*

The Court in *Garcetti* noted that the parties in that case "did not dispute

that Ceballos wrote his memo pursuant to his employment duties," and therefore it need

not elaborate on the framework necessary for analyzing the scope of an employee's

8

duties. *Garcetti,* 126 S. Ct. at 1961. Like the plaintiff in *Garcetti,* Yatzus testified that all of her allegedly protected activities were part of her job responsibilities as a school psychologist. Therefore, the case is indistinguishable from *Garcetti* and must be governed by its holding. Yatzus's speech was made pursuant to her job responsibilities and is therefore not protected by the First Amendment.

**2.    Yatzus has failed to establish that the alleged constitutional violation was "clearly established" at the time the individual defendants acted**

Assuming, *arguendo,* that Yatzus properly alleged a free speech claim, the second step in the analysis is to determine whether the "unlawfulness of the action would have been apparent to a reasonable official." *Assaf v. Fields,* 178 F.3d 170, 174 (3d Cir. 1999). In other words, the Individual Defendants cannot be liable unless the constitutional right allegedly violated was "'clearly established' at the time [they] acted." *Acierno,* 40 F.3d at 606 (citing *Siegert,* 500 U.S. at 232); *Lloyd v. Jefferson,* 53 F. Supp. 2d 643, 678 (D. Del. 1999).

A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Rouse v. Plantier,* 182 F.3d 192, 196 (3d Cir. 1999) (citing *Anderson,* 483 U.S. at 640 (1987)). Indeed, "the unlawfulness of [his] action must be apparent from previous court decisions." *Hameli v. Nazario,* C.A. No. 94-199-SLR, 1994 U.S. Dist. LEXIS 20523 (D. Del. Sept. 2, 1994), at *27; *Lee v. Mahalich,* 847 F.2d 66, 69 (3d Cir. 1988) (qualified immunity should be denied only if "a reasonable jury could find that the unlawfulness of the [defendants'] actions was so 'apparent' that no reasonable [official] could have believed his [or her] actions were lawful."). There must also be at least some factual correspondence between the legal precedents and the issue at hand for

the Individual Defendants to be liable. *Rappa v. Hollins*, 991 F. Supp. 367, 375 (D. Del.

1997) (citing *Anderson*, 483 U.S. at 640).

        In this case, a reasonable official could not have known that Yatzus's First

Amendment rights were being violated based on (1) the undecided issue of whether a

public employee speaking pursuant to her job duties is protected by the First

Amendment; and (2) the inherently difficult nature of applying the *Pickering* balancing

test to a specific sets of facts.

**a.**    **The law was not "clearly established" because of the undecided issue of whether a public employee speaking pursuant to her employment was protected by the First Amendment**

        At the time the Individual Defendants took any alleged retaliatory action,

from 2001-2003, the law was not clearly established as to whether a public employee

speaking *as an employee* (as opposed to a public citizen) was protected by the First

Amendment. In *Connick*, the U.S. Supreme Court held that in order to be protected by

the First Amendment, a plaintiff's speech must address a matter of "public concern." *Id.*

at 147. The Court in *Connick* noted that it had applied the *Pickering* balancing test "only

when [as in this case] the employee spoke <u>as a citizen</u> upon matters of public concern'

rather than <u>as an employee</u> upon matters only of personal interest." *Id.* (emphasis added).

Courts spent the next twenty years grappling with the meaning of this distinction.

        By 2004, the Third Circuit had not addressed the issue of whether an

employee speaking as an employee was protected by the First Amendment, while six

other circuit courts had ruled that employee speech was not protected, and one had ruled

it was. *See Ceballos v. Garcetti, et al.*, 361 F.3d 1168, 1187 (O'Scannlain, J., concurring)

                                                       

(citing cases[2]), *rev'd* 126 S. Ct. 1951 (2006). As noted by the concurrence in *Garcetti*,

"such deep confusion within the circuits over the scope of *Connick*–indeed, over the

scope of their own cases interpreting *Connick*–seems a clarion call for higher review."

*Id* at 1188.

       In fact, the split among circuits and the significance of the issue were

sufficiently compelling for the United States Supreme Court to grant certiorari in 2005.

*See Garcetti v. Ceballos*, 543 U.S. 1186 (2005). Not until May 30, 2006, was this issue

clearly resolved, when the U.S. Supreme Court held that "[w]hen public employees make

statements pursuant to their official duties, they are not speaking as citizens for First

---

[2]*Gonzalez v. City of Chicago*, 239 F.3d 939, 942 (7th Cir. 2001) ("There are still limits in public employment as to what can be fairly characterized as speech 'as a citizen' on a matter of public concern. Speech exercised by a public employee in the course of his employment will rarely fit the mold of private speech by a citizen."); *Urofsky v. Gilmore*, 216 F.3d 401, 407 (4th Cir. 2000) (*en banc*) ("Critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is 'made primarily in the [employee's] role as citizen or primarily in his role as employee.'") (*quoting Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362 (5th Cir. 1986) (alteration in original)); *Buazard v. Meridith*, 172 F.3d 546, 548-49 (8th Cir. 1999) ("Unless the employee is speaking as a concerned citizen, and not just as an employee, the speech does not fall under the protection of the First Amendment . . . . There is no indication that [the plaintiff], in making, or refusing to change, his statements, was taking any action as a concerned citizen, rather than simply as an employee following orders or refusing to follow them."); *Gillum v. City of Kerrville*, 3 F.3d 117, 120-21 (5th Cir. 1993) ("We do not focus on the inherent 'importance' of the subject matter of the speech, but on the extent to which the terminated employee spoke as a citizen or employee . . . ."); *Thomson v. Scheid*, 977 F.2d 1017, 1020 (6th Cir. 1992) ("First Amendment protection extends to a public employee's speech when he speaks as a citizen on a matter of public concern, but does not extend to speech made in the course of acting as a public employee."); *Koch v. Hutchinson*, 847 F.2d 1436, 1442-43 (10th Cir. 1988) (*en banc*) (declining "to establish a per se rule exempting speech made in the course of an employee's official duties," but viewing "that fact as militating against a finding that the speech addressed matters of public concern" and noting that "it is a significant factor in the balancing required under *Pickering*").

11

Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126 S. Ct. at 1960.

