IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OLGA ALEXANDRA YATZUS,                    )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )   C.A. No. 05-103-SLR
                                          )
APPOQUINIMINK SCHOOL DISTRICT             )
and TONY MARCHIO, individually and in     )   **TRIAL BY JURY DEMANDED**
his official capacity, MARY ANN           )
MIECZKOWSKI, individually and in her      )
official capacity, DONNA MITCHELL,        )
individually and in her official capacity, and )
MARION PROFFITT, individually and in      )
her official capacity,                    )
                                          )
                    Defendants.           )

**DEFENDANT APPOQUINIMINK SCHOOL DISTRICT'S OPENING BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# REDACTED

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

DATED:    July 10, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

SUMMARY OF ARGUMENT ........................................................................... 2

STATEMENT OF FACTS .................................................................................. 4

ARGUMENT ...................................................................................................... 16

I.    THE DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON
      YATZUS'S TITLE VII RETALIATION CLAIM .................................... 16

A.    Summary Judgment Standard ................................................................ 16

B.    Yatzus Failed To Establish A *Prima Facie* Case Of Retaliation By
      Showing Any Causation Between The Protected Activity And
      Adverse Employment Actions ................................................................ 17

1.    Only the written reprimands and termination constitute "adverse
      actions" under the standard set for in *Burlington* ............................... 18

C.    Yatzus Is Unable To Rebut The District's Legitimate Non-
      Discriminatory Business Reason For Her Termination ......................... 20

II.   COUNT II FAILS TO STATE A FIRST AMENDMENT
      RETALIATION CLAIM .......................................................................... 21

A.    Standards For Summary Judgment In First Amendment Retaliation
      Claim ...................................................................................................... 21

B.    Yatzus's Speech Is Not Protected Under the U.S. Supreme Court's
      Holding In *Garcetti* Because It Was Made Pursuant to Her Job
      Responsibilities ...................................................................................... 22

C.    Yatzus's Speech Was Not A Substantial Or Motivating Factor With
      Respect To Her Adverse Employment Actions ..................................... 25

D.    Yatzus Would Have Been Terminated Absent Her Free Speech .......... 27

E.    The District Is Not Liable For A Section 1983 Violation ..................... 29

III.  COUNT III FAILS TO STATE AN IMPLIED COVENANT
      CLAIM .................................................................................................... 30

IV.   COUNT IV FAILS TO STATE A CLAIM FOR INTENTIONAL
      INFLICTION OF EMOTIONAL DISTRESS ......................................... 34

CONCLUSION ......................................................................................................35

## TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Andrews v. Philadelphia,*
  *895 F.2d 1469 (3d Cir. 1990)* .................................................................. 35

*Avallone v. Wilmington Medical Center,*
  *553 F. Supp. 931 (D. Del. 1982)* .............................................................. 34

*Baldassare v. New Jersey,*
  *250 F.3d 188 (3d Cir. 2001)* .................................................................... 25

*Brodsky v. Hercules, Inc.,*
  *966 F. Supp. 1337 (D. Del. 1997)* ............................................................ 34

*Burlington Northern & Santa Fe Railway Co. v. White,*
  *No. 05-259, 2006 U.S. LEXIS 4895 (June 22, 2006)* ................... 18, 19, 20

*Carter v. Delaware State University,*
  *65 Fed. Appx. 397 (3d Cir. 2003)* ....................................................... 27, 28

*Carter v. Delaware State University,*
  *No. 99-642 GMS, 2002 U.S. Dist. LEXIS 4721 (D. Del. Mar. 21, 2002)* ............. 28, 29

*Celotex Corp. v. Catrett,*
  *477 U.S. 317 (1986)* .............................................................................. 16

*Connick v. Myers,*
  *461 U.S. 138, 147 (1983)* ........................................................................ 24

*Cox v. Keystone Carbon,*
  *861 F.2d 390 (3d Cir. 1988)* ................................................................... 34

*E.I. DuPont de Nemours and Co. v. Pressman,*
  *679 A.2d 436 (Del. 1996)* ............................................................. 30, 31, 33

*EEOC v. Avecia, Inc.,*
  *No. 03-320-SLR, 2003 U.S. Dist. LEXIS 19325 (D. Del. Oct. 23, 2003)* ............. 34

*Equal Employment Opportunity Commission v. Avecia, Inc.,*
  *151 Fed. Appx. 162 (3d Cir. 2005)* ..................................................... 32, 33

*Ferguson v. E.I. DuPont de Nemours & Co.,*
  *560 F. Supp. 1172 (D. Del. 1983)* ............................................................ 17

iii

*Fultz v. Dunn, et al.*,
   *165 F.3d 215 (3d Cir. 1998)* ........................................................................................... 22

*Garcetti v. Ceballos*,
   *26 S. Ct. 1951 (2006)* ...................................................................................... 22, 23, 24

*Geddis v. Univ. of Delaware*,
   *40 Fed. Appx. 650 (3d Cir. 2002)* ................................................................................. 33

*Gonzales v. City of Chicago*,
   *239 F.3d 939 (7th Cir. 2001)* ........................................................................................ 25

*Greenshields v. Indep. Sch. Dist. 1-106 of Payne County*,
   *No. 04-6195, 2006 U.S. App. LEXIS 8365, (10th Cir. Apr. 4, 2006)* ....................... 25, 26

*Hazen v. Modern Food Servs., Inc.*,
   *113 Fed. Appx. 442 (3d Cir. 2004)* ............................................................................... 17

*Holley v. Giles Co.*,
   *165 Fed. Appx. 447 (6th Cir. 2006)* .............................................................................. 26

*Horowitz v. Fed. Kemper Life Assurance Co.*,
   *57 F.3d 300 (3d Cir. 1995)* ..................................................................................... 16, 30

*Jett v. Dallas Indep. Sch. Dist.*,
   *491 U.S. 701 (1989)* ...................................................................................................... 29

*Konstantopoulos v. Westvaco Corp.*,
   *690 A.2d 936 (Del. 1996)* .............................................................................................. 34

*Layfield v. Beebe Medical Center, Inc.*,
   *No. 95C-12-007, 1997 Del. Super. LEXIS 472 (Del. Super. July 18, 1997)* ............... 32

*Lord v. Souder*,
   *748 A.2d 393 (Del. 2000)* .............................................................................................. 31

*Marwood v. Elizabeth Forward Sch. Dist.*,
   *91 Fed. Appx. 207 (3d Cir. 2004)* ................................................................................. 26

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   *475 U.S. 574 (1986)* ...................................................................................................... 16

*McGreevy v. Stroup, et al.*,
   *413 F.3d 359 (3d Cir. 2005)* ..................................................................................... 29, 30

*Merrill v. Crothall-American, Inc.*,
   *606 A.2d 96 (Del. 1992)* ................................................................................................ 30

*Monell v. N.Y.C. Dep't of Social Servs.,*
  436 U.S. 658 (1978)..................................................................................... 29, 30

*Mt. Healthy City Sch. Dist. v. Doyle,*
  429 U.S. 274 (1997) ...................................................................................... 22, 27

*O'Neal v. Brownlee,*
  No. 05-5535, 2004 U.S. Dist. LEXIS 24942 (E.D. Pa. Dec. 9, 2004) ............. 19

*Parker v. Comcast Corp.,*
  No. 04-344-KAJ, 2006 U.S. Dist. LEXIS 10700 (D. Del. Mar. 17, 2006) .......... 32

*Patten v. Zeneca, Inc.,*
  No. 94C-07-180-WTQ, 1996 Del. Super. LEXIS 86 (Del. Super. Feb. 13, 1996) ....... 33

*Pickering v. Board of Educ.,*
  391 U.S. 563 (1968)........................................................................................ 24

*Rankin v. McPherson,*
  483 U.S. 378 (1987)........................................................................................ 24

*Richards v. City of Wilm.,*
  No. 03-106-SLR, 2004 U.S. Dist. LEXIS 4987 (D. Del. Mar. 24, 2004) ........... 16, 17