It is clear, therefore, that the Individual Defendants should not be held liable for damages based on their belief that Yatzus's speech was not protected under the First Amendment, since not even the circuit courts were in agreement on this issue at the time they took the allegedly retaliatory action. Therefore, a "reasonable official" acting prior to the May 2006 opinion in *Garcetti*, would not have known that an employee speaking in the context of her role as school psychologist would be protected under the First Amendment.

**b.   The law is not "clearly established" because the existence of rights depends on a fact-sensitive balancing test**

Furthermore, the Individual Defendants could not have known their conduct violated Yatzus's First Amendment rights because of the inherent difficulty of applying the *Pickering* balancing test. The Third Circuit Court of Appeals has held that "given the fact-intensive nature of the *Pickering* balancing test, the right is not clearly established such that the Individual Defendants should have known whether their conduct violated [the plaintiff's] First Amendment rights." *See Hauge v. Brandywine Sch. Dist., et al.*, 131 F. Supp.2d 573, 584 (3d Cir. 2001) (granting individual defendants' motion for qualified immunity based on the inherently complicated nature of the *Pickering* balancing test). Courts have been especially reluctant to find that the law is "clearly established" in First Amendment retaliation cases because the existence of the rights allegedly violated turns upon a sensitive balancing of interests. The *Pickering* test requires particularized balancing on the unique facts presented in each case, and the United States Supreme Court has specifically states that the *Pickering* balance is a "difficult" one to strike.

*Connick*, 461 U.S. at 150. Because under *Pickering*, the determination of "whether a

public employee's expression is constitutionally protected requires a fact-sensitive,

context-specific balancing of competing interests, the law regarding public employee free

speech claims will rarely, if ever, be sufficiently 'clearly established' to preclude qualified

immunity." *Brewster v. Board of Education of Lynwood Unified School District*, 149

F.3d 971, 979-80 (9th Cir. 1998). Although the Third Circuit has not ruled on the issue,

eight other Circuits follow the reasoning in *Brewster*.[3]  As the Seventh Circuit noted,

because "[d]ifferences in the nature of the competing interests from case to case make it

difficult for a government official to determine, in the absence of [very closely analogous

case law]," how the *Pickering* balance should be struck, officials should not be held

"liable for damages simply because they legitimately but mistakenly believed that the

balancing of interests tipped in the [government's] favor." *Gregorich*, 54 F.3d at 414-15.

## II.     THE INDIVIDUAL DEFENDANTS MUST
##         BE DISMISSED FROM THE TITLE VII CLAIM

Congress did not intend to hold individual employees liable under

Title VII. *Sheridan v. DuPont*, 100 F.3d 1061, 1078 (3d Cir. 1996).  "Because the only

proper defendant in a Title VII case is the 'employer,' pursuing such claims against the

individuals in their official capacities would be redundant." *Foxworth v. Pa. State Police*,

---

[3] *Kincade v. City of Blue Springs*, 64 F.3d 389, 398 (8th Cir. 1995); *DiMeglio v. Haines*,
45 F.3d 790, 806 (4th Cir. 1995) ; *O'Connor v. Steeves*, 994 F.2d 905, 917 n.11 (1st Cir.
1993) ; *Town of Nahant v. O'Connor*, 510 U.S. 1024 (1993); *Guercio v. Brody*, 911 F.2d
1179, 1183-85 (6th Cir. 1990) (1991); *Melton v. City of Oklahoma City*, 879 F.2d 706,
729 (10th Cir. 1989), *modified in part on other grounds on reh'g en banc*, 928 F.2d 920
(1991); *Dartland v. Metropolitan Dade County*, 866 F.2d 1321, 1323 (11th Cir. 1989);
*Noyola v. Texas Department of Human Resources*, 846 F.2d 1021, 1025 (5th Cir. 1988);
*Gregorich v. Lund*, 54 F.3d 410 (7th Cir. 1995).

C.A. No. 03-CV-6795, 2005 U.S. Dist. LEXIS 6169, at *13 (3d Cir. Apr. 12, 2005).

Therefore, the Individual Defendants must be terminated as parties to the Title VII claim.

## III.    THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED FROM THE IMPLIED COVENANT CLAIM

The covenant of good faith and fair dealing is a contractual obligation which has been applied to the employment relationship under Delaware law. *See E.I.*
*DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 440 (Del. 1996). Because the Individual Defendants in this case were not parties to the employment contracts with the plaintiff, they cannot be subject to the Yatzus's breach of contract claims. *See, e.g.,*
*Gonzalez v. Comcast Corp.*, C.A. No. 03-445-KAJ, 2004 U.S. Dist. LEXIS 14989, at **19-20 (D. Del. July 30, 2004) (granting summary judgment to individual defendants on implied covenant claim); *Castetter v. Del. Dep't of Labor*, C.A. No. 01C-03-007-HDR, 2002 Del. Super. LEXIS 300, at **7-8 (Del. Super. Apr. 30, 2002) (dismissing breach of good faith and fair dealing claim against individual defendant because "only a party to a contract can breach the implied covenant"). Therefore, summary judgment must be granted to the Individual Defendants on the implied covenant claim.

## IV.    THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED FROM THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

The Individual Defendants must be dismissed from the intentional infliction of emotional distress ("IIED") claim, because it is plainly barred by the Delaware workers' compensation law, as held by this Court in *EEOC v. Avecia, Inc.*, No. 03-320-SLR, 2003 U.S. Dist. LEXIS 19325, at *13 (D. Del. Oct. 23, 2003). Moreover, none of the Individual Defendants engaged in any conduct sufficiently "outrageous" to qualify for the tort of IIED. *See Avallone v. Wilmington Medical Center*, 553 F. Supp. 931, 938 (D. Del. 1982). Indeed, the Third Circuit has noted that it is extremely rare in

the employment context for conduct rise to the level of being outrageous for purposes of

the tort of IIED. *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir. 1988); *Andrews v.*

*Philadelphia*, 895 F.2d 1469, 1486-87 (3d Cir. 1990).[4]

## CONCLUSION

For the foregoing reasons and authorities cited herein, summary judgment

must be granted as to the Individual Defendants.