*Romer v. Marra,*
  No. 00-1316-C-T/K, 2002 U.S. Dist. LEXIS 4851 (Feb. 13, 2002) .................. 25

*Schuster v. Derocili,*
  774 A.2d 1029 (2001) ..................................................................................... 32

*Shaner v. Synthes (USA),*
  204 F.3d 494 (3d Cir. 2000)............................................................................ 17

*Suppan v. Dadonna,*
  203 F.3d 228 (3d Cir. 2000)............................................................................ 27

*Swineford v. Snyder County,*
  15 F.3d 1258 (3d Cir. 1994)............................................................................ 22

*Taylor v. Proctor & Gamble Dover Wipes Co.,*
  184 F. Supp. 2d 402 (D. Del. 2002)................................................................ 16

*Thomas v. Harford Mutual Ins. Co.,*
  No. 01C-01-046-HDR, 2003 Del. Super. LEXIS 268 (Del. Super. July 25, 2003) ...... 35

*United States v. Nat'l Treasury Employees,*
  513 U.S. 454 (1995)........................................................................................ 24

v

*Wilcoxon v. Red Clay Consol. Sch. Dist.,*
  *No. 05-524-SLR (D. Del. June 30, 2006)* ............................................................... 22

*Williams v. Caruso,*
  *966 F. Supp. 287 (D. Del. 1997)* ........................................................................... 33

*Woodson v. Scott Paper,*
  *109 F.3d 913 (3d Cir. 1997)* ................................................................................. 17

<u>Statutes and Other Authorities</u>

*14 Del. C. § 1401(2)* ............................................................................................... 30

*14 Del. C. § 1410(a)* ......................................................................................... 14, 30

*14 Del. C. § 1410(b)* ............................................................................................... 15

*19 Del. C. § 712 (b)* ............................................................................................... 31

*Fed. R. Civ. P. 56(c)* .............................................................................................. 16

*S.B. 154, 142d Gen. Ass. (Del. 2004)* ................................................................... 32

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Olga Alexandra Yatzus ("Yatzus") was hired by Defendant, Appoquinimink School District (the "District"), on August 28, 2001, as a school psychologist. On May 5, 2003, Yatzus received notification that her contract would not be renewed due to performance problems documented in her personnel file. On May 14, 2003, Yatzus filed a Charge of Discrimination with the Delaware Department of Labor ("DDOL"), alleging that she was terminated in retaliation for making an internal complaint of sexual harassment. She further alleged that she was discriminated against based on her race, gender, and disability. The DDOL dismissed the charge on October 21, 2004, making a no-cause determination.

On February 21, 2005, Yatzus filed the Complaint in this case against the District and four individual defendants: Tony Marchio (Superintendent), Marion Proffitt (Assistant Superintendent), Mary Ann Mieczkowski (Director of Special Education Services), and Donna Lee Mitchell (Principal, Middletown High School) (collectively "Individual Defendants"). In her Complaint, she alleged retaliation based on her sexual harassment complaint and also based on the exercise of her free speech under the First Amendment. She also made claims of a violation of the implied covenant of good faith and fair dealing and intentional infliction of emotional distress.

The parties have completed discovery, and all defendants have filed for Summary Judgment. This is the District's Opening Brief in support of its motion. The Individual Defendants have filed a separate brief contemporaneously herewith.

1

**SUMMARY OF ARGUMENT**

1.  The District is entitled to summary judgment on Yatzus's Title VII Retaliation Claim.

    (a)  Yatzus has failed to establish any causation between protected activity and adverse employment actions. Timing alone–seven months between her allegation of harassment and the first written reprimand–is not "unusually suggestive" as to establish causation without additional evidence.

    (b)  Yatzus is unable to rebut the District's legitimate, non-discriminatory grounds for her reprimands and termination. Her performance problems–primarily the failure to complete psychological reports–were well-documented by multiple District administrators. The legitimacy of the District's performance concerns are further supported by the fact that she was written up for identical problems at her former employer; she also claimed retaliation by that school district.

2.  The District is entitled to summary judgment on Yatzus's First Amendment Retaliation Claim under Section 1983.

    (a)  Yatzus's reports regarding her belief that special education students were being discriminated against and her assistance with the filing of the complaints with the Office of Civil Rights ("OCR") is not protected under the First Amendment because they were made pursuant to her official duties as school psychologist, pursuant to the U.S. Supreme Court's holding in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006).

    (b)  Yatzus's speech was not a "substantial or motivating factor" in her reprimands or eventual termination. Rather, the record supports that she was written up and terminated for her significant performance problems: failure to complete

reports, late attendance at meetings, and failure to comply with simple directives from her supervisors. Moreover, none of the Individual Defendants was ever aware of the OCR complaints, or Yatzus's involvement therewith, until well after she was terminated.

(c)      The District is not liable for a Section 1983 violation because Yatzus has not established any of the conditions necessary to hold a municipality liable for a tort: there is no "widespread practice" that permitted First Amendment violations, nor has Yatzus shown that a person with "final policymaking authority" with regard to the action caused a constitutional violation. Under Delaware law, it is the school board which has final authority to terminate Yatzus and provide notice thereof.

3.      The District is entitled to summary judgment on Yatzus's implied covenant claim.

(a)      Yatzus has not established that any employment records were falsified. She has acknowledged the accuracy of the reprimands but contends that they were for petty reasons.

(b)      Yatzus's allegation that her termination letter did not give the true reason for termination is not sufficient to establish an implied covenant claim when it is not based on falsified or manipulated records.

4.      The District is entitled to summary judgment on Yatzus's claim for intentional infliction of emotional distress ("IIED") because such claims are barred by the Delaware workers' compensation law, and the Defendants' alleged conduct is not "outrageous" as required to state a claim for IIED.

## STATEMENT OF FACTS

### Yatzus Hired As School Psychologist With The District

Yatzus was hired by the District as a school psychologist effective August 28, 2001. A14. Previously, she had been employed by a school psychologist with the New Castle County Vo-Tech School District ("Vo-Tech"). A150-51. She was supervised by Dr. Vaughn Lauer ("Lauer"), Director of Student Services. As a school psychologist, Yatzus's responsibilities included: evaluating and counseling students, advocating for students, and participating in the Individualized Education Plan ("IEP") process, including completion of the necessary testing. A148-49.

# REDACTED: CONFIDENTIAL MATERIAL

### Yatzus Reprimanded For Not Providing Summer Schedule

At the beginning of the summer of 2002, Marchio, who was currently acting as supervisor of the school psychologists, met with all of the school psychologists– Judy Green ("Green"), Chet Hadley ("Hadley"), and Yatzus–to discuss summer work schedules. A73; 172-73. Yatzus had previously mentioned to Marchio an alleged promise that Lauer had made to her for 20 days' of summer time. A172; 234. Marchio did not deny Yatzus the 20 days; however, he requested documentation regarding what tasks the psychologists planned to complete with their summer time. A243-44. Specifically, he requested that each psychologist submit to him, in advance, the number of days they proposed to work, number of students they would be evaluating, and the date of submission for those evaluations. A73. Green and Hadley provided that information within days of the meeting. A73; 245.

On July 3, 2002, Marchio sent a letter to Yatzus again requesting her summer schedule and reiterating the information he sought. A62. Yatzus has offered various explanations as to why she had not complied with Marchio's request at this point: (1) that she was "extremely busy testing and meeting with parents and forgot to submit my summer agenda" to Marchio (A77) and (2) that she had told the special education secretary Chrissie O'Grady what days she would be available to work over the summer and believed that that satisfied Marchio's request.[1] A174-75. The information provided to O'Grady consisted of a list of five days she indicated she would be working over the summer. A63; 68. It did not include any information about what work would be accomplished on those days. *Id.*

On July 9, 2002, following Marchio's second request for the information, Yatzus submitted a list of duties she had completed thus far over the summer and a list of what remained to be completed over the summer hours. A64-65. This list did not provide any dates. A64-65.