YOUNG CONAWAY STARGATT & TAYLOR, LLP


/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

DATED:        July 10, 2006

---

[4]Both cases apply Pennsylvania law which, like Delaware, has adopted the Restatements
with regard to the tort of IIED. *See, e.g., Thomas v. Harford Mutual Ins. Co.*, No. 01C-
01-046-HDR, 2003 Del. Super. LEXIS 268, at **7-8 (Del. Super. July 25, 2003).

DB01:2110769 1                                                                        059265 1007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


RICHARD WILCOXON,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )   Civ. No. 05-524-SLR
                                     )
RED CLAY CONSOLIDATED SCHOOL         )
DISTRICT BOARD OF EDUCATION and      )
JANAY FREEBERY,                      )
                                     )
          Defendants.                )

---

Jeffrey K. Martin, Esquire of Margolis Edelstein, Wilmington, Delaware.  Counsel for Plaintiff.

Barry M. Willoughby, Esquire of Young, Conoway, Stargatt & Taylor, Wilmington, Delaware.  Counsel for Defendants.

---


MEMORANDUM OPINION


Dated:  June 30, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

Plaintiff Richard Wilcoxon ("plaintiff") filed the present action on July 22, 2005, alleging claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., Title I of the Civil Rights Act of 1991 and the First Amendment of the United States Constitution against Red Clay Consolidated School District ("District") and Janay Freebery ("Freebery") (collectively called "defendants").[1]  (D.I. 1 at ¶1)  Plaintiff seeks injunctive relief and damages.  (Id.)  Presently before the court is defendants' motion to dismiss plaintiff's First Amendment, wrongful termination, breach of the covenant of good faith and fair dealing and defamation claims.[2]  (D.I. 7)  The court has jurisdiction pursuant to 28 U.S.C § 1331, § 1343, § 1367 and 42 U.S.C. § 1988.  (Id. at ¶5)  For the following reasons, the court denies defendants' motion to dismiss the First Amendment retaliation and wrongful termination claims.  The court grants defendants' motion to dismiss plaintiff's breach of the covenant of good faith and fair dealing claim.  The court denies defendant's motion to dismiss plaintiff's defamation claim.

---

[1] Defendant District is and was at all times relevant to this action a Delaware public school district operating under the laws of and within the State of Delaware.  (D.I. 1 at ¶3) Likewise, defendant Freebery is and has at all times relevant to this suit been a resident of the State of Delaware.  (Id.)

[2] Respectively, these claims are listed as counts III - VI in plaintiff's complaint.  (D.I. 1 at ¶ 86-97)

## II.   BACKGROUND

Plaintiff began his employment with defendant District in October of 2002.  (D.I. 1 at ¶ 6)  He was employed as a Physical Education and Health teacher at Skyline Middle School in Pike Creek, Delaware.  (<u>Id.</u>)  Throughout the fall and winter of 2002, plaintiff team-taught[3] with a long-term substitute teacher who was filling in for defendant Freebery.  (<u>Id.</u> at ¶ 7)  Defendant Freebery returned from sabbatical in early 2003 and began team-teaching with the plaintiff.  (<u>Id.</u>)  Upon returning to work, plaintiff alleges that defendant Freebery was frequently tardy or absent during class time.[4]  (<u>Id.</u> at ¶ 9)

In the fall of 2003, plaintiff and defendant Freebery continued to team-teach.  (<u>Id.</u> at ¶ 11)  They conducted the Student Leader Program each morning and jointly taught physical education and health classes.  (<u>Id.</u>)  Once again defendant Freebery arrived late almost every day and on some occasions did not arrive until morning duty was over.  (<u>Id.</u> at ¶ 12)  Furthermore, she frequently left the classroom during regular

---

[3] Team-teaching is a style of teaching whereby two teachers work together to teach a large group of children a single subject.  The methodology is premised on the idea that the two teachers' combined knowledge will provide a more meaningful learning experience for the students.  (D.I. 1 at ¶ 7)

[4] Plaintiff did not report defendant Freebery's actions during the 2002-2003 school year because of his status as a new teacher and the fact that defendant Freebery was recently divorced and a single mother.  (D.I. 1 at ¶ 10)

class time, forcing plaintiff to cover her portion of the class.
(Id.)  According to plaintiff, defendant Freebery's reasons for
leaving class were not legitimate[5] and, in October of 2003,
plaintiff confronted defendant Freebery to inform her that it was
unfair for her to continually impose her class responsibilities
on him.  (Id. at ¶ 13, 15)

Shortly thereafter, plaintiff learned from other teachers
that defendant Freebery had told members of the staff and
administration that plaintiff was "difficult to work with."
(Id. ¶ 16)  Plaintiff sought advice from Linda Filer and Tom
Karpinski, two senior members of the teaching staff.  (Id. at ¶
17)  Plaintiff was counseled to keep a written journal of dates
and times when defendant Freebery was absent, as well as other
pertinent information about defendant Freebery's conduct.
(Id. at ¶ 18)  Plaintiff believed that the journal would protect
him from any discipline in the event that a student was injured
while defendant Freebery was absent from the class.  (Id.)
Plaintiff took Ms. Filer and Mr. Karpinski's advice and began
recording defendant Freebery's absences and actions in a journal
which was kept locked in his office.  (Id.)

On December 15, 2003, plaintiff was ill and reported off

---

[5] Plaintiff claims that defendant Freebery used this time to
have breakfast with her boyfriend, work on her Master's degree
project or watch her daughter's swim lessons.  (D.I. 1 at ¶ 13 -
14)

from work.  (<u>Id.</u> at ¶ 19)  That day, acting Assistant Principal
Rumford entered plaintiff's office to locate plaintiff's student
list for the substitute.[6]  (<u>Id.</u> at ¶ 19-20)  The student list was
never located but Mr. Rumford did locate the journal and gave it
to defendant Freebery, who subsequently turned it over to Acting
Principal Basara.[7]  (<u>Id.</u>)  Shortly thereafter, Mr. Rumford called
plaintiff and informed him of these events.  (<u>Id.</u> at ¶ 20)

When plaintiff returned to work the next morning, he was
required to meet with Ms. Basara to discuss the journal.  (<u>Id.</u> at
¶ 23)  Plaintiff explained his reasons for keeping the journal
but was verbally reprimanded by Ms. Basara.[8]  (<u>Id.</u>)  Ms. Basara
also demanded to know the identity of those who advised him to
keep the journal.  (<u>Id.</u>)  Fearing that Ms. Basara would retaliate
against Ms. Filer and Mr. Karpinski, plaintiff only revealed Ms.
Filer's name.  (<u>Id.</u>)  Later that day, plaintiff and Ms. Filer met
with Mr. Rumford to ensure that Mr. Rumford would not reveal Ms.
Filer's identity to defendant Freebery.  (<u>Id.</u> at ¶ 24)