On August 6, 2002, the requested information still had not been provided, and Marchio requested it in an email on that date. A68 Around that time, Yatzus had involved Vicky Boyd ("Boyd"), a DSEA representative, on the issue, and did not further respond to Marchio directly. A176. On August 21, 2002, at 5:53 p.m. Boyd sent an email to Yatzus explaining Marchio's position and expressing her opinion that it had nothing to do with **REDACTED: CONFIDENTIAL MATERIAL**. A69. A few hours later that day, Yatzus sent an email **REDACTED: CONFIDENTIAL MATERIAL,**

---

[1]This first explanation was given in her contemporaneously drafted "chronology"; the second was given in her deposition.

including his request for her summer hours and alleged scrutiny of her conference attendance.[2]  A70-72.

On August 29, 2002, Marchio wrote an official reprimand for Yatzus based on her not supplying the requested information on her summer schedule.  A73-74.

**Yatzus Submits Conflicting Timesheets Regarding Her Summer Hours**

On July 11, 2002, Yatzus submitted a timesheet for the dates July 1-11, 2002.  A66; 230-31.  The timesheet reflected 7.5 hours worked on July 3, 2002, and a total of 45 hours for the week.  A66.  Marchio questioned the 7.5 hours submitted for July 3, 2002, because he had tried to locate Yatzus that day and was aware that she was not present anywhere in the District.  A246-47.  He had requested by letter on July 3, 2002, that Yatzus speak to him about "concerns he had on one of her workdays"; she never responded.  A62; 247-48.  After payroll received the timesheet indicating she had worked on July 3, 2002, Marchio requested that payroll hold the timesheet until the discrepancy was resolved.  Kathy Bromwell, secretary for Middletown High School's Student Services, communicated to Yatzus that there was a problem with her timesheet, and she would need to submit a new one.  A249.

Yatzus then submitted a second timesheet for the period July 1-11, dated August 1, 2002.  A67.  This timesheet reflected 50.5 hours total for the week, and 9 hours for July 3–an additional 5.5 hours more than the first timesheet.  A67.  Yatzus's paycheck

---

[2]In the spring and summer of 2002, Yatzus submitted requests to attend two separate conferences.  A167.  Marchio permitted her to attend the first conference when and where she requested.  A170.  Yatzus requested to attend a second conference in Philadelphia.  A170.  Marchio questioned Yatzus as to why she could not attend the same session of the conference given in Delaware.  A170.  Yatzus responded that she had another obligation on the day the conference was being offered in Delaware.  A170.  Following her explanation, Marchio gave her permission to attend the conference in Philadelphia.  A171.

for this week was delayed while this discrepancy in reported time was clarified. A67; 250.

## Yatzus Written Up For Failure To Complete Written Reports

On September 25, 2002, three IEP meetings were held at Middletown High School ("MHS") in which Yatzus was unprepared and did not supply the required psychological reports. A85; 185-92. Yatzus acknowledged that she did not have the reports, but claimed that she did not get notice of the meeting until that morning and had left the reports at home. A185-92. Donna Lee Mitchell ("Mitchell"), MHS Principal; Mary Ann Mieczkowski ("Mieczkowski"), the Director of Special Education Services (hired to replace Lauer); and James Dooley ("Dooley"), MHS Assistant Principal, were each present for these meetings and observed Yatzus's performance deficiencies. They each issued reprimands to Yatzus for the events occurring on September 25, 2002. A83; 82; 85.

On October 14, 2002, Mitchell wrote up Yatzus for not having appropriate reports prepared for another IEP meeting. A84. The letter further repeated the understanding that copies of reports were to be submitted to the administration 48 hours prior to the meeting. A84.

Yatzus grieved the three reprimands for the September 25, 2002, events. A meeting was held on November 6, 2002, to discuss her grievance. A85; 191-92. During the course of the discussion, it was again clarified that Mitchell expected all psychological reports to be provided 48 hours in advance of the meeting. A85. Mieczkowski established by a memo dated September 6, 2002, that the reports be "in the hands" of the administration prior to the meeting, but individual principals were allowed to establish their own requirements, as long as they were at least as strict as those

7

established District-wide by Mieczkowski. A80-81; 206-07; 273-74; 276-77. Also, during this meeting, it was agreed that the three reprimands would be combined into one written by Mieczkowski and dated November 17, 2002. A85; 192; 275-76. Mieczkowski's November 17, 2002, letter to Yatzus reiterated the understanding that she should provide reports to the administration and the Educational Diagnostician at least 48 hours prior to the scheduled meeting. A85.

On January 8, 2003, Dooley issued written reprimand to Yatzus because, on January 3, 2003, he had requested written feedback on the progress made with four students, and Yatzus had failed to provide anything in writing. A89.

On April 2, 2003, Mitchell issued a written reprimand to Yatzus for failing to complete the necessary paperwork for an IEP Meeting. A98. Although the box was checked affirmatively indicating that a student "exhibited behaviors that impede his learning or the learning of others," there were no behavior objectives included, nor was there any other indication of behavioral issues, or a request for a Functional Behavior Assessment ("FBA"). *Id.* Because the IEP was incomplete, the IEP team was forced to conclude that this student's violation of the District's discipline code of conduct was a manifestation of his disability. *Id*

On April 9, 2003, Mieczkowski wrote up Yatzus for incomplete documentation on another IEP. A Positive Behavior Support Plan and an IEP were not developed in a timely manner, despite the fact there was sufficient documentation in the student's record to do so. A104. On the same day, Mieczkowski issued a written reprimand to Yatzus for her failure to provide a schedule of evaluations, even though she

had been asked and had promised the information on two separate occasions prior to the date of the reprimand.[3] A103.

## Yatzus Written Up For Being Late To An IEP Meeting

On February 25, 2003, Yatzus was scheduled to participate in a behavior manifestation meeting beginning at 10:00 a.m. A93. A psychologist's attendance at a behavior manifestation meeting is critical. A182. There were attorneys attending the meeting, and it was expected to be particularly contentious. A254. For that reason, Marchio also attended. A254. Yatzus arrived 30 minutes late for the meeting, leaving the parents, two attorneys, and several District officials waiting. A93; 182. The parents refused to begin the meeting without Yatzus present. A93; 255. As a result, the District was placed in the embarrassing position of trying to locate her and waiting for her before they could begin the meeting. A93.

Yatzus understood the importance of the meeting, knew it was scheduled, and planned on attending. A184. She acknowledged that she was 30 minutes late but claimed that she got tied up with an upset student and then could not find the meeting because no one told her it was in the District office. A182-83. On March 3, 2003, Marchio issued a written reprimand based on Yatzus's late arrival at the meeting. A93. Yatzus filed a grievance related to this reprimand, and a hearing was scheduled for March 28, 2003. A95. Following the hearing, Proffitt concluded that Yatzus was aware of the meeting date and time and could have attended the meeting. A96. Therefore, Proffitt upheld the contents of Marchio's letter, and it remained in her personnel file. A96.

---

[3]Interestingly, Yatzus experienced identical problems with time management and completion of reports with her previous employer, the New Castle County Vo-Tech District, where she also worked as a school psychologist. A1-A9.

**Yatzus Written Up For Not Following Proper Procedures When Sick**

On or about March 8, 2003, Mitchell informed Yatzus that she should call the "substitute caller line" when she would be out for a personal illness. A180-81; 97. On April 2, 2003, Yatzus was absent from work the entire day and missed seven IEP meetings. A97. Yatzus alleges that she contacted Phyllis Waecker, the special education secretary, sometime in the morning and told her that she was tied up and was not sure what meetings she would be able to attend. At 12:58 p.m., Yatzus contacted Sue Poore, a MHS secretary, and told her that she had stopped by her son's school, had gotten tied up longer than she expected, and decided to take the rest of the day off. A97; 179. On April 2, 2003, Mitchell issued a written reprimand to Yatzus for her failure to follow the proper procedure for calling out sick. A97.

**Pursuant To Her Official Duties As A School Psychologist,**
**Yatzus Complains Of Improper Treatment Of Special Education Students**

Yatzus alleges that beginning in October 2002, she became concerned with how special education students were being treated and believed it was her obligation as a school psychologist to voice her concerns. She testified that she was acting pursuant to her duties as a school psychologist when she expressed her concerns to Mieczkowski, Mitchell, and Marchio.