---

[6] Plaintiff claims that "Mr. Rumford's justification for
going into [plaintiff's] locked office is dubious due to the fact
that Mr. Rumford has access to [plaintiff's] student list on his
own computer."  (D.I. 1 at ¶ 20)

[7] Mr. Rumford claimed that he did not read the journal and
only gave it to defendant Freebery so that she could determine if
the information therein would be helpful to plaintiff's
substitute.  (D.I. 1 at ¶ 20)

[8] This was the first time in his teaching career that
plaintiff was subject to discipline.  (D.I. 1 at ¶ 21)

4

On December 17, 2003, Ms. Basara called plaintiff into her office in order to find out the identity of the other staff member who advised him to record defendant Freebery's absences. (Id. at ¶ 25)  Ms. Basara informed plaintiff of the numerous ways that she could ascertain the information and also stated that they would have to determine how plaintiff and defendant Freebery could finish out the rest of the year working together.  (Id.) When plaintiff questioned why Ms. Basara limited her statement to "the rest of the school year," Ms. Basara replied, "[Y]ou're not tenured are you?"[9]  (Id.)

Later that day, plaintiff was unexpectedly called into another meeting.  (Id. at ¶ 26)  In attendance were defendant Freebery, Mr. Rumford and Ms. Basara.  (Id.)  During the meeting, defendant Freebery repeatedly demanded to know the identities of the staff members who advised him to keep the journal.  (Id.) When he refused to reveal Ms. Filer and Mr. Karpinski, defendant Freebery accused plaintiff of saying inappropriate things to her and threatened to file a sexual harassment complaint against him.[10]  (Id.)

After school concluded that day, plaintiff again met with Mr. Rumford and Ms. Basara to complain about defendant Freebery's

---

[9] Plaintiff interpreted this as a direct threat to his career.  (D.I. 1 at ¶ 25)

[10] Plaintiff denies making any inappropriate statements. (D.I. 1 at ¶ 26)

false accusations and threats. (<u>Id.</u> at ¶ 31)  In the course of
the meeting, plaintiff noted that defendant Freebery had never
voiced concern over anything that plaintiff had said prior to the
discovery of the journal. (<u>Id.</u>)  When he inquired into what he
said that offended defendant Freebery, he received no answer but
"both Mr. Rumford and Ms. Basara indicated that [defendant]
Freebery was not uncomfortable with anything [plaintiff] had said
until the journal was found." (<u>Id.</u>)  Ms. Basara also assured
plaintiff that he was not in trouble. (<u>Id.</u>)  Plaintiff then
informed Ms. Basara that defendant Freebery frequently brought up
the topic of sex in the course of their conversations. (<u>Id.</u>)

On January 22, 2004, plaintiff received a letter in his
school mailbox at 11:30 a.m. stating that he needed to report to
Ms. Basara's office for an after-school meeting. (<u>Id.</u> at ¶ 33)
Plaintiff was not informed of the topic of the meeting or who
would be present. (<u>Id.</u>)  When he asked Ms. Basara whether the
meeting warranted union representation, she informed him that "it
might." (<u>Id.</u>)  Plaintiff requested that two union
representatives attend the meeting but they were unable to
because of the short notice. (<u>Id.</u>)  When plaintiff informed Ms.
Basara of his inability to secure union representation, she
informed him that he was still required to attend because she had

6

already arranged for other individuals to be present.[11]   (Id. at
¶ 34)

At the meeting, Ms. Basara presented plaintiff with a
disciplinary letter concluding that he had made inappropriate
comments about defendant Freebery.  (Id. at ¶ 35)  Because
plaintiff disagreed with the conclusions in the letter, plaintiff
refused to sign it.  (Id.)  He then informed Ms. Basara that
before the meeting proceeded any further, he wanted to have union
representation present.  (Id.)  Ms. Basara refused his request
and instructed him not to leave until he received two other
disciplinary letters.  (Id.)  The second disciplinary letter
referred to plaintiff's failure to include a class list or bell
schedule in his emergency lesson plans.[12]  (Id. at ¶ 36)  When
plaintiff asked to see the lesson plans, he was informed that
they did not have them.  (Id.)  The third disciplinary letter
referenced plaintiff's failure to sign up for after-school bus
duties.  (Id. at ¶ 37)  As a result, other teachers and
administrators had to make up for his absences.[13]  (Id.)

---

[11] Frank Rumford and Bob Bartoli attended the January 22,
2004 meeting.  (D.I. 1 at ¶ 34)

[12] Emergency lesson plans are plans the teacher stores in
the main office in case the teacher is unable to come to school
on any particular day.  (D.I. 1 at ¶ 36)  The plans include
everything that a substitute teacher would need to know to run
the teacher's class.  (Id.)

[13] Plaintiff claims that on January 7, 2004, another faculty
member made an error in signing up for bus duty.  (D.I. 1 at ¶

7

On February 22, 2004, plaintiff filed with the Delaware
Department of Labor a Charge of Discrimination, alleging gender
discrimination.[14]  (Id. at ¶ 46)  On February 25, 2004, plaintiff
met with Anthony Orga, Director of Secondary Education for the
District.  (Id. at ¶ 43)   Plaintiff informed Mr. Orga of the
events that had transpired between himself and Ms. Basara,
defendant Freebery and Mr. Rumford.  (Id.)  He also expressed
concerns about his treatment by defendant District.  (Id.)  After
the meeting, plaintiff wrote Mr. Orga a number of letters
following up on the topic.  (Id.)  He never received a response.
(Id.)

On April 21, 2004, Ms. Basara entered plaintiff's classroom
and informed him that she was going to conduct an unannounced
observation.[15]  (Id. at ¶ 48)  After the observation, plaintiff

_____

38)  Because of the error, numerous students were crowded onto
buses.  (Id.)  The teacher was not disciplined.  (Id.)