> Q.    Did you think it was part of your job as school psychologist to report this concern?
>
> A.    I think it's part of the role of the school psychologist to be an advocate for children and to see what we could do to make sure we're doing everything that we can to address the law and the needs of the student . . .
>
> Q.    So in your role . . .as student advocate, you thought it was important to report what you perceived as illegal behavior?
>
> A.    Yes.

Q.    Did you think that it was a part of your job?

A.    I felt that it was part of my job.

\*    \*    \*

Q.    And your assistance with the OCR complaints, did
you think that was part of your job as school psychologist?

A.    I think that as an advocate for children, absolutely.

A210-11; 223.

Yatzus alleges that she first raised these concerns verbally with
administrators, including Mitchell and Mieczkowski. A208-09. She allegedly made
statements to Mitchell and Mieczkowski regarding her concern about how much time
students were being placed out of school, how they were being treated, and "that students
aren't getting what they need in terms of an education." A209.

She did not begin expressing her concerns in terms of unethical or illegal
behavior until February 2003, at which time she put her concerns in writing. On
February 28, 2003, three days following the February 25, 2003, manifestation meeting for
which she was 30 minutes late, Yatzus sent letters to both Mieczkowski and Mitchell.
The letter to Mieczkowski addressed Mieczkowski's allegedly rude behavior directed at
her and students on various occasions. A90-91. She stated that Mieczkowski's behavior
toward her was "extremely hostile, rude, and disrespectful." A90.

In her letter to Mitchell, she claimed that Mitchell reprimanded her for not
being on the "same page" as the rest of the District in the February 25, 2003, meeting.
She further expressed her belief that her opinion was not "requested nor respected." She
again raised her concerns about Mieczkowski's "rude and disrespectful behavior." She
mentioned "compliance issues" she wanted to discuss and that she was experiencing a

"hostile work environment that was making it difficult to perform her job." She did not

further elaborate on either of these allegations in her letter to Mitchell.

On April 4, 2003, Yatzus responded to a reprimand from Mitchell

concerning her failure to complete an IEP for **REDACTED: CONFIDENTIAL**

**MATERIAL**. A86-88. Following her lengthy explanation as to why the student's IEP

was incomplete, she stated that

> [i]t is very interesting that you have the audacity to send me
> a letter of reprimand when you clearly have been in
> violation of federal law and were deliberately conspiring to
> get rid of this disabled student in the most unethical and
> immoral manner. I believe that this letter is retaliation
> because I did not allow this child to become a victim to
> your deliberate and calculating behavior.

A88.

On April 5, 2003, Yatzus emailed Marchio, providing more specifics

regarding her concerns. A100-02. In her email, she accused Mieczkowski of

"conspir[ing] with the high school staff to 'railroad' children." *Id.* She further claimed

that when she tried to "uphold the law," she was "ignored and insulted." She stated that

"the climate of the high school has become unbearable for so many of the students. They

are being suspended and expelled without the right to due process." *Id.*

On April 8, 2003, Yatzus further communicated to Marchio by email,

stating that "children get targeted by the administration, and then at the first opportunity,

children are suspended and expelled with little evidence. Due process is by-passed

repeatedly and parents are treated as if they are the enemy when they would like a chance

to address their concerns."[4] A105.

---

[4]Yatzus made similar allegations against her prior employer, the Vo-Tech, after receiving
a reprimand which made clear her job was at risk. She claimed that a "negative,
attacking and hostile environment has been established" and that this reprimand was "part

Prior to letting loose this string of "whistleblowing" emails, Yatzus sent an email to Boyd at 2:00 a.m. on April 3, 2003. A99. She told Boyd that she had "reached her limit" after receiving two reprimands that day. She said that she had "kept [her] trump cards close to [her] chest, until today." *Id* She discussed the fact that an article would be running the next day in the local newspaper, and that "I decided that becoming the 'whistler *[sic]* blower' will work to my advantage, When they fire me, I will have proof that they knew I 'blew the whistle.'" A99.

### Pursuant To Her Official Duties As School Psychologist, Yatzus Assists Parents In Filing Complaints With The OCR

Beginning around February 28, 2003, Yatzus began to explore what options could be pursued within her role as school psychologist to address her perceived mistreatment of special education students. A92. Yatzus contacted Jeff Taschner ("Taschner"), an attorney at DSEA, regarding possible avenues to address her concerns. A211; 217-18. Taschner suggested complaints with the OCR as one possible route. A219-221.

Following her conversation with Taschner, Yatzus contacted the OCR and was informed that only parents could file complaints. A92; 220-221. She then had discussions with a number of parents about filing complaints and assisted them in doing so. A219-22. She believed that assisting parents in this fashion was her obligation as a school psychologist. A220-21; 223.

---

of a total picture of retaliation and harassment." A12-13. Yatzus believed that she was being retaliated against for making a report to Child Protective Services regarding the alleged abuse of a Vo-Tech's administrator's daughter. A151-52. She consulted an attorney with regard to filing a lawsuit against Vo-Tech but decided not to pursue it. A153-55.

> Q.    And your assistance with the OCR complaints, did
> you think that was part of your job as school psychologist?
>
> A.    I think that as an advocate for children, absolutely.

A223.

Taschner also indicated that this course of action was required by her position. A224.

Nevertheless, she did not tell anyone at the District of her involvement with these

complaints. A225-26; 228-29. In fact, it appears that she affirmatively denied any

knowledge or involvement. A227; 94.

Thus, no one at the District had any knowledge of, nor reason to anticipate

the complaints, before the first complaint was received at the District on May 5, 2003.

A108-10; 111-12; 264. Nor did they have any knowledge that Yatzus was at all involved

until she reported so herself during the course of this litigation. A258-59.

### Yatzus Receives Notice Of Non-Renewal And Does Not Return To Work

Pursuant to its obligations under state law, the District informed Yatzus on

May 5, 2003, that her contract with the District "would not be renewed due to the number

and nature of letters in [her] personnel file."[5] On May 14, 2003, Yatzus received a letter

informing her that the Board voted not to renew her contract for the next school year at

their meeting on May 13, 2003. A118.

Marchio made the decision to recommend to the Board that her contract

not be renewed based on the reprimands in her personnel file. A251-52. Marchio's

decision was based on his personal observations of her performance, his review of her

personnel file, and the input of Mitchell. A251-52; 263; 142. Marchio took into

---

[5]District employees must be notified by May 15 if their contracts are not going to be
renewed for the following school year. 14 *Del. C.* § 1410(a). Names are submitted to the
school board, who then votes in its May meeting whether or not an employee's contract
will be renewed. A261-62.

consideration only Yatzus's performance after Lauer left the District; Lauer's impressions or written documentation regarding Yatzus played no role in his decision making. A253.

On May 8, 2003, Marchio informed Yatzus by certified letter that she was being placed on special assignment and relocated to the District offices for the remainder of the school year. A113.

Yatzus submitted forms indicating "personal leave" for May 8 and 9, 2003. A114. On May 12, 2003, Yatzus requested, and was permitted to use sick leave for the remainder of the school year, and did not return to work. A116; 115.

On May 23, 2003, Yatzus's therapist, Priscilla Putnam, Ph.D. ("Putnam"), sent a letter to the District stating that Yatzus was "experiencing high levels of anxiety and distress as a result of this reassignment" to the District office and is "therefore requesting medical leave until this situation is better resolved." A119.

Yatzus requested the reasons for her termination in writing; and, through her union representative, requested a conference with Marchio to discuss her proposed termination and the reasons therefore, as provided by Delaware law. A120; 14 *Del. C.* § 1410(b) . On June 12, 2003, Marchio held such a conference with Yatzus. A122. Following the conference, he informed her in writing of his decision not to recommend renewal of her contract for the 2003-04 school year. A122.

**Yatzus Files Charge Of Discrimination**

On June 12, 2003, Marchio's office received notice from the Delaware Department of Labor that Yatzus had filed a Charge of Discrimination against the District. A121. The charge alleged discrimination on the basis of race, sex, and disability. A117. The charge was dismissed on October 21, 2004, with a no-cause determination. A123-24; 125.