[14] Defendant District became aware of plaintiff's filing
with the Department of Labor in mid to late March 2004.  (D.I. 1
at ¶ 47)

[15] An observation is where an administrator observes a class
and details the teacher's effectiveness and the students'
response.  (D.I. 1 at ¶ 48)  Based on the observations, the
administrator makes a subjective determination about the
teacher's effectiveness.  (Id.)  If the teacher is deemed
ineffective, he or she is put on an Individual Improvement Plan
designed to correct the alleged deficiencies.  (Id.)  Failure to
improve can be grounds for termination.  (Id.)  Contrary to an
announced observation, an unannounced observation occurs when an
administrator shows up at the teacher's classroom with no
advanced notice or preliminary discussion with the teacher to be
observed.  (Id.)

immediately contacted Mr. Orga because he felt that Ms. Basara's objectivity was tainted due to her knowledge that he had filed a Charge of Discrimination against defendant District. (<u>Id.</u> at ¶ 50)

Plaintiff received negative results from Ms. Basara. (<u>Id.</u> at ¶ 51) This was the first negative observation plaintiff had ever received. (<u>Id.</u>) Plaintiff again contacted Mr. Orga expressing his misgivings about Ms. Basara's objectivity. (<u>Id.</u> at ¶ 54) He also carbon copied the Superintendent of defendant District requiring that the letter be stricken from his personnel file. (<u>Id.</u>) In response, Mr. Orga informed plaintiff that Ms. Basara had done nothing improper and that the poor observation would remain in the file. (<u>Id.</u>)

On May 5, 2004, plaintiff was called into another meeting with Ms. Basara. (<u>Id.</u> at ¶ 55) Ms. Basara retained the services of Tom Meade, a union representative, to act on plaintiff's behalf.[16] (<u>Id.</u>) At the meeting, Ms. Basara presented plaintiff with another disciplinary letter addressing plaintiff's failure to properly secure a small sum of money he received from students for an American Heart Association event which was subsequently stolen from his desk.[17] (<u>Id.</u> at ¶ 56)

---

[16] Plaintiff points out that Mr. Meade was not personally chosen by the plaintiff. (D.I. 1 at ¶ 55)

[17] Plaintiff notes that two other teachers had failed to secure money properly that same year but were not disciplined. (D.I. 1 at ¶ 56)

On May 11, 2004, plaintiff was informed by a union representative that he was to meet with Ms. Basara later that day. (<u>Id.</u> at ¶ 61) Plaintiff was given another disciplinary letter, this time stating that plaintiff's lesson plans were inappropriate.[18] (<u>Id.</u>) Defendant Freebery, using the same lesson plans, never received negative comments. (<u>Id.</u> at ¶ 62)

On May 14, 2004, plaintiff was again called into Ms. Basara's office for a meeting. (<u>Id.</u> at ¶ 69) Although Ms. Basara had secured union representation for plaintiff, he objected to the meeting because he had not been given forty-eight hours notice pursuant to Article 4:4.1 of the Collective Bargaining Agreement between defendant District and the Red Clay Education Association Affiliate of NCCEA-DSEA-NEA, Inc. ("Collective Bargaining Agreement").[19] Notwithstanding plaintiff's objection, Ms. Basara proceeded with the meeting and handed plaintiff a letter stating that defendant District would not renew his contract for the following school year. (<u>Id.</u> at ¶ 69) When plaintiff requested the reasons for non-renewal, he was sent a letter stating that he was terminated because of poor lesson plans, poor classroom management and for making

---

[18] In 2003, plaintiff received a grade of "exemplary" for instructional planning on his Performance Appraisal. (D.I. 1 at ¶ 67)

[19] The collective bargaining agreement was effective at all times relevant to this suit.

inappropriate comments.[20]   (<u>Id.</u> at ¶ 70)

On June 9, 2004, plaintiff filed another Charge of
Discrimination with the Delaware Department of Labor claiming
retaliation by defendant District for his filing the original
charge of discrimination.  (<u>Id.</u> at ¶ 75)  After conducting an
investigation, the Department of Labor found reasonable cause to
believe that plaintiff was disciplined and terminated in a
discriminatory manner by defendant District in retaliation for
filing the Charges of Discrimination.  (<u>Id.</u> at ¶ 77)
Accordingly, plaintiff was issued a Final Determination and Right
to Sue Notice on April 25, 2005.  (<u>Id.</u>)

## III. STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6),
the court must accept as true all material allegations of the
complaint and it must construe the complaint in favor of the
plaintiff.  <u>See</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage</u>
<u>Resorts, Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998).  "A complaint
should be dismissed only if, after accepting as true all of the
facts alleged in the complaint, and drawing all reasonable

_____

[20] Notwithstanding the reasons detailed in the termination
letter, in plaintiff's June 10, 2004 yearly performance
appraisal, he was given an "effective" rating for his classroom
management.  (D.I. 1 at ¶ 76)  Further, at plaintiff's Non-
Renewal Hearing on July 28, 2004, Dr. Andrzejewski,
Superintendent of defendant District, acknowledged that two of
the reasons should not be considered because there was no
conclusive evidence of inappropriate comments or poor lesson
plans.  (<u>Id.</u> at ¶ 70)

inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

## IV. DISCUSSION

### A. Plaintiff's First Amendment Claim

Defendants argue that plaintiff cannot maintain a proper claim under the First Amendment because he did not engage in protected speech. In evaluating whether speech by a public employee warrants constitutional protection, the court must engage in a three-step analysis. First, the court determines whether the public employee spoke as a citizen or an employee. Garcetti v. Ceballos, 126 S.Ct. 1951 (2006). Second, the court determines whether, in light of the content, form and context of the entire record, the speech touched on matters of public concern. Connick v. Myers, 461 U.S. 138, 146 (1983). Third, the value of the employee's speech must outweigh "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." Id. at 150. Determining whether the speech touched on matters of public concern and

12

whether the value of the speech outweighs governmental interests
in efficiency are questions of law for the court.  Id. at 148.
Accordingly, a discharged public employee has no right to
judicial review if the expression is not related to a matter of
public concern or, even if it is so related, its value is
outweighed by the need to permit the government to take actions
that promote efficiency and effectiveness.[21]  Id.