**ARGUMENT**

## I.   THE DISTRICT IS ENTITLED TO SUMMARY JUDGMENT ON YATZUS'S TITLE VII RETALIATION CLAIM

### A.   Summary Judgment Standard

Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *See* Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are "material," and disputes "genuine," only if "'evidence exists from which a rational person could conclude that the position of the person with the burden of proof is correct.'" *Richards v. City of Wilm.*, No. 03-106-SLR, 2004 U.S. Dist. LEXIS 4987, at *8 (D. Del. Mar. 24, 2004) (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995)).

To defeat a summary judgment motion, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'… Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); see also *Taylor v. Proctor & Gamble Dover Wipes Co.*, 184 F. Supp.2d 402, 408 (D. Del. 2002) ("mere scintilla of evidence in support of non-moving party is insufficient"); *Richards*, 2004 U.S. Dist. LEXIS 4987, at *11-12. ("There must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue."). Measured against this standard, all of Yatzus's claims fail as a matter of law.

**B.    Yatzus Failed To Establish A *Prima Facie* Case
Of Retaliation By Showing Any Causation Between
The Protected Activity And Adverse Employment Actions**

To establish a *prima facie* case of retaliation, Yatzus must prove: "(1) that

[she] engaged in a protected activity; (2) that [her] employer took adverse action against

[her] either after, or contemporaneously with, [her] protected activity; and (3) that there is

a causal connection between the protected activity and the employer's adverse action."

*Richards*, 2004 U.S. Dist. LEXIS 4987, at \*15 (citing *Woodson v. Scott Paper*, 109 F.3d

913, 920 (3d Cir. 1997)).  "To show the requisite causal link, the plaintiff must present

evidence sufficient to raise the inference that her protected activity was the likely reason

for the adverse action."  *Richards*, 2004 U.S. Dist. LEXIS 4987, at \*15 (quoting

*Ferguson v. E.I. DuPont de Nemours & Co.*, 560 F. Supp. 1172, 1200 (D. Del. 1983)).

Once the plaintiff has established a *prima facie* case, the familiar

*McDonnell-Douglas* burden shifting framework is utilized.  The "relatively light" burden

is satisfied if the employer articulates any legitimate reason for the adverse action.  *Hazen

v. Modern Food Servs., Inc.*, 113 Fed. Appx. 442, 443 (3d Cir. 2004).  The employer

need not prove that the articulated reason actually motivated the adverse action.  *Id.*

(citing *Woodson*, 109 F.3d at 920 n.2).  If the employer provides a legitimate, non-

retaliatory reason for the action, the employee must then convince the factfinder both that

the "employer's proffered explanation is false, and that the employer's action was actually

motivated by a retaliatory animus."  *Woodson*, 109 F.3d at 920 n.2; *see also Shaner v.

Synthes (USA)*, 204 F.3d 494, 501 (3d Cir. 2000).

The District is entitled to summary judgment because Yatzus cannot

establish the necessary elements of her *prima facie* case.  She is unable to demonstrate

any causal connection between her protected activity and any adverse employment

action. Further, the District had a legitimate business reason for Yatzus's ultimate termination: her significant performance problems which were contemporaneously documented in written reprimands. A177; 178-79; 182-97. Finally, Yatzus has not provided any evidence that the legitimate business reason was merely a pretext for retaliatory motivation. Therefore, Yatzus has not met her burden of proof and her claim for retaliation must be dismissed.

1.    **Only the written reprimands and termination constitute "adverse actions" under the standard set for in *Burlington***

In its opinion in *Burlington Northern & Santa Fe Railway Co. v. White*, No. 05-259, 2006 U.S. LEXIS 4895 (June 22, 2006), issued last week, the United States Supreme Court addressed what types of actions can constitute retaliation under Title VII. The Court held that a retaliation plaintiff must show that a "reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at **26-27 (citations omitted).

The Court noted that this standard requires *material* adversity, since "it is important to separate significant from trivial harms" and "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at **26-27. The "adverse actions" in *Burlington Northern* were changed job duties and a temporary suspension. *Id.* at **32-33.

Yatzus has alleged myriad actions she believes were taken in retaliation for the filing of her sexual harassment complaint, including: (1) written reprimands for "false and petty reasons," (2) her timesheets were intercepted delaying her payment;

18

(3) the location of her office was moved four times in one school year; (4) scrutiny regarding her attendance at two conferences; and (5) her termination. A128-29; 167-69.

Yatzus's complaints regarding delay of her paycheck, office moves, and questions about her conference attendance do not rise to the level of an adverse employment action, even under the broader standards set forth in *Burlington Northern*. Rather, these incidents constitute "petty slights or minor annoyances." These types of incidents, as the Court held in *Burlington Northern*, would not deter a reasonable worker from pursuing a Title VII violation and would not, therefore, be materially adverse under Title VII. *Id.* at 28.

Moreover, there is nothing in the record to establish that these actions reflected any retaliatory animus. The processing of Yatzus's paycheck was intercepted temporarily by Marchio because he was aware that she was not in the office (and in fact, not even reachable) for one of the days she had claimed pay. A246-47. Her payment was further delayed when she submitted a second timesheet for the same time period, which reflected a different hour total (51 hours versus the original 45 hours). A231-32; 66; 67.

With regard to the alleged scrutiny or unfair treatment concerning attendance at conferences, Marchio merely questioned why Yatzus was not attending the same conference that was offered at a closer location. A170-71. When Yatzus explained why she could not attend the closer conference, Marchio permitted her to attend the one she requested. *Id.* A clarifying question does not amount to an adverse employment action, or even evidence or retaliatory animus. *See, e g., O'Neal v. Brownlee*, No. 05-5535, 2004 U.S. Dist. LEXIS 24942, at *16 (E.D. Pa. Dec. 9, 2004) (holding that an

adverse action did not occur when an employer questioned the plaintiff regarding his timesheet and leave request). In addition, Yatzus's office moves were merely the product of a rapidly growing school district which was constantly trying to find space to accommodate its employees and students. A260. Almost every time Yatzus's office moved, at least one other employee was affected as well. Thus, she was clearly not being singled out for harassment in this manner. A198-205. At least some of the moves, Yatzus was pleased with and therefore cannot be considered "adverse." A205. Under these circumstances, neither the office moves, nor the temporary delay of a paycheck would discourage a "reasonable" worker from pursuing her rights under Title VII, under the standard set forth in *Burlington Northern*. Therefore, the only arguably adverse actions under the *Burlington Northern* standard are the written reprimands and termination.

# REDACTED: CONFIDENTIAL MATERIAL

**C.    Yatzus Is Unable To Rebut The District's Legitimate Non-Discriminatory Business Reason For Her Termination**

Even if Yatzus can prove a *prima facie* case of retaliation, the District has articulated a legitimate reason for the adverse actions. Yatzus's performance problems were consistent and are well-documented in written reprimands: she did not complete required reports, she showed up late for meetings, and she failed to comply with specific requests from her supervisors (*e.g.* providing a schedule for her summer hours, following the requested call-in procedures when sick). Yatzus has not challenged the accuracy of any of her reprimands.

Other evidence supports the factual veracity of the District's legitimate business reasons for her reprimands and eventual termination. Yatzus's employer prior to

the District was the New Castle County Vocational Technical District ("Vo-Tech").
A150. At Vo-Tech, she was written up for the *identical* performance problems to those
documented by the District, including failure to complete reports and arriving late for
meetings. A1; 7; 8; 9; 11; 156. The remarkable similarity of performance problems
documented at the school districts would lead any trier of fact to conclude that the
District's stated reasons were not pretextual. The fact that Yatzus made identical
allegations against Vo-Tech when confronted with these problems even further supports
the validity of the District's claims and discredits Yatzus's version of events.