A public employee's speech is protected if he speaks "as a
citizen on a matter of public concern."  Garcetti, 126 S.Ct
(citing Pickering v. Bd. of Educ. Of Tp. High Sch., 391 U.S. 563,
568 (1968)).  Garcetti held that when public employees make
statements pursuant to their official duties, an employee is not
speaking as a citizen for First Amendment purposes.  Id.
Therefore, the Constitution would not insulate the employee's
communications from employer discipline.  Id.  Plaintiff's
journal containing the absences of a fellow teacher was not
written pursuant to his official duties as a teacher.  He was not
employed to monitor the absences of fellow teachers, and
defendants do not allege that he was required to do so.

"An employee's speech addresses public concern when it can
be 'fairly considered as relating to any matter of political,

---

[21]    Because defendants have only addressed whether
plaintiff's speech involved matters of public concern, the court
will assume for purposes of this opinion only that plaintiff
meets the second prong of the First Amendment analysis.

social, or other concern to the community.'" <u>Feldman v.</u>
<u>Philadelphia Housing Authority</u>, 43 F.3d 823, 829 (3d Cir. 1994)
(quoting <u>Connick</u>, 461 U.S. at 146). In this respect, courts
focus on the content, form, and context of the activity in
question. <u>Connick</u>, 461 U.S. at 147-148. "The content of the
speech may involve a matter of public concern if it attempts 'to
bring to light actual or potential wrongdoing or breach of public
trust on the part of government officials.'" <u>Baldassare v. New</u>
<u>Jersey</u>, 250 F.3d 188, 194 (3d Cir. 2001) (quoting <u>Holder v. City</u>
<u>of Allentown</u>, 987 F.2d 188, 194 (3d Cir. 1993)).

The District of Delaware previously has held that issues of
student safety were matters of public concern. <u>McHugh v. Bd. of</u>
<u>Edu. Of the Milford Sch. Dist.</u>, 100 F.Supp.2d 231, 240 (D. Del.
2000)(finding a matter of public concern when Supervisor of
Transportation filed charges of official misconduct against Board
members after Board failed to act on Supervisor's investigations
into bus driver safety). Notwithstanding defendants' assertion
that the information contained in the journal was of
"quintessential private concern particular to [the plaintiff],"
the detailed account of a public school teacher's dereliction of
duty to her students and co-workers is a matter of public
concern. Based on the facts as pleaded, defendant Freebery
established a pattern of tardiness and frequent absence during
class time. As a result, plaintiff was repeatedly placed in the

14

position of fulfilling the responsibilities of two teachers by
virtue of the team teaching methodology. Plaintiff was forced to
not only educate, but to supervise and ensure the safety of an
inordinately large group of children by himself.

Defendants' argument relating to the private and personal
nature of plaintiff's speech is also unavailing. While the
speech was found in a private journal, courts, in conducting a
First Amendment inquiry, focus not on the audience but on the
nature of the information. Baldassare, 250 F.3d at 197.
Furthermore, courts have consistently recognized that "the
private nature of the statement does not . . . vitiate the status
of the statement as addressing a matter of public concern."
Givhan v. W. Line Consol. Sch. Dist., 439 U.S. 410, 414-416
(1979). Thus, "a speaker's motive, while often relevant to the
context of speech, is not dispositive in determining whether a
particular statement relates to a matter of public concern."
Azzaro v. County of Allegheny, 110 F.3d 968, 978 (3d Cir. 1997).

Applied to the facts alleged at bar, it is of no merit that
plaintiff kept the journal to protect himself from discipline in
the event that a student was injured during one of defendant
Freebery's absences. In evaluating the nature of the journal,
the dates and times detailing defendant Freebery's truancy and
other pertinent information about her actions and omissions is a
matter of public concern. Based on the court's findings that

15

plaintiff's journal was protected speech within the meaning of the First Amendment, defendants' motion to dismiss with respect to count III of the complaint is denied.

**B.    Plaintiff's Wrongful Termination Claim**

Plaintiff bases his wrongful termination claim on defendant District's alleged failure to comply with 14 Del. C. § 1410(b).[22] Under the statute, a school board's reasoning for terminating a non-tenured teacher must be based on the teacher's performance appraisal or other documented materials **properly placed** in the teacher's personnel file. See 14 Del. C. § 1410(b).[23] Section 1410(b) states:

> A teacher who has not completed 3 years of service in the State and/or has not completed 2 years in the employ of the terminating board may, within 7 days of receiving notice of intention to terminate services, request in writing, the reason(s) for such notice. **The board will provide such reason(s) in writing** and a copy of this chapter no later

---

[22] The court finds that it may exercise supplemental jurisdiction over plaintiff's wrongful termination claim because defendant's failure to properly place disciplinary letters in his personnel file arises out of the same nucleus of operative facts surrounding the gender discrimination claim and the first amendment claim. 28 U.S.C. § 1367 (2000). Although the Third Circuit in Lyon v. Whisman, 45 F.3d 758, 762 (3d Cir. 1995), found that a general employer-employee relationship between the parties is not sufficient to sustain a factually distinct claim for purposes of supplemental jurisdiction, there is a more direct link between the federal claims and the state wrongful discharge claim in this case.

[23] The statute does not define "properly placed." 14 Del. C. § 1410(b).

> than 5 days after receipt of such a request,
> **provided that the stated reason(s) must have
> either been contained in the teacher's
> performance appraisal,** and the teacher was
> provided time to correct any deficiency
> through an individualized improvement plan **or
> other documented materials properly placed in
> the teacher's personnel file prior to said
> notice.** . . [A] teacher may request in
> writing a conference with the board's
> superintendent for the purpose of discussing
> the reason(s) and attempting to resolve any
> disputed matter. Within 10 days of receiving
> such a request for a conference, the
> superintendent shall personally provide the
> teacher a conference to review the matter.
> **The conference with the superintendent is
> final and conclusive.**

14 Del. C. 1410(b) (emphasis added). Defendant asserts that

because the conference with the superintendent is "final and

conclusive," a non-tenured teacher has no legal recourse for

wrongful termination and that the superintendent's decision is

not subject to judicial review. Id. See also New Castle-Gunning

Bedford Educ. Assoc. v. Bd. of Educ., 421 F. Supp. 960, 965 (D.