Moreover, the performance problems identified by the District are
consistent with Yatzus's diagnoses of Attention Deficit Disorder ("ADD"). The
symptoms of ADD, as described by Yatzus and her psychologist, include difficulty
staying focused, completing tasks, and managing time. A146-47; 279-82. These
symptoms inherent in Yatzus's personality, further support the legitimacy of the District's
performance complaints about Yatzus, which consisted in large part of her failure to
complete reports in a timely fashion.

## II.    COUNT II FAILS TO STATE A FIRST AMENDMENT RETALIATION CLAIM

### A.    Standards For Summary Judgment In First Amendment Retaliation Claim

Yatzus alleges in Count II of the Complaint that Defendants retaliated
against her for her complaints that they were acting in violation of federal requirements
and were discriminating against students with special needs, thereby depriving her of her
First Amendment right to free speech in violation of Section 1983. A public employee
alleging an adverse employment action because he engaged in protected First
Amendment activity must show that (1) he engaged in a protected activity, and (2) the

protected activity was a substantial or motivating factor for the adverse action. *Fultz v*

*Dunn, et al*, 165 F.3d 215, 218 (3d Cir. 1998) (citing *Swineford v. Snyder County*, 15

F.3d 1258, 1270 (3d Cir. 1994). Lastly, summary judgment must be granted if the public

employer can show "by a preponderance of the evidence that it would have reached the

same decision even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist.*

*v. Doyle*, 429 U.S. 274, 287 (1997).

**B.** **Yatzus's Speech Is Not Protected Under the U.S. Supreme Court's Holding In *Garcetti* Because It Was Made Pursuant to Her Job Responsibilities**

The United States Supreme Court held in May of 2006 in *Garcetti v.*

*Ceballos*, 126 S. Ct. 1951 (2006), that "<u>when public employees make statements pursuant</u>

<u>to their official duties, they are not speaking as citizens for First Amendment purposes,</u>

<u>and the Constitution does not insulate their communications from employer discipline.</u>"

*Id.* at 1960 (emphasis added). *See also Wilcoxon v. Red Clay Consol. Sch. Dist*, No. 05-

524-SLR, Mem. Op. at 12 (D. Del. June 30, 2006) (holding that the first step in

evaluating whether speech by a public employee warrants constitutional protection is to

"determine[] whether the employee spoke as a citizen or an employee") (*citing Garcetti*).[6]

Yatzus claims that she engaged in two different kinds of speech protected by the First

Amendment: she "complained about violations of federal and state law with respect to

treatment [of students with] special needs" and she "assist[ed] parents in raising claims

against the District." A131. She testified that she was acting pursuant to her duties as a

school psychologist with respect to both of these actions. A220; 223-225.

> Q.     Did you think it was part of your job as school
> psychologist to report this concern?

---

[6]This opinion is not available electronically and is attached hereto.

A.    I think it's part of the role of the school psychologist to be an advocate for children and to see what we could do to make sure we're doing everything that we can to address the law and the needs of the student . . .

Q.    So in your role . . .as student advocate, you thought it was important to report what you perceived as illegal behavior?

A.    Yes

Q.    Did you think that it was a part of your job?

A.    I felt that it was part of my job.

\*    \*    \*

Q.    And your assistance with the OCR complaints, did you think that was part of your job as school psychologist?

A.    I think that as an advocate for children, absolutely.

A210-11; 223.  Yatzus further testified that an attorney at the DSEA advised her that she would be violating her responsibilities as a school psychologist if she did not report the alleged discrimination against special needs students and that he recommended pursuing her concerns with the OCR.  A211-12; 224.

In *Garcetti*, plaintiff Ceballos, a deputy district attorney, had reported to his supervisor that he suspected a police officer may have falsified an affidavit to obtain a search warrant.  *Id.* at 1955.  He prepared a memo explaining his concerns and recommending dismissal of the case.  *Id.* at 1955-56.  Despite Ceballos's concerns, his supervisor decided to proceed with the prosecution.  *Garcetti*, 126 S. Ct. at 1956. Ceballos claimed that in the aftermath of these events he was subjected to a series of retaliatory actions, including reassignment of position, transfer to another courthouse, and denial of a promotion.  *Id.* at 1956.

The Supreme Court noted that "public employees do not surrender all their First Amendment rights by reason of their employment.  Rather, the First Amendment

protects a public employee's right, in certain circumstances, to speak as a citizen

addressing matter of public concern." *Id* at 1957. (emphasis added) (citing *Pickering v.*

*Board of Educ.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 147 (1983);

*Rankin v. McPherson*, 483 U.S. 378, 384 (1987); *United States v. Nat'l Treasury*

*Employees*, 513 U.S. 454, 466 (1995). With regard to Ceballos's memo, the Court held:

> The significant point is that the memo was written pursuant
> to Ceballos' official duties. Restricting speech that owes its
> existence to a public employee's professional
> responsibilities does not infringe any liberties the employee
> might have enjoyed as a private citizen. It simply reflects
> the exercise of employer control over what the employer
> itself has commissioned or created.

*Garcetti*, 126 S. Ct. at 1960. Like Garcetti, Yatzus wrote internal memos describing

violations she believed it was her obligation to report. It is immaterial, as the Court noted

in *Garcetti*, whether Yatzus received any personal gratification from her reports–the point

is that the speech was within her job duties. *Id.*

The Court in *Garcetti* noted that the parties in that case "did not dispute

that Ceballos wrote his memo pursuant to his employment duties," and therefore it need

not elaborate on the framework necessary for analyzing the scope of an employee's

duties. *Garcetti*, 126 S. Ct. at 1961. Like the plaintiff in *Garcetti*, Yatzus testified that

all of her allegedly protected activities were part of her job responsibilities as a school

psychologist. Therefore, the case is indistinguishable from *Garcetti* and must be

governed by its holding. Yatzus's speech was made pursuant to her job responsibilities

and is therefore not protected by the First Amendment.

Even if the Court were to determine that Yatzus's assistance with the OCR

complaints were not made pursuant to her job duties, her actions are not protected by the

First Amendment because they are not a matter of public concern. She assisted specific

parents, not all of whom involved special education students, with filing the OCR complaints.[7]  A221-22.  As such, it was a matter of purely private concerns–those of the particular families.  *See, e g., Romer v. Marra*, No. 00-1316-C-T/K, 2002 U.S. Dist. LEXIS 4851 at *27 (Feb. 13, 2002) (citing *Gonzales v. City of Chicago*, 239 F.3d 939 (7th Cir. 2001)) (holding that Education Consultant's advice to parent about which attorney to consult to see reimbursement from the school for services for her child was a matter of private concern).

C.    **Yatzus's Speech Was Not A Substantial Or Motivating Factor With Respect To Her Adverse Employment Actions**

Even if the Court finds that Yatzus's speech was protected by the First Amendment, she must show that her speech was a "substantial or motivating factor" in the alleged retaliatory action take by the employer.  *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001) (quoting *Mt. Healthy City Sch. Dist.*, 429 U.S. at 287).  Yatzus's First Amendment claim must fail because there exists no genuine issue of material fact with respect to this issue.  *See Greenshields v. Indep. Sch. Dist. 1-106 of Payne County*, No. 04-6195, 2006 U.S. App. LEXIS 8365, at *14-17 (10th Cir. Apr. 4, 2006) (granting summary judgment on the "substantial or motivating factor" issue where the plaintiff failed to provide any evidence supporting this element of her claim).

Yatzus has presented no evidence suggesting that her protected activity played any role in her written reprimands and eventual termination.  The record supports only that she was terminated for her documented performance problems: failure to complete reports, late attendance at meetings, and failure to comply with simple

---

[7]She assisted in the filing of OCR complaints on behalf **REDACTED: CONFIDENTIAL MATERIAL**, and others.  A220.  **REDACTED: CONFIDENTIAL MATERIAL** was not a special education student.  A221.

directives from her superiors. In *Marwood v Elizabeth Forward Sch Dist*, 91 Fed.

Appx. 207, 208 (3d Cir. 2004), the Third Circuit granted summary judgment in favor of

the defendant school district on similar facts, rejecting the plaintiff's first amendment

retaliation claim because it did not satisfy the "substantial or motivating factor"

requirement. In *Marwood*, the Court held that "everything in the record indicates that

[the plaintiff] was disciplined for admitting to using banned [classroom teaching]

techniques," and nothing in the record suggests her "advocacy" was a substantial

motivating factor in her discipline. *Id* at 208.