Del. 1976) (holding non-tenured teachers do not have a property

interest in continued employment protectable by due process

because a clause in the collective bargaining agreement allowed

only for an informal discussion of the reasons for nonrenewal);

Newman v. Bd. of Educ., 350 A.2d 339, 340 (Del. 1975) (finding

Board does not have statutory duty to bargain with respect to

renewal of a non-tenured teacher's contract and no statutory duty

to justify or even discuss a decision of nonrenewal). Plaintiff,

17

however, asserts that the reprimands he received were improperly placed in his file both because they were issued in retaliation and because they were issued in violation of the Collective Bargaining Agreement.  The court will consider each in turn.

### 1.  Retaliation

The court has declined to hold that a non-tenured teacher is completely without due process rights.  It is established that unless a non-tenured teacher receives notice of termination conformable to the statute, 14 Del. C. § 1410(b), his employment must be continued the following year.  Boyce v. Alexis I. duPont Sch. Dist., 341 F. Supp. 678, 683 (D. Del. 1972) (finding no retaliation in Boyce's instance because program plaintiff had been teaching was replaced with another program different in several respects).  The plaintiff in Boyce, a non-tenured teacher, alleged that the true reason the school board refused to rehire him was retaliation for plaintiff's public critiques of the curriculum, in violation of the First Amendment.  Id. at 680. The court in Boyce interpreted 14 Del C. § 1410(b) to require the superintendent to give his **true** reasons for nonrenewal to the non-tenured teacher upon the teacher's request; if the real reasons for an intended termination are not given, compliance with Del. C. § 1410(b) is lacking.  Id. at 683.  The Boyce court also accepted that even where a teacher is without tenure, "it is a violation of the Civil Rights Act for a school to refuse to

18

[re]employ him (a) arbitrarily and capriciously for a reason not
supported by substantial evidence in derogation of his Fourteenth
Amendment due process rights, or (b) because he has exercised
First Amendment rights of free speech." Id. at 686. Therefore,
the Boyce court implied that, in the event a teacher has been
retaliated against, false reasons given to explain a decision not
to rehire would not conform to 14 Del. C. § 1410(b). Id. at 683.

Plaintiff alleges that the first three reprimands were
issued in retaliation for exercising his First Amendment rights;
he further contends that the unannounced classroom observation
was conducted in retaliation for filing a Charge of
Discrimination with the Department of Labor and that his negative
review was the result of a biased observer. Plaintiff alleges
that two subsequent reprimands were also issued in retaliation.
It follows from Boyce and § 1410(b) that if the disciplinary
letters were placed in plaintiff's file only in retaliation for
plaintiff's exercise of his First Amendment rights and/or filing
of a Department of Labor charge, they were improperly placed in
the file and would not conform to 14 Del. C. § 1410(b).
Plaintiff has adequately pled that the true reason for the
reprimands was retaliation.[24]

_____

[24] During the conference with plaintiff to discuss the
reasons for nonrenewal, the Superintendent admitted that
plaintiff's reprimands for poor lesson plans and inappropriate
comments should not have been considered in the decision to
terminate him because of a lack of conclusive evidence.

19

### 2.   Collective Bargaining Agreement

In addition, plaintiff asserts that the Collective Bargaining Agreement with defendant District entitles him to written notice forty-eight hours in advance of a meeting, the right to union representation of his choice, and written notification of the individuals who will attend the meeting. Article 4:4.1 of the Collective Bargaining Agreement states that,

> [i]f an employee is required to appear before the Board or an agent thereof concerning a matter which could adversely affect his/her continued employment, salary or any increments, he/she will be given prior written notice and specific reasons for such meeting or interview at least forty-eight (48) hours in advance. Any topic not included in the letter will not be covered at said meeting unless agreed to by the employee; if not agreed, it will be discussed at a later date after proper notice has been given. The employee will also be notified in writing of additional persons who will be present. An employee required to appear in this instance will be entitled to have an Association representative of his/her choice present to advise and to represent him/her during such meeting or interview. Informal discussion with an employee by any member of the administrative staff pertaining to the employee's performance at his/her work location will not be precluded by the preceding language . . . [I]f as a result of such informal discussion the employee perceives that the matter discussed could in the future adversely affect his/her continued employment . . . the administrator will, upon written request, give the employee reasons in writing for the necessity of waiving the forty-eight hours' written notice prescribed above.

(D.I. 35 at 5-6)  Defendants contend that plaintiff's meetings

with Ms. Basara and other administrators were informal and that
plaintiff was not entitled to such provisions of the Collective
Bargaining Agreement. Defendants' motion to dismiss, however,
will be granted only if no set of facts exists upon which relief
may be granted. Conley, 355 U.S. at 45-46. Because the
plaintiff's meeting with defendant District's agents, as pled by
plaintiff, can be construed as a formal meeting requiring written
notice and union representation, defendants' motion to dismiss is
denied.

   C.   Plaintiff's Breach of Covenant of Good Faith and Fair
        Dealing Claim

     At common law, employment in Delaware is considered at will
except where, among other exceptions, the termination violated
public policy. Lord v. Souder, 748 A.2d 393, 400 (Del. 2000)
(citing E.I. DuPont de Nemours and Co. v. Pressman, 679 A.2d 436,
442-44 (Del. 1996)). In Schuster v. Derocili, 775 A.2d 1029,
1039-40 (Del. 2001), the Supreme Court of Delaware recognized a
common law cause of action for breach of the covenant of good
faith and fair dealing in an at will employment contract where
the employee alleged that she was terminated following sexual
harassment in the workplace.

     In 2004, the Delaware legislature amended the statute
concerning employment discrimination, stating that the statute
was the "sole remedy for claims alleging a violation of this
subchapter to the exclusion of all other remedies." 19 Del. C. §

21

712(b) (2005).  The synopsis of the Senate Bill expressly
supercedes the court's holding in Schuster, stating, "This bill
is the exclusive and sole remedy for employment discrimination
claims, requiring initial processing of all such claims with the
Department of Labor for review and action.  This bill effectively
re-establishes the exclusive remedy put in question by the
decision in Schuster v. Derocili . . .."  Delaware Bill Summary,
2004 Reg. Sess. S.B. 154.  The courts have begun to follow this
interpretation of the amended statute.  See E.E.O.C. v. Avecia,
Inc., 151 Fed. Appx. 162 (3d Cir. 2005) (amended statute barred a
state law claim for breach of the covenant of good faith and fair
dealing); Moon v. Del. River & Bay Auth., No. 05-261, 2006 WL
462551, at *4 (D. Del. Feb. 24, 2006).  Thus, plaintiff cannot
assert a common law claim for the breach of the implied covenant
of good faith and fair dealing where the Delaware state statute
provides the exclusive remedy.