Similarly, Yatzus has pointed to no evidence that reprimands and eventual

termination had anything to do with her protected activity. As noted above, each and

every statement by Yatzus which would arguably be protected by the First Amendment

was *preceded by* concerns expressed about her performance. Yatzus has provided

nothing other than timing to support her claim that the reprimands and termination had

anything to do with her protected speech. Yatzus's subjective belief that causation must

exist because she engaged in "protected activity" before being reprimanded and

eventually terminated is not sufficient to survive summary judgment. *See, e g.*,

*Greenshields*, 2006 U.S. App. LEXIS 8365, at **16-17 (dismissing first amendment

claim on summary judgment because plaintiff presented nothing in the record to suggest

that her speech motivated the Board's decision not to renew her contract); *Holley v. Giles

Co*, 165 Fed. Appx. 447, 451 (6th Cir. 2006) ("The nonmoving party may not rely on the

mere fact that an adverse employment action followed speech that the employer would

have liked to prevent.").

Yatzus herself believed that the decision was made and the groundwork was being laid for her termination back in May of 2002 when Marchio began questioning her about her summer schedule. A214-16. Therefore, even in Yatzus's eyes, the plans for her termination well preceded her First Amendment activity, which began in October of 2003 at the earliest.

Moreover, it goes without saying that in order for any protected activity to play a "substantial role" in any retaliatory action by the District, it must have had knowledge of such activity. *See Mt. Healthy City Sch. Dist.*, 429 U.S. at 287. With regard to Yatzus's assistance with OCR complaints, Yatzus did not tell anyone at the District about her involvement in the complaints. A225-26; 227-29. In fact, the record suggests she affirmatively <u>denied</u> any such involvement. A227-28; 94. The District was not even aware that such OCR complaints were being filed until the first complaint was served on the District after Yatzus was terminated, much less that she had any involvement with them. A264. Therefore, it could not have based its decision to terminate her based on this fact.

**D.    Yatzus Would Have Been Terminated Absent Her Free Speech**

Even if the Court finds that Yatzus's protected activity was a substantial factor in the District's decision not to renew her contract, summary judgment must be granted for the District if the District would have made the same decision in the absence of Yatzus's speech. *See Mt. Healthy City Sch. Dist.*, 429 U.S. at 287; *Suppan v Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000).

In *Carter v. Delaware State University*, 65 Fed. Appx. 397 (3d Cir. 2003), the Third Circuit affirmed this Court's grant of summary judgment in favor of defendant public university, finding that the university's decision to deny plaintiff-professor tenure

would have remained the same even in the absence of the professor's allegedly protected speech. *Carter*, 65 Fed. Appx. at 399 (concluding that this Court's grant of summary judgment in favor of defendant on plaintiff's First Amendment retaliation claim was proper).

Specifically, in *Carter*, plaintiff-professor, Dr. Kathleen Carter, filed a First Amendment retaliation claim in the District of Delaware against defendant-university, university president, and board of trustees. *Carter v. Delaware State University*, No. 99-642 GMS, 2002 U.S. Dist. LEXIS 4721, at *2 (D. Del. Mar. 21, 2002). The professor alleged that critical remarks that she made about the university's scheduling policy during one of her classes were entitled to First Amendment protection, and these critical remarks were a substantial factor in the university's later decision to deny her tenure. *Id.* at *2. The district court held that even though the professor's remarks were a substantial or motivating factor in the denial of tenure, the university met its burden by showing that plaintiff's job performance was inadequate and sufficient grounds to deny Carter tenure in the absence of her speech. *Id.* at *8 (stating that Carter's "neutral evaluations and allegedly poor [committee] service" supported finding that defendant would have reached the same decision absent her speech). The Court noted that Carter "failed to create a genuine issue of material fact" and "never provided any facts to rebut the assertions that her evaluations were neutral and that her [committee performance] was allegedly inadequate." *Id.* at *8.

As in *Carter*, it is clear that the District would have made the same decision–to not renew Yatzus's contract–even in the absence of Yatzus's alleged speech. The written documentation regarding Yatzus's performance problems provides even more

support for the District's decision than the "neutral evaluation" and "allegedly poor [committee service]" in *Carter*. Yatzus also has not provided any facts to rebut the performance problems set forth in the District's history of reprimands. These reprimands therefore support the finding that the District would have reached the same decision to terminate Yatzus. The District is entitled to summary judgment as a matter of law in the absence of her protected speech. Therefore, her First Amendment claim must be dismissed.

**E.      The District Is Not Liable For A Section 1983 Violation**

Section 1983 does not provide for liability against governmental entities, such as a school district, based on respondeat superior. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 709 (1989); *Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable for the torts of its employees in one of three ways: (1) if the employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; (2) if the individual has policy making authority rendering his or her behavior an act of official government policy; or (3) if an official with authority has ratified the unconstitutional actions of a subordinate. *McGreevy v. Stroup, et al.*, 413 F.3d 359, 367 (3d Cir. 2005) (citing cases).

Clearly, there is no District policy that expressly permits employment decisions to be made in retaliation for an employee's exercise of a protected right, nor can Yatzus show that there is a "widespread practice" that permits such actions. Yatzus, therefore, has to show that the Individual Defendants were "persons with final policymaking authority" concerning the action alleged to have caused a constitutional violation. *Jett*, 491 U.S. at 737.

Whether any of the Individual Defendants were final policymakers is a question of state law. *See McGreevy*, 413 F.3d at 368. Nothing in Delaware law suggests that a superintendent, principal, or director of special education has been delegated policymaking authority with respect to personnel decisions. *See, e.g., Horwitz*, 260 F.3d at 619 (dismissing principal and superintendent where Illinois law did not suggest they were final policymakers with regard to personnel decisions). Rather, it is the school board which, under Delaware law, is tasked with making the decision to terminate a teacher[8] and providing notification thereof. 14 *Del. C.* § 1410(a). Yatzus has not named the Board as a defendant. Nor has she alleged that any official policy or custom of the Board's caused her injury, as necessary to impute liability to the District. *See, e.g., Monell*, 436 U.S. at 690-91 (holding that plaintiff bears the burden of demonstrating that an official policy or custom of the defendant's caused her injury). Therefore, the District cannot be held liable for any alleged Section 1983 violation.

### III.    COUNT III FAILS TO STATE AN IMPLIED COVENANT CLAIM

The employment-at-will doctrine "has a long history in Delaware and in the United States." *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 440 (Del. 1996). Under the doctrine, there is a "heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with duration indefinite." *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 102 (Del. 1992). While at-will employment remains a heavy presumption, the Delaware Supreme Court has recognized the limited application of the implied covenant of good faith and fair dealing to an at-will employment contract. *Id.* at 101.

---

[8]"Teacher" is defined under the statute to include any "certified professional employee of a public school district," including school psychologist. 14 *Del. C.* § 1401(2).

The Delaware Supreme Court, however, has strictly limited the application of the implied covenant in the employment context, holding that a plaintiff must establish that he or she falls into one of four specific categories. *Pressman*, 679 A.2d at 442-44; *Lord v. Souder*, 748 A.2d 393, 401 (Del. 2000) (holding that the four categories are exclusive). The four categories are: (1) where the discharge violates public policy; (2) where the employer misrepresented an important fact and the employee relied thereon to either accept a new position or remain in a present one; (3) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation earned through the employee's past service; and (4) where the employer falsified or manipulated employment records to create fictitious grounds for discharge. *See Pressman*, 679 A.2d at 441-44.

Yatzus alleges in Count III that the District's termination of Yatzus was in violation of prongs (1) and (4). In 2004, the Delaware General Assembly acted to clarify the reach of implied covenant claims where they implicate rights already protected by state statutes. The amendment to the Delaware Code relating to Discrimination in Employment, enacted in July 2004, states that:

> the Department shall have jurisdiction over all cases arising under this chapter, affording review and oversight of employment practices in Delaware. The Department shall endeavor to eliminate unlawful discrimination in employment through its administrative process set forth below. This subchapter shall afford the sole remedy for claims alleging a violation of this chapter to the exclusion of all other remedies.