     D.   Plaintiff's Defamation Claim

     A plaintiff must plead the five elements of a defamation
claim: (1) defamatory communication; (2) publication; (3) the
communication refers to the plaintiff; (4) a third party's
understanding of the communication's defamatory character; and
(5) injury.  Wright v. Pepsi Cola Co., 243 F. Supp. 2d 117, 124
(D. Del. 2003).  Delaware law has established that some
defamatory statements may fall within a privileged class for

which no damages may be recovered.  Pierce v. Burns, 185 A.2d
477, 479 (Del. 1962).  The plaintiff must establish, therefore,
an unprivileged communication of the defamatory statement to a
third party.  Stiner v. Univ. of Del., 243 F. Supp. 2d 106, 115
(D. Del. 2003).  A conditional privilege "extends to
communications made between persons who have a common interest
for the protection of which the allegedly defamatory statements
are made."  Id. (citing Pierce, 185 A.2d at 479).

A conditional privilege may be lost if abused or waived.  A
conditional privilege must be exercised with "'good faith,
without malice and absent any knowledge of falsity or desire to
cause harm.'"  Id. (quoting Burr v. Atlantic Aviation, 348 A.2d
179, 181 (Del. 1975)).  Thus, a conditional privilege may be
abused by: (1) excessive or improper publication; (2) the use of
the occasion for a purpose not embraced within the privilege; or
(3) making a statement which the speaker knows is false.  Stiner,
243 F. Supp. 2d at 116 (citing Battista v. Chrysler Corp., 454
A.2d 286, 291 (Del. 1982)).  The question of whether a privilege
has been abused by malice or intent to harm is ordinarily a
factual question reserved for the jury.  Id. (citing Pierce, 185
A.2d at 479).  See also Gonzalez v. Avon Products, Inc., 609
F.Supp. 1555, 1560 (D. Del. 1985) (concluding that abuse of
privilege concerning malice is of the type requiring
investigation into the subjective intent of the publisher and is

not ordinarily a matter for summary judgment).

Defendant Freebery contends that the defamation claim must be dismissed quickly as a matter of public policy to avoid a chilling effect on other sexual harassment claims.  In other words, defendant Freebery proposes that the continued subjection to a defamation claim concerning her publication of plaintiff's alleged sexual harassment will discourage others who have been sexually harassed from reporting the incident.  See Vickers v. Abbott Lab., 719 N.E.2d 1101, 1109 (Ill. App. Ct. 1999) (stating qualified privilege in the defamation context protects the victims, witnesses, and investigators of sexual harassment, and if no privilege existed, victims would be "handcuffed" by the fear of defamation liability).

While certainly a concern for the court, the facts and allegations of the complaint must be construed as true for purposes of deciding the motion to dismiss.  See Trump Hotels, 140 F.3d at 483.  Plaintiff contends that defendant Freebery's allegations of sexual harassment were false and malicious and arose only after plaintiff confronted defendant Freebery with reports of her excessive absences.  Given these allegations in the complaint, the factual inference that the publication of defendant Freebery's sexual harassment claim was false and malicious is not unwarranted for purposes of the motion to dismiss.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906

24

(3d Cir. 1997) (citing Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1357 (2d ed. 1997)) (noting a
court should not consider or regard as true "conclusory
allegations of law, unsubstantiated conclusions, and/or
unwarranted factual inferences"). Plaintiff has demonstrated a
set of facts that, if true, entitle him to relief. The motion to
dismiss is denied.

V.    CONCLUSION

       For the reasons stated above, defendants' motion to dismiss
the First Amendment retaliation claim and wrongful termination
claim will be denied. The court grants defendants' motion to
dismiss plaintiff's breach of the covenant of good faith and fair
dealing claim. The court denies defendant's motion to dismiss
the defamation claim.

25

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


RICHARD WILCOXON,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )   Civ. No. 05-524-SLR
                                     )
RED CLAY CONSOLIDATED                )
DISTRICT BOARD OF EDUCATION          )
and JANAY FREEBERY,                  )
                                     )
          Defendants.                )


O R D E R


At Wilmington this 30th day of June, 2006, for the reasons
stated in the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Defendants' motion to dismiss for failure to state a
claim (D.I. 7) is denied with respect to plaintiff's claims for
violation of his First Amendment rights, wrongful termination,
and defamation.

2. Defendants' motion to dismiss for failure to state a
claim (D.I. 7) is granted with respect to breach of implied
covenant of good faith and fair dealing.


_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OLGA ALEXANDRA YATZUS,                    )
                                          )
                    Plaintiff,            )
                                          )
            v.                            )    C.A. No. 05-103-SLR
                                          )
APPOQUINIMINK SCHOOL DISTRICT             )
and TONY MARCHIO, individually and in     )    **TRIAL BY JURY DEMANDED**
his official capacity, MARY ANN           )
MIECZKOWSKI, individually and in her      )
official capacity, DONNA MITCHELL,        )
individually and in her official capacity, and )
MARION PROFFITT, individually and in      )
her official capacity,                    )
                                          )
                    Defendants.           )

## CERTIFICATE OF SERVICE

I, Adria B. Martinelli, Esquire, hereby certify that on July 10, 2006, I

electronically filed a true and correct copy of the foregoing **Opening Brief of Defendants Tony**

**Marchio, Mary Ann Mieczkowski, Donna Mitchell, and Marion Proffitt in Support of**

**Their Motion for Summary Judgment (REDACTED)** with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

>            Philip B. Bartoshesky, Esquire (#2056)
>            Biggs & Battaglia
>            912 N. Orange Street
>            P.O. Box 1489
>            Wilmington, DE 19899
>
>            YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>            /s/ Adria B. Martinelli
>            _____
>            William W. Bowser, Esquire (Bar I.D. 2239)
>            Adria B. Martinelli, Esquire (Bar I.D. 4056)
>            The Brandywine Building
>            1000 West Street
>            Wilmington, Delaware 19801
>            Telephone: (302) 571-6601, 6613
>            Facsimile: (302) 576-3282, 3314
>            Email: wbowser@ycst.com; amartinelli@ycst.com