19 *Del. C.* § 712 (b) (emphasis added). Furthermore, the synopsis of the amendments written by the Delaware General Assembly states that:

> [t]his bill confirms that Chapter 7 is the exclusive and sole remedy for employment discrimination claims, requiring initial processing of all such claims with the Department of

Labor for review and action.    <u>This bill effectively re-</u>
<u>establishes the exclusive remedy put in question by the</u>
<u>decision in Schuster v. Derocili, 774 A.2d 1029 (2001).</u>

S.B. 154, 142d Gen. Ass. (Del. 2004) (emphasis added).  In *Equal Employment*

*Opportunity Commission v Avecia, Inc*, 151 Fed. Appx. 162, 165-66 (3d Cir. 2005), the

Third Circuit has eliminated Yatzus's implied covenant of good faith and fair dealing

claims.  There, the Court recognized that the Delaware General Assembly had re-

established the exclusive remedy approach followed by the Delaware state and federal

courts prior to the Delaware Supreme Court's decision in *Schuster v. Derocili, 774 A.2d*

*1029 (2001).*  Therefore, it is clear Yatzus's implied covenant claim brought under the

"public policy"-prong must be dismissed.

Yatzus's "false-records" claim under prong four of the implied covenant

must also fail.  For falsification or manipulation of employment records to occur, the

disputed information in the records must, by definition, be false.  *See, e.g., Parker v.*

*Comcast Corp*, No. 04-344-KAJ, 2006 U.S. Dist. LEXIS 10700, at *21 (D. Del. Mar. 17,

2006); *Layfield v. Beebe Medical Center, Inc.*, No. 95C-12-007, 1997 Del. Super. LEXIS

472, at *11 (Del. Super. July 18, 1997).  In *Layfield*, the defendant discovered that the

plaintiff, a nurse, had made documentation errors which violated hospital policies.

*Layfield*, 1997 Del. Super. LEXIS 472, at *6.  The defendant terminated the plaintiff,

citing as the reason a lack of confidence in her due to the errors.  *Id* at *7.  The plaintiff

alleged that the defendant terminated her because of jealousy and resentment and that her

record was manipulated in bad faith to justify it.  *Id* at *12.  The court disagreed and

granted summary judgment to the defendant, finding that because the plaintiff admitted to

having failed to comply with company policy, she could not argue that her records had

been falsified or manipulated.  *Id* at *14.

Similarly, in this case, Yatzus does not contend that anything contained in the reprimands is false or fabricated in her written reprimands. Rather, she claims only that the reprimands were for petty reasons and that others did not get disciplined similarly. She has acknowledged the accuracy of the content of the reprimands. A177; 178-79; 182-97. Her belief that the reprimands were unduly harsh based on her actions does not constitute a false records claim. *Patten v. Zeneca, Inc.*, No. 94C-07-180-WTQ, 1996 Del. Super. LEXIS 86, at *6-7 (Del. Super. Feb. 13, 1996) (holding that employee's subjective disagreement with his employer's perception of and opinions about his conduct did not provide an adequate factual predicate for a claim of breach of the covenant). Even if the District recklessly placed false information in Yatzus's personnel file, this would not qualify as falsification or manipulation required for an implied covenant claim. *See Geddis v. Univ. of Delaware*, 40 Fed. Appx. 650, 654 (3d Cir. 2002) (holding that allegedly inadequate investigation of allegations prior to discharge was insufficient to support an implied covenant claim).

The fictitious-grounds prong is also inapplicable to Yatzus's allegation that the District lied in her dismissal letter about the real reason for her termination. "If the employer did not actually falsify or manipulate employment records, than it does not matter if the employer gave a false rationale for termination." *Avecia*, 151 Fed. Appx. at 165. Rather, to state an implied covenant claim, the creation of fictitious grounds for termination must be based on falsified or manipulated records. *Id. See also Williams v. Caruso*, 966 F. Supp. 287, 291 (D. Del. 1997) (citing *Pressman*, 679 A.2d at 444) ("*Pressman* only held culpable the *manufacture* of grounds for dismissal, not the

*statement* of a false reason for dismissal") (emphasis in original). Therefore, Yatzus's

implied covenant claim must be dismissed.

## IV.   COUNT IV FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Yatzus's claim for intentional infliction of emotional distress ("IIED") is

plainly barred by the Delaware workers' compensation law, as this Court held in *EEOC v.*

*Avecia, Inc.*, No. 03-320-SLR, 2003 U.S. Dist. LEXIS 19325, at *13 (D. Del. Oct. 23,

2003) (citing *Konstantopoulos v. Westvaco Corp.*, 690 A.2d 936, 938 (Del. 1996)). In

*Konstantopoulos*, the Delaware Supreme Court responded to a certification from the

Third Circuit in a Title VII claim in which the plaintiff also asserted the state law tort of

IIED based on alleged sexual harassment. *Konstantopoulos*, 690 A.2d at 937. The

Delaware Supreme Court found that the claim was barred by the exclusive remedy

provisions of the Delaware workers' compensation law. *Id.* at 938. Yatzus is, in fact,

pursuing a workers' compensation claim for alleged mental distress; workers'

compensation is therefore her exclusive remedy. *Avecia,* 2003 U.S. Dist. LEXIS 19325,

at *13 ("IIED stemming from on-the-job discrimination is barred by the [Delaware

Workers' Compensation] Act.") (citing *Brodsky v. Hercules, Inc.*, 966 F. Supp. 1337,

1353 (D. Del. 1997)).

Yatzus's claim also fails because she has not alleged any conduct by her

employer that is "outrageous" as required for assertion of the tort of IIED. *See Avallone*

*v. Wilmington Medical Center*, 553 F. Supp. 931, 938 (D. Del. 1982). Indeed, the Third

Circuit has noted that it is extremely rare in the employment context for conduct rise to

the level of being outrageous for purposes of the tort of IIED. *Cox v. Keystone Carbon*,

861 F.2d 390, 395 (3d Cir. 1988); *Andrews v. Philadelphia*, 895 F.2d 1469, 1486-87 (3d

Cir. 1990).[9] Therefore, the District should be granted summary judgment on Yatzus's IIED claim.

## CONCLUSION

For the reasons and authorities cited herein, Defendant's motion for summary judgment should be granted, and the Plaintiff's complaint dismissed in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

DATED:     July 10, 2006

---

[9]Both cases apply Pennsylvania law which, like Delaware, has adopted the Restatements with regard to the tort of IIED.  *See, e.g., Thomas v. Harford Mutual Ins. Co.,* No. 01C-01-046-HDR, 2003 Del. Super. LEXIS 268, at *7-8 (Del. Super. July 25, 2003).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

OLGA ALEXANDRA YATZUS,                    )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )    C.A. No. 05-103-SLR
                                          )
APPOQUINIMINK SCHOOL DISTRICT             )
and TONY MARCHIO, individually and in     )    **TRIAL BY JURY DEMANDED**
his official capacity, MARY ANN           )
MIECZKOWSKI, individually and in her      )
official capacity, DONNA MITCHELL,        )
individually and in her official capacity, and )
MARION PROFFITT, individually and in      )
her official capacity,                    )
                                          )
                        Defendants.       )

## CERTIFICATE OF SERVICE

I, Adria B. Martinelli, Esquire, hereby certify that on July 10, 2006, I

electronically filed a true and correct copy of the foregoing **Defendant Appoquinimink School**

**District's Opening Brief in Support of Its Motion for Summary Judgment (REDACTED)**

with the Clerk of the Court using CM/ECF, which will send notification that such filing is

available for viewing and downloading to the following counsel of record:

> Philip B. Bartoshesky, Esquire (#2056)
> Biggs & Battaglia
> 912 N. Orange Street
> P.O. Box 1489
> Wilmington, DE 19899

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli
_____
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com