IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ANSWERING BRIEF OPPOSING DEFENDANT APPOQUINIMINK
SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT**

# REDACTED

**BIGGS AND BATTAGLIA**

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

Date: July 25, 2006

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS................................................1

II.   STATEMENT OF THE FACTS...................................................................2

III.  SUMMARY OF THE ARGUMENT ...............................................................12

    1.    There are disputed issues of material fact precluding Summary Judgment on
Plaintiff's for retaliation under Title VII. ...........................................................13

    2.    There are disputed issues of fact precluding Summary Judgment on Plaintiff's First
Amendment retaliation claims. .......................................................................14

    3.    There are disputed issues of fact precluding Summary Judgment on Plaintiff's
Breach of the Covenant of Good Faith and Fair Dealing claim. ......................................16

IV.   ARGUMENT ........................................................................................16

    1.    Plaintiff's Title VII retaliation claims must be decided by a jury. ...........................16

        a.    Legal Standard ............................................................................16

        b.    Merits of Argument........................................................................17

            1.    There are disputed issues of material fact precluding Summary
Judgment on Plaintiff's claim for retaliation under Title VII. ..................17

                i.    Plaintiff has established a *prima facia* case...........................18

                ii.   There is a causal connection between Defendant's acts and
Plaintiff's complaints of discrimination and harassment ...19

                iii.  The record establishes the purported legitimate reasons
offered by Defendant for Plaintiff's non-renewal are a
pretext for retaliation. ......................................................22

    2.    There are disputed issues of fact precluding Summary Judgment on Plaintiff's First
Amendment Retaliation Claim...........................................................................24

        a.    Legal Standard ............................................................................24

        b.    Merits of the Argument ...................................................................25

i

i.     Plaintiff engaged in speech as a citizen addressing matters of public concern.........................................................................25

ii.    Plaintiff's communications with a parents group regarding the Office of Civil Rights was a matter of public concern....................27

iii.   There are disputed issues of material fact as to whether Plaintiff's protected speech was a substantial or motivating factor in Defendant's adverse employment actions. ......................................28

iv.   Plaintiffs have failed to carry their burden of proving Plaintiff would have been terminated absent her protected speech. ...........31

v.    The District is liable for Section 1983 violation because Defendant Marchio is a policy maker with respect to personnel decisions under Delaware law....................................................................31

3.    There are disputed issues of fact precluding Summary Judgment on Plaintiff's breach of the Covenant of Good Faith and Fair Dealing claim. ............................32

a.   Plaintiff was terminated for advocating student rights in violation of the public policy of this state. ...........................................................33

b.   Defendant's rationale for terminating Plaintiff was fictitious and manufactured. ......................................................................34

V.   CONCLUSION .............................................................................35

## TABLE OF AUTHORITIES

### Federal Cases

Brey v. Marriott Hotels, 110 F.3d 986, 990 (3d Cir. 1997) ............................................18

Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct 2405(2006) ..............17, 18, 20

Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004) ...........................16

E.I. duPont de Nemours v. Pressman, 679 A.2d 436 (Del. 1996) .....................................32, 34, 35

Farrall v. Planters Life Saver Co., 206 F.3d 271 (3d Cir. 2000) ...............................................16, 20

Garcetti v. Ceballos, 126 S.Ct. 1951 (2006) .....................................................................24-26, 34

Gharzouzi v. Northwest Human Services of Pa., 225 F.Supp.2d 514, 544 (E.D. Pa.2002) ....16, 23

Glass v. Philadelphia Electric Co., 34 F.3d 188, 195 (3d. Cir. 1994) ...........................................21

Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 321 (3d Cir. 2000) ....................16, 20

Hazen Paper Co. v. Biggins,  507 U.S. 604 (1993) ........................................................................23

Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989)..................................................................17

Johnson v. E.I. duPont de Nemours & Co., 60 F.Supp.2d 289, 293 (D.Del. 1999) ......................17

Josey v. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)...................................................23

Kachmar v. Sun Guard Data Systems, Inc., 109 F.3d 173, 178 (3d Cir. 1997) ...........................20

Marwood v. Elizabeth Forward School District, 91 Fed. Appx. 207 (3d Cir. 2004) .....................29

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ...........................................................17

McGreevy v. Stroup, 413 F.3d 359  (3d Cir. 2005) ...............................................................24, 25

McHugh v. Board of Education of the Milford School District, 100 F.Supp.2d 231

(D.Del 2000) ....................................................................................................................34, 35

Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1997) ...................................................25

Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)(cert. denied 493 U.S. 1023 (1990) ............17

Paollela v. BFI, 158 F.3d 183 (D.Del, 1998) .............................................................................33

Pickering v. Board of Education, 391 U.S. 563 (1968)................................................................26

Robinson v. SEPTA, 982 F.2d 892, 894-895 (3d Cir. 1993)....................................................20, 21

Schuster v. Derocili, 774 A.2d 1029 (Del, 2001) ........................................................................33

Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995)..................................................23

St. Mary's Honor Center v. Hicks, 509 U.S. 502...........................................................................18

Stewart v. Rutgers State Univ., 120 F.3d 426 (3d Cir. 1997) ......................................................16

Wilcoxon v. Red Clay Consolidated School District (copy attached to Defendant's Opening Brief) ................................................................................................................25, 27

Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997)............................................................21


**Federal Statutes**

42 U.S.C. § 1983....................................................................................................................32

**State Statutes**

14 Del.C. § 1410 .................................................................................12, 21, 25, 31, 32

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Olga Yatzus ("Plaintiff") was hired by Defendant Appoquinimink School District (the "District") as a school psychologist in August of 2001. In February 2002, she complained to District Administrators of sexual harassment **REDACTED: CONFIDENTIAL MATERIAL** which the District found to be valid. She alleges that thereafter, the District, through its Superintendent, Tony Marchio, ("Marchio"), Assistant Superintendent, Marion Proffitt ("Proffitt"), Director of Special Education, Mary Ann Mieczkowski ("Mieczkowski"), and the principal of Middletown High School, Donna Lee Mitchell ("Mitchell"), placed a series of false and contrived reprimands in her file in order to justify terminating her employment at the end of the 2002-2003 school year.

On April 29, 2003, Plaintiff made a written complaint of retaliation and discrimination with the Delaware Department of Labor ("DDOL") (B-167) which was delivered to the District Administrators on or about May 1.

On May 5, 2003, Plaintiff received the first in a series of notifications that her contract would not be renewed due to the number and nature of reprimands in her personnel file.

On May 14, 2003, Plaintiff filed a formal charge of discrimination with the DDOL and the Equal Employment Opportunity Commission ("EEOC"). Ultimately, the EEOC issued a Right to Sue Letter.

On February 21, 2005 Plaintiff filed a Complaint in this case naming the District and individuals, Marchio, Proffitt, Mieczkowski and Mitchell as Defendants. Plaintiff's Complaint alleges retaliation under Title VII and also retaliation based upon Plaintiff's exercise of her right

2

to free speech under the First Amendment. The Complaint makes state law claims of wrongful termination and intentional infliction of emotional distress.

Defendants have filed two Motions for Summary Judgment, one on behalf of only the District and a separate Motion and Brief filed by the four Individual Defendants. This is Plaintiff's Answering Brief in Opposition to the District's Motion for Summary Judgment. Plaintiff has also filed a separate Brief opposing the Individual Defendant's Motion for Summary Judgment.

Plaintiff concedes that her claim for intentional infliction of emotional distress must be dismissed based upon recent rulings by this Court and the Court of Appeals.

References to the record both in this Brief and Plaintiff's companion Brief opposing the Individual Defendants' Motion for Summary Judgment shall be to the Appendix filed by the Defendants referred to as "A-_" and to the Appendix filed with this and Plaintiff's companion Brief referred to as "B-_".

## II.    STATEMENT OF THE FACTS

Plaintiff Olga A. Yatzus ("Plaintiff"), born in 1955, has a Master's in psychotherapy and counseling with a specialty in adolescence and is a certified school psychologist. She has been an adjunct professor at Wilmington College and University of Delaware. She was the 1998 Delaware School Psychologist of the Year and a past President of the Delaware Association of School Psychologists. (Yatzus Aff. and Resume B-2, 8-10)

After working more than 20 years in Delaware schools, Plaintiff took a position in the District in August 2001. There were no disciplinary "write-ups" in her District personnel file

3

until February 2002 when she complained of sexual harassment by her supervisor. Thereafter, District Administrators seeded her file with some 15 reprimands over the next 14 months in order to justify terminating her employment.

Before being hired by the District ("District"), Plaintiff worked in the Vo-Tech District for ten years. She left Vo-Tech after individuals from the Wellness Center (an organization which provides health support services) and she reported to Child Protective Services abuse of a student by her father, REDACTED: CONFIDENTIAL MATERIAL. The student eventually recanted, and Plaintiff's situation became uncomfortable so she took the position in the District.

In the District, Plaintiff worked primarily at Middletown High School. Her employment was terminated effective June 2003, one school year short of the 25 years for full pension rights and 6 years shy of when she would have retired. (termination notices B-11-12)

Psychologists work under the supervision of the Special Education Division of the District. In 2001, the head of Special Education was Vaughn Lauer ("Lauer"). Because Plaintiff took a reduction in pay, Lauer guaranteed her work during the summer of 2002. (Yatzus depo.p.40, B-75; Hadley depo.p. 36-37, B-153)

In the Fall and early Winter of the 2001-2002 school year, Plaintiff rebuffed REDACTED: CONFIDENTIAL MATERIAL inappropriate sexual advances. She hoped there would be no repercussions, but in early February 2002, REDACTED: CONFIDENTIAL MATERIAL. (B-13) Plaintiff informed District Administration REDACTED: CONFIDENTIAL MATERIAL. She was interviewed by Assistant Superintendent Defendant Proffitt ("Proffitt") and Finance Director Nutter ("Nutter"). (Yatzus depo.p. 62-63, B-76; A-15)

4

The District retained an attorney from Young Conaway Stargatt & Taylor, Teresa Cheek, to investigate. Ms. Cheek's February 19, 2002 report (A-49) REDACTED: CONFIDENTIAL MATERIAL. Ms. Cheek interviewed a number of District employees. At her deposition, Mitchell claimed she was unaware Plaintiff had been harassed REDACTED: CONFIDENTIAL MATERIAL until this suit was filed, or even knowing Ms. Cheek investigated (Mitchell depo. 14-15, 24) even though she was interviewed by Cheek and told her Plaintiff had complained of the harassment REDACTED: CONFIDENTIAL MATERIAL. (A-42) Ms. Cheek determined Plaintiff's allegations were valid and REDACTED: CONFIDENTIAL MATERIAL. (Cheek report, A-60)

Ms. Cheek recommended the District report back to Plaintiff; reassure her she would be protected from further retaliation; and advise her to contact administrators (Proffitt, Marchio or Nutter) if she felt subjected to further harassment or retaliation. Ms. Cheek told Plaintiff to contact her if she was experienced further retaliation.

No one reported to Plaintiff until she asked. (Yatzus depo.p. 75-77, B-77) She was not advised to contact Administrators if she felt harassment or retaliation. Proffitt denies even knowing Cheek did an investigation. (Proffitt depo.p. 37-41 B-158-159) REDACTED: CONFIDENTIAL MATERIAL. No substantial action was taken against him for his misconduct. (Yatzus depo.p. 75-77, 79-81 B-77-78; Yatzus e-mail to Cheek, A-70; Green depo.p. 38, 45, B-143, 144; Marchio depo.p. 32-33, B-163)

Defendants' antagonism and retaliation began within days of her harassment complaint. On February 13, 2002, Proffitt issued a reprimand to Plaintiff REDACTED: CONFIDENTIAL MATERIAL. Proffitt believed Plaintiff was one of several employees who had responsibility for the incident, but recalls issuing a reprimand only to Plaintiff. (Proffitt depo.p. 36-37, B-158) The

5

antagonism continued near the end of that school year. In April or May of 2002, Marchio questioned Plaintiff's request to attend conferences for required continuing education credits, accusing her of taking advantage REDACTED: CONFIDENTIAL MATERIAL. Other employees, especially two REDACTED: CONFIDENTIAL MATERIAL, had been allowed to go to week-long seminars without question. (Yatzus Aff., B-4; depo.p. 90-93, B-79)

Marchio questioned Plaintiff's right to summer work, though it had been guaranteed to her. He constantly hounded her regarding documenting her summer hours. She always tried to accommodate him, but he was never satisfied. Without notice to her or the Payroll Department, Marchio withheld one of her time sheets preventing her from being paid. (Yatzus depo.p.94-97; B-80, Aff. B.4-5)

Plaintiff complained to her union about Marchio's retaliation. A union representative attempted to act as an intermediary, but the harassment continued. (B-41-43) In late August, not having any resolution through the union, Plaintiff sent an e-mail to Teresa Cheek complaining of Marchio's retaliation. (A-70)Cheek forwarded Plaintiff's message to District's administration, but no one ever responded to Plaintiff. Instead, after reviewing Plaintiff's accusations, Marchio issued a written reprimand (B-15) falsely accusing her of failing to comply with his instruction that she document her summer hours. (Marchio depo.p. 71-72, B-164) She had, in fact, provided documentation.

She had sat with a secretary who she saw fill out a calendar showing when she would work. Plaintiff believed that was all that was necessary. The scribbled note (A-63) is not, as Defendants claim, the calendar that was filled out. Plaintiff testified she never saw this note and did not know what it was. (Yatzus depo.p. 97-101, B-80, 81)

When Marchio sent Plaintiff a July 3, 2002 letter claiming documentation of her summer hours was inadequate, she submitted a list to him on July 9. Again, she believed she had complied with his requests. Marchio, a month or so later again complained. At this point, Plaintiff went to the union, then sent a message to Ms. Cheek. (Yatzus depo.p. 103-109, B-83)

Throughout the 2002-2003 school year, Defendants went out of their way to ensure it would be nearly impossible for Plaintiff to comply with the way they wanted her to do her job.

Part of a school psychologist's responsibilities is to see that students are evaluated to see if they should be classified as "special education" students. Special education students must also be reevaluated every three years and there must be periodic updates of their Individualized Education Plan ("IEP"). An "Educational Diagnostician" ("ED") has the responsibility to maintain the special education files, schedule the IEP and other meetings, and follow students through the process. Normally, a secretary familiar with the process assists in scheduling meetings, evaluations and completing required forms. (Mieczkowski depo.p. 21-22; B-112-113; Hill depo.p. 12, B-122)

When Plaintiff began at the District, an ED had decided to have special education teachers handle the testing and meeting scheduling and filing. That did not work. By the end of the 2001-2002 school year the District was woefully behind in the IEP processes.

A new ED was assigned to Middletown High School, Marylyn Sweeney ("Sweeney") for 2002-2003. About half way through the first semester, the District finally assigned a secretary to help with the special education process. That secretary, Phyllis Waecker, had no relevant experience (she resigned in frustration before the end of the year) (Mieczkowski depo.p. 55-57, B-117, Hill depo.p. 14, 80, B-123, 135) Sweeney spent the majority of her time simply attempting

7

to bring files into compliance with the law. In many instances, IEP meetings were scheduled at the last minute, with little notice to Plaintiff. (Yatzus depo.p. 124-129, B-87, 88 and letters B-17-19)

Defendants were aware of these problems, but instead of attempting to solve them, they used it as an excuse to place reprimands in Plaintiff's file. For example, at the last minute a series of IEP meetings were scheduled for September 25, 2002. Plaintiff did not have the time or resources to have written reports available for some of the meetings. Instead of acknowledging the flaw in the system, Defendants' issued three separate reprimands (from Mieczkowski, Mitchell and Assistant Principal Dooley) to Plaintiff.[1] (Letter B-17-19) Other psychologists have not had reports ready on time and have not been reprimanded. (Green depo.p. 52, B-146)

The administrators who issued these reprimands acted in collusion. Two of the three letters contain identical language. (B-17-18) Dooley and Mitchell admit they talked before the write-ups went out. (Dooley depo.p. 12-13, B-151, Mitchell depo.p. 39-42, B-104, 105) Mieczkowski says she told Dooley Plaintiff needed to be cited. (Mieczkowski depo.p. 40-41, B-115)

Plaintiff protested through the union and it was determined the three reprimands would be replaced by one. (Yatzus depo.p. 130, B-89; Mieczkowski depo.p. 48-49, B-116; letter B-21) In fact, the District just added a fourth letter. None were removed. (Yatzus Aff. B-3)

After the end of the first semester of the 2002-2003 year, Sweeney was replaced by Sharon Hill ("Hill"). Hill began as the ED just after Christmas break. Defendants told Hill to

---

[1] Requiring written reports prior to each IEP meeting is not required by law. Mieczkowski initiated this practice shortly before the September 25 meetings. (Green depo.p. 51-53, B-145-147)

8

watch Plaintiff and report on her. Hill, at first, believed this was simply a new Principal

(Mitchell) and new Special Education Supervisor (Mieczkowski)being overly cautious. Later Hill

came to understand she was actually being asked to try to find fault in Plaintiff's performance.

Hill told Defendants she did not want to be part of the "gotcha" mentality. Hill then also

became a target. Hill has described the atmosphere after that time at the District as "toxic".

(Hill depo.p.22-25, 50-53, B-125, 131)

After the Christmas break, Plaintiff, Hill and Waecker were moved to a single office with

the special education files piled up and in complete disarray. Hill was forbidden to contact

Sweeney to decipher the filing or learn the status of any student. They were not provided with

necessary computer hardware or software. There was no suitable location for Plaintiffs to

evaluate students. They complained to the administration and a few weeks later, without

warning, their offices were moved, but still no computer services or phones. A few weeks after

that, their offices were moved again. In all, Plaintiff had five offices that school year. (Yatzus

depo.p. 132, B-89-92, 136-145; Hill depo.p. 14-18, B-122-124)

Hill (and Plaintiff)were convinced Defendants the special education process at

Middletown High School. Defendants' primary goal was to get rid of students who were not easy

to handle. Mitchell had even told Plaintiff to lie to support the Administration against parents of

special education students. (Yatzus depo.p. 231-232, B-99; Hill depo.p. 69, B-132)

By February the situation was so antagonistic Plaintiff again contacted union

representatives who told her to make written complaints. Plaintiff wrote to Mitchell,

Mieczkowski and Dooley describing the hostility she faced in trying to help special education

students. (February 28 letters B-60-63)

No one responded.  Instead, more reprimands followed.  Plaintiff was reprimanded by Marchio on March 3, 2003 for being late to an IEP meeting.  That morning, Plaintiff was delayed due to an emergency with a distraught student, and because she never received notice the meeting would be at the District offices.  She was one-half hour late for a meeting which lasted nearly 10 hours. (Yatzus depo.p.118-122, B-86, 87)

Plaintiff filed a union grievance.  Proffitt presided as the hearing officer.  The District erased the tape of the hearing making further review impossible.  (Yatzus Aff. B-5; e-mail B-29) The District suppressed evidence that Plaintiff had not received adequate written notice of the meeting.  (E-mail from Waeker to Mitchell, B- 170) Proffitt admitted the missing evidence should have been considered.  (Proffitt, depo.p.90-92, B-160)

Defendants admit no one else had ever been reprimanded for being late to such a meeting (even though some were).  In fact, Hill was late for that meeting.  (Mieczkowski depo.p. 58, B-118; Hill depo.p. 35, B-128; Inter. Ans. A-143)

Plaintiff was later reprimanded for not correctly reporting when she was absent.  Mitchell insisted Plaintiff should give notice through the "substitute teacher" program.  (Yatzus depo.p. 110-114, B-84, 85) School psychologist, however, are not required to report through that program.  (Hadley depo.p.70-72, B-156; Green depo.p. 62, B-148; Hill depo. 112-113, B-138)

She was reprimanded for not having written reports submitted forty-eight (48) hours prior to meetings.  (B-20) No other person was required to submit reports in that time frame. (Mieczkowski depo.p. 30, B-114; Green depo.p. 52, B-146; Hadley depo.p. 49, B-155)  Dooley was instructed to write-up Plaintiff for having students in her office. (Hill depo.p. 36-37, B-128)

This was so absurd. Dooley would not go through with it. (Yatzus depo.p. 152-153, B-93; Dooley depo.p. 18-19, B-151(a))

One of the two reprimands from Mitchell, dated April 2, 2003, blamed Plaintiff for a supposedly incomplete IEP report on a student named REDACTED: CONFIDENTIAL MATERIAL from the previous December. (B-25) In a memorandum to Marchio and Proffitt, Mitchell indicated three other individuals at that December IEP meeting would also receive reprimands. These other three were to cover up harassment of Plaintiff, (one of the three, Sweeney, no longer worked for the District). Mitchell wrote those other three "... also received a REDACTED: CONFIDENTIAL MATERIAL. They all attended and signed the minutes of the meeting. So in order to be equal, they all had to get one." (Yatzus depo.p. 155-157, B-93(a); Mitchell depo.p. 89, B-109)

Plaintiff, in early April, again protested, sending messages to Marchio, Mitchell and Mieczkowski describing their hostile attitudes towards her, the special education students and parents. (B-50-59) She asserted Mieczkowski and Mitchell were not doing their jobs and violating special education regulations. She received no substantive response, just more reprimands in her file. (April 9 and 24 reprimands B-27, 28)

Throughout most of that school year a number of parents complained of unfair treatment of their children. They eventually formed a group known as "Parents Advisory Council Team" or "PACT" (also referred to as the O+O group). Plaintiff went to some PACT meetings and frequently communicated with members through her personal AOL e-mail account, advising them primarily of their right to contact the federal Office of Civil Rights ("OCR"). (Yatzus Aff. B-6-7; letter, B-64-73)

11

Plaintiff and the group envisioned a class action OCR Complaint, (B-29)but the OCR required individual filings. Some seven families filed OCR complaints. (Mitchell depo.p. 120, B-110; Mieczkowski depo.p. 121, B-120(a)) Defendants identified Plaintiff with this group of parents which intensified their hostility. (Hadley depo.p.80, B-156(a); Mieczkowski depo.p. 119-120, B-120(a); Hill depo.p.90-91, B-137)

In April 2003 Plaintiff, convinced Defendants' hostility would not relent, went to the Department of Labor and the EEOC. On April 30, 2003, a copy of her initial charge was delivered to the administration. (Yatzus depo.p. 52-53, B-75(a)) Within days, the District also received notices of the parents' OCR complaints (A-108-111). On May 5, 2003 Plaintiff received notice from the personnel director of the recommendation her contract not be renewed.[2]

After the School Board approved the non-renewal on May 13 and after the review process mandated by law, Marchio, pursuant to 14 Del.C. § 1410 made the final decision of non-renewal on June 12, 2003. Plaintiff was informed in writing the reason her contract would not be renewed was the "number and nature" of the reprimands in her file. (B-12)

---

[2] The May 5, 2003 letter was signed by Zen Marusa, Personnel Director, and addressed to: "Dear Yatzus". A second letter of the same date also purportedly from Mr. Marusa, is addressed to: "Dear Mrs. Yatzus". The second letter bears Mr. Marussa's stamp rather than his signature. It was never sent to Plaintiff. A stamped letter also appears in Hill's personnel file purportedly from Mr. Marusa. Hill never received it. The phony letter to Ms. Hill says her contract would not be renewed. In fact, the District officially offered her a position for the next school year, but she took a job in another district because of her horrible experiences in the District. Defendant, at some point, clearly manufactured these false letters and placed them in Hill's and Plaintiff's personnel files. Hill is pursuing this matter separately because she believes the appearance of this letter in her file violates her agreement with the District settling a worker's compensation claim she made based upon the stress related injuries Defendants caused her to suffer. (Hill depo. B-76-77, 119-123, B-134, 135, 138-138(b))

12

When she finally was sent a copy of those reprimands, they included **REDACTED: CONFIDENTIAL MATERIAL** which Ms. Cheek had determined was retaliation and four reprimands relating to September 25, 2002 reports, three of which should have been removed.

According to school psychologist Judith Green, even to this day when Plaintiff's name comes up at the District, teachers and administrators know they should make disparaging remarks. Green says it is known in the District that an employee who dissents (like Plaintiff) will become a target. (Green depo.p. 68-69, B-148(A)-149)

## III.    SUMMARY OF THE ARGUMENT

1.    **There are disputed issues of material fact precluding Summary Judgment on Plaintiff's for retaliation under Title VII.**

Plaintiff has established a *prima facia* case. She clearly engaged in the protected activity of complaining about sexual harassment. She has established the employer took actions likely to deter victims of discrimination from complaining. Under the circumstances of this case these acts include accusing her of trying to take advantage of the fact **REDACTED: CONFIDENTIAL MATERIAL;** withholding of her timesheets and causing her not to be paid; and setting her up for failure by moving her office and not supplying her with adequate and necessary computer systems and telephones. In addition, Defendant's placed contrived reprimands in her personnel file in order to justify terminating her employment under Delaware law. She was reprimanded for incident for which no other employee had ever been reprimanded (such as being late to a meeting) and was required to comply with requirements for reporting absenteeism and filing reports that no other employee in her circumstances were required to do.

13

She has established a causal connection between her protected activity and the termination of her employment. There is a clear pattern of antagonism and hostility directed towards Plaintiff from shortly after her complaint of harassment until the ultimate termination of her employment. The first reprimand ever appearing in her personnel file at the District was issued just days after her harassment complaint. Contrived reprimands and other antagonism persisted through the remainder of that school year and through the next school year until ultimately she received notice of termination.

Plaintiff has also established that the Defendant's purported legitimate reason for terminating her employment is contrived. Defendant has used false and contrived reprimands as a justification to terminate Plaintiff's employment. These reprimands were not issued for legitimate reasons, but constitute a series of harassments directed at Plaintiff because she had dared to step forward.

2.    **There are disputed issues of fact precluding Summary Judgment on Plaintiff's First Amendment retaliation claims.**

Plaintiff engaged in speech as a citizen addressing matters of public concern. Plaintiff sent messages to the Superintendent, to the Director of Special Education and to her high school principal, complaining that special education students had been targeted for suspension without due process and that administrators had been engaging in abusive, inappropriate and illegal conduct.

14

Plaintiff had communications with a parent group which had been formed to protest the District's illegal and abusive actions with respect to their children, advising them of their rights to pursue their claim with the Office of Civil Rights.

Plaintiff's complaints about the systemic problems within the school system as it relates to special education and the treatment of students is not part of Plaintiff's job as an employee of the District, while it may be an ethical obligation of her profession. Therefore, she was speaking as a citizen and enjoys First Amendment protection.

Plaintiff's communication with a parents' group regarding their rights was a matter of public concern and not a private matter. Plaintiff advised the group as a whole which originally envisioned a class action OCR complaint blowing the whistle on the non-compliance of the District with special education and other requirements.

There are disputed issues of fact as to whether Plaintiff's speech was a substantial or motivating factor in Defendant's adverse employment actions taken against her. The reprimands placed in her file were for the purpose of terminating her employment. She was disciplined for acts for which no other employee has been disciplined and due to requirements of District Administrators imposed uniquely on Plaintiff. Plaintiff has shown that the Individual Defendants were angry with her when she opposed their will and pointed out the illegality of their conduct when dealing with the proposed discipline of students.

Plaintiff has shown evidence that Defendants were aware of her connections with an advice to the parents group, including the District's illegally breaking into Plaintiff's computer and reviewing her personal e-mail account messages to and from members of this group.

15

Defendants had been unable to show that Plaintiff would have been terminated absent her protected speech. Defendants assert only that there are legitimate reprimands in Plaintiff's personnel file. However, absent Plaintiff's protected speech, there would have been no reprimands to justify her termination. Defendants would have had no basis for terminating Plaintiff if she had not engaged in this protected speech.

Plaintiff has also shown that Defendant Marchio made the final determination to terminate Plaintiff and is therefore a policy maker with respect to personnel decisions. Thus, the District is liable for the actions taken against Plaintiff.

3.    **There are disputed issues of fact precluding Summary Judgment on Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing claim.**

Plaintiff was terminated for advocating student rights. This violates a public policy of the State of Delaware. Under the Delaware statutes and its Constitution, the right to a free public education is an important public policy of this state. When Plaintiff was disciplined and eventually terminated for attempting to advance that right, a violation of the public policy of this state has been established.

By seeding Plaintiff's personnel file with numerous reprimands which were contrived and/or false, Defendant must be deemed to have manufactured a basis to hide the true motive for Plaintiff's termination. This is a violation of the Covenant of Good Faith and Fair Dealing present in every employment contract. Her wrongful termination complaint claim must be allowed to go forward.

16

IV.    ARGUMENT

1.    Plaintiff's Title VII retaliation claims must be decided by a jury.

a.    Legal Standard

On a Motion for Summary Judgment, the Court must view the record and make inferences in a light most favorable to the non-moving party.  Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004); Farrall v. Planters Life Saver Co., 206 F.3d 271 (3d Cir. 2000); Stewart v. Rutgers State Univ., 120 F.3d 426 (3d Cir. 1997).  The Third Circuit has urged, "Special caution in granting Summary Judgment to an employer when its intent is at issue, particularly in discrimination and retaliation cases."  Gharzouzi v. Northwestern Human Services of Pa., 225 F.Supp.2d 514, 517 (E.D. Pa 2000) (citing Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 321 (3d Cir. 2000).

As stated in Johnson v. E.I. duPont de Nemours & Co., 60 F.Supp.2d 289, 293 (D.Del. 1999) (quoting Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) and Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)(cert. denied 493 U.S. 1023 (1990)):

> "When the defendant's intent has been called into question, the matter is within the sole province of the fact finder.  As we have pointed out before, because 'intent is a substantive element of the cause of action – generally to be inferred from the facts and the conduct of the parties – the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility.'"

In the present case, relies heavily upon the self serving testimony of the Individual Defendants, and asks this Court to draw inferences in its favor.  When the record and the inferences from the record are construed in the light most favorable to the Plaintiff, it is clear Summary Judgment must be denied.

17

###### b.    Merits of Argument

1.    There are disputed issues of material fact precluding Summary Judgment on Plaintiff's claim for retaliation under Title VII.

Under the <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) "burden shifting" or "pretext" framework as recently modified in <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S.Ct 2405(2006), a plaintiff in a Title VII retaliation case may establish a *prima facia* case by showing: (1) she engaged in a protected activity; (2) the employer took actions likely to deter victims of discrimination from complaining; and (3) a causal link between 1 and 2.

The employer may rebut the *prima facia* case by demonstrating legitimate reasons for its actions. In response, the plaintiff must show the reasons offered by the employer are either not worthy of credence or that the true reason for the employer's actions were retaliation. *See* <u>Brey v. Marriott Hotels</u>, 110 F.3d 986, 990 (3d Cir. 1997); <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502.

###### i.    Plaintiff has established a *prima facia* case.

The District admits Plaintiff engaged in protected activity in complaining about sexual harassment. Defendant omits Plaintiff also complained of Marchio's retaliation to the union and to Ms. Cheek (who forwarded it to the School District administrators). These are related protected activities.

The District claims all the adverse actions taken against Plaintiff, except for placing write-ups in her file and her termination, were petty workplace annoyances which do not amount to actions which would be considered "materially adverse" under <u>Burlington</u>, *supra*. This argument relies upon a construction of the record favorable to the District, as well as a misconstruction of the <u>Burlington</u> standards.

18

In some contexts, questioning an employee's travel to a conference, withholding a paycheck or moving an employee's office could be trivial harms unlikely to deter a reasonable employee from complaining of discrimination. However, <u>Burlington</u> adopted a reasonableness standard, the Court recognizing, "...the significance of any given act of retaliation often depends on the particular circumstances. Context matters." <u>Burlington</u>, *supra*, 126 S.Ct. at 2415.

Marchio's questioning Plaintiff's request to attend a professional conference, must be looked at in context. Two employees, **REDACTED: CONFIDENTIAL MATERIAL**, were permitted to go on week long out of state conferences without question. Marchio directly connected Plaintiff's travel request to **REDACTED: CONFIDENTIAL MATERIAL**. Marchio was not, as Defendant suggests (Open. Br.p. 22) simply asking a "clarifying question" regarding the conference, he was harassing Plaintiff because she contributed **REDACTED: CONFIDENTIAL MATERIAL**.

The District's version of Marchio's withholding Plaintiff's time sheet relies on Marchio's testimony and unsupported assumptions. Plaintiff was at work on July 3, 2002. She did not know Marchio had questions about her attendance, nor that he had withheld her timesheet. Contrary to Defendant's claim, a cryptic sentence in Marchio's July 3 letter, ("...I have some concerns that I would like to discuss with you on one of your workdays and I ask that you stop in at your earliest convenience.") (A-62) conveys only that he wanted to have a meeting. They met July 9. Marchio did not tell her he had withheld her timesheet, nor that he had concerns about her work on July 3, 2002.

All Plaintiff knew was at the end of the pay period she did not receive a check. She went to the Payroll Department, which did not know Marchio had her timesheet. It was assumed her

19

timesheet was lost.  (Yatzus Aff. B-5) This was not normal workplace questioning of an employee's work, but a vindictive act.

The District asserts Plaintiff's office was moved because of the District's growth is, again, Defendant's slanted version.  Plaintiff was moved into spaces without adequate computer systems or telephones. An ED was assigned to spy on her.  Defendants were setting traps, making sure they could find reasons to place reprimands in her file.  Setting her up for failure by constantly moving her office is not trivial, but harassment which could dissuade a reasonable employee for making a claim of harassment.

     ii.  **There is a causal connection between Defendant's acts and Plaintiff's complaints of discrimination and harassment.**

The District admits written reprimands and termination are retaliation under the <u>Burlington</u> standards.  The District contends Plaintiff cannot show a causal connection between her complaints and these actions.

Defendants rely heavily on a purported lack of a temporal connection between her complaints and their adverse acts and upon self-serving testimony asserting valid motives for issuing write-ups.  When an employer's intent is at issue, Summary Judgment is rarely appropriate. <u>Goosby v. Johnson & Johnson Medical, Inc.</u>, *supra*.  It should be left to a jury to decide if a Defendant's professed motives were valid or a result of a retaliatory animus.

The District's claim of lack of temporal proximity between Plaintiff's complaints and Defendant's adverse employment actions is based upon a misconstruction of settled case law.  In <u>Kachmar v. Sun Guard Data Systems, Inc.</u>, 109 F.3d 173, 178 (3d Cir. 1997) the Court stated:

> "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's *prima facia* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.  The element

of causation which necessarily involves an inquiry into the motives of an employer is highly context-specific."

Establishing the causal connection may be based upon many types of circumstantial evidence. "… we have been willing to explore the record in search of evidence and our case law has set forth no limits on what we have been willing to consider" Farrell v. Planter's Lifesaver Co., *supra*, 206 .3d at 281 (3d Cir. 2000). As noted in Robinson v. SEPTA, 982 F.2d 892, 894-895 (3d Cir. 1993) "The mere passage of time is not legally conclusive proof against retaliation." (*emphasis added*) In Robinson v. SEPTA, *supra*, a two year intervening pattern of antagonism between a protected activity and an adverse employment event overcame the lack of temporal proximity.

Likewise in Woodson v. Scott Paper Co., 109 F.3d 913 (3d Cir. 1997) a two year pattern of antagonism between protected activity and an adverse action provided the causal link. The Court stated, "We have held that 'an atmosphere of condoned [racial]harassment in a workplace increases the likelihood of retaliation'…". (Quoting Glass v. Philadelphia Electric Co., 34 F.3d 188, 195 (3d. Cir. 1994).) Woodson held that a jury was entitled to consider factors such as harassment condoned by the employer's management when deciding whether a termination was retaliation.

In the present case, as in Robinson and Woodson, there was a continuing pattern of antagonism from shortly after Plaintiff's harassment complaint until she was terminated. It began with Proffitt's reprimand for REDACTED: CONFIDENTIAL MATERIAL. Marchio continued the harassment contesting her right to summer employment, withholding her timesheet and accusing her of taking advantage REDACTED: CONFIDENTIAL MATERIAL. Marchio surreptitiously sent an

21

ED, Gary Berg, to review Plaintiff's student records of students trying to find fault.  (Hadley depo.p. 39-41, B-154, 155)

When Plaintiff protested Marchio's antagonism, his reaction was to issue another reprimand, falsely claiming she had not documented her summer hours.  A dozen more contrived reprimands followed.

Under 14 Del.C. § 1410(b), an employee in the position of plaintiff (i.e., an employee who had not completed two years in the same school district) can receive notice of termination only if: (1) the reasons for the termination had appeared in a performance appraisal and the employee was given time to correct any deficiencies through an Individualized Improvement Plan; or (2) if reprimands had been properly placed in the employee's  personnel file.  In the present case, Marchio had refused Plaintiff's request that she undergo a performance appraisal.) (Yatzus depo.p. 221, 222)  Thus, the only way the District could terminate her was by placing numerous reprimands in her personnel file.

The reprimands were false and/or clearly a reaction to Plaintiff's complaints of unfair or illegal acts of the Defendants.  For example, Marchio's reprimand concerning Plaintiff's purported failure to document adequately her summer hours is justified only by Marchio's self serving testimony.

Dooley told Plaintiff he had been threatened that if he did not issue reprimands, he himself would be reprimanded.  (Yatzus depo.p. 132-133, B-89).  When she went to the union to protest, the District saw to it she could only lose.  When she obtained a determination the three September 25 write-ups should be reduced to one, the District simply added a fourth.  When she grieved being cited for being late, evidence was suppressed and the record of the hearing erased.

22

There is a clear line of antagonism, hostility and contrived write-ups from Plaintiff's making a complaint of harassment to her termination. This establishes the causal connection and the *prima facia* case.

          iii.    **The record establishes the purported legitimate reasons offered by Defendant for Plaintiff's non-renewal are a pretext for retaliation.**

The Defendant has claimed that there were adequate justifications for all of the reprimands and all the other actions it took against her. These purported justifications are based upon a construction of the evidence favoring Defendant. When the evidence is seen in light favorable to the Plaintiff, Defendants purported legitimate actions are a pretext for illegal conduct.

At the Summary Judgment stage it is not necessary for Plaintiff to demonstrate illegitimate factors were the sole reasons for adverse employment actions. Hazen Paper Co. v. Biggins 507 U.S. 604 (1993). Plaintiff need not prove that the employer's purported reason was false. Gharzouzi v. Northwest Human Services of Pa., 225 F.Supp.2d 514, 544 (E.D. Pa.2002). At this stage, Plaintiff need only criticize the employer's purported reasons for its actions effectively enough so as to raise a doubt as to whether they were the true reasons for the employer's actions.

The Court in Gharzouzi stated:

> "The plaintiff can meet its burden either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. (Internal quotation omitted.) As the Third Circuit has recognized, 'there will seldom be eye witness testimony as to the employer's mental processes. Where direct 'smoking gun' evidence of discrimination is unavailable, this court has found that the proper inquiry is whether evidence of inconsistencies and implausibility's in the employer's proffered reasons for discharges reasonably could support an

23

inference that the employer did not act for nondiscriminatory reasons, not whether the evidence necessarily leads to [the] conclusion that the employer did act for discriminatory reasons.' Josey v. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993) (internal and quotations and citations omitted). The Third Circuit has found that various factors, such as the defendant's credibility, the timing of an employee's dismissal and the employer's treatment of the employee, can raise an inference of pretext which would make summary judgment for the employer inappropriate. Id. 996 F.2d at 638-39" (See also, Sempier v. Johnson & Higgins, 45 F.3d 724, 731 (3d Cir. 1995).)

In the present case, Plaintiff has set forth, in detail the record demonstrating the employer's purported justifications for the reprimands in her file are implausible. She was the only one ever reprimanded for being late to an IEP meeting. She is the only one required to have IEP reports in 48 hours prior to a meeting. She is the only one of the school psychologist who was required to use the "substitute caller" when absent.

An April 2 reprimand referred to as a REDACTED: CONFIDENTIAL MATERIAL letter was sent to her merely to salt her personnel file. Mitchell felt forced to issue a similar reprimands to other individuals stating: "They all had to get me to be equal". That one of the three, Sweeney, had left the District months earlier demonstrates this was not a well considered act, but just a device to cover-up the hostility towards Plaintiff.

Defendant used these false and contrived reprimands as a justification to terminate Plaintiff's employment. These actions were not for legitimate reasons, but were a series of harassments directed at Plaintiff because she dared to step forward.

If a jury believes these reprimands were false and believes they were placed in her file simply as a basis to justify termination, then the proffered reasons for these actions of the Defendant are not worthy of belief and are pretext.

24

2.    There are disputed issues of fact precluding Summary Judgment on Plaintiff's First Amendment Retaliation Claim.

a.    Legal Standard

A public employee must show she engaged in speech concerning matters of public interest as a citizen and her engaging in such protected activity was a substantial or motivating factor in Defendant's adverse action against her. Garcetti v. Ceballos, 126 S.Ct. 1951 (2006); McGreevy v. Stroup, 413 F.3d 359 (3d Cir. 2005). A Defendant can then prevail by proving by a preponderance of the evidence it would have taken the same adverse action in the absence of protected conduct. Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1997).

b.    Merits of the Argument

i.    Plaintiff engaged in speech as a citizen addressing matters of public concern.

Plaintiff expressed complaints and concerns about the manner in which the District operated the Special Education Department to a member of the School Board (Yatzus depo.p. 206-209, B-95-96; e-mail, B-65) to the Superintendent (Marchio), to her high school's principal (Mitchell), and the Director of Special Education (Mieczkowski). (B-50-63) She complained of Mitchell's and Mieczkowski's abusive, inappropriate and illegal conduct. Plaintiff complained students were targeted for suspension and expulsion without due process and other legal requirements for the operation of a special education system were violated. She said the school was run like a police state and the students abused by insane policies. (B-50-53, 59) Plaintiff also communicated with a parents' group advising its members regarding their right to pursue claims with the OCR. As a result of these communications, the Defendants issued reprimands for the

25

purpose of building a record which would justify terminating her employment pursuant to 14 Del.C. § 1410.

Defendants do not (and cannot) dispute that communications criticizing the operation of and legality of actions of the District with respect to special education processes is a matter of public concern. (See e.g. Wilcoxon v. Red Clay Consolidated School District (copy attached to Defendant's Opening Brief) and McGreevy v. Stroup, supra.

Defendants contend, under the recent Supreme Court ruling in Garcetti v. Ceballos, supra, Plaintiff has no First Amendment claim because her communications were made as an integral part of her job as a school psychologist employed by the District.

This in an overbroad reading of Garcetti. Garcetti recognized in determining whether certain speech was made as a citizen on a matter of public concern is a difficult inquiry. "This is the necessary product of 'the enormous variety of fact situations in which critical statements by teachers and other public employees may be thought by their superiors ... to furnish grounds for dismissal'." 126 S.Ct. at 1958. (quoting Pickering v. Board of Education, 391 U.S. 563 (1968)). Garcetti recognizes public employees, especially those involved in the public education system must be able to speak on the operation of their employers or the community would be deprived of informed opinion on important public issues. 126 S.Ct. at 1959, 1960. The Court in Garcetti was careful to explain that in deciding what speech is an aspect of that employee's job the proper inquiry is a practical one. What the employer expects of its employee is the key. The Court stated, "Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform ..."(emphasis added)id. at 126 S.Ct. 1961, 62.

26

In <u>Garcetti</u>, a prosecuting attorney drafted a legal opinion for his superior. That is a far cry from the speech of Plaintiff in this case, which was designed to give an informed opinion as to the conduct of District administrators as it related to the District's compliance with rules and regulations governing the operation of the special education system.

Defendant's rely exclusively on Plaintiff's deposition testimony concerning her own beliefs about her responsibility as an advocate for students. However, as Plaintiff's Affidavit clarifies (referring to the Standards for Provision of School Psychology Service Professional Conduct Manual) the job of a "school psychologist" as required by ethical obligations does not exactly equate to the official duties of one employed by a School District as a psychologist. In other words, Plaintiff's belief of what her "job" as a school psychologist includes is not necessarily the same as the tasks her employer expects her to perform.[3]

Certainly when Plaintiff stood up at an IEP meeting and took a stand against other administrators regarding a particular student's rights, that is part of her function as an employee of the District. However, when she writes to administrators and the Superintendent criticizing systemic problems in the operation of special education system and the actions of Mitchell and Mieczkowski, that is an ethical obligation of a "school psychologist", but not a duty as an employee of the District.

---

[3] The boundaries of a school psychologist duties are not clear. The Director of Special Education, Mieczkowski, testified a school psychologist's job consisted of testing and evaluation of students who may or do need special education services, conducting portions of IEP and manifestation meetings and counseling students. She said everyone in education is an advocate for students. (p. 22-23, 99, B-113, 120) Another school psychologist, Judith Green, testified a psychologist's job is to complete evaluations for special education placement, counsel students and engage in child advocacy. (Green depo.p. 6-7, B-140, 141)

In <u>Wilcoxon</u>, *supra*, a teacher was keeping tabs on the absenteeism on a fellow teacher. That may have been a moral or ethical obligation which he felt, but as the Court found, it was not something he was hired to do. Likewise, Plaintiff was not hired to criticize and keep tabs on Mitchell and Mieczkowski or the systemic problems they had caused in the Special Education Department. Her communications on these matters are the protected speech of a citizen.

ii.    **Plaintiff's communications with a parents group regarding the Office of Civil Rights was a matter of public concern.**

Defendants argue Plaintiff's advice to parents with respect to filing OCR complaints was a private rather than public concern and therefore implicated no First Amendment rights.

Defendant ignores it was Plaintiff's association and communication with a group of parents that is the gist of her claim. Some seven families (most of whom were members of the PACT group) pursued claims with the OCR. They attempted a group filing as a class action with the OCR. (*See* e-mail from Plaintiff to union representative Boyd of March 21, 2003, B-29, "This evening nine parents gathered to get organized to file a major class action OCR suit."; and B-72 e-mail, Subject: Song and Dance Routine dated April 23, 2003 re: proposed press release states, "Parent group blows a whistle on Delaware School District." "…members of a parent watchdog group, Parents Advisory Council Team (PACT) has reported the Appoquinimink School District of Odessa, Delaware to the U.S. Department of Education Office of Civil Rights alleging non-compliance with special education IEP's, racial discrimination and misuse of zero tolerance to target and expel low income white students and minority students that school administrator's do not like." )

Though ultimately the OCR processed these seven or so (Mitchell depo.p. 120)claims as individual charges Plaintiff's protected speech was to the group as a whole advising them on what

28

are clearly matters of public concern, that is the District's large scale failure to comply with rules, laws and regulations concerning special education and the targeting of types of students.

### iii. There are disputed issues of material fact as to whether Plaintiff's protected speech was a substantial or motivating factor in Defendant's adverse employment actions.

Defendants claim Plaintiff has presented no evidence suggesting her protected activities played a role in her written reprimands or termination. This argument is based wholly on a view of the record favorable to Defendant. As has been demonstrated, there is record evidence the reprimands were contrived to give a justification for termination. Plaintiff was reprimanded because she did not have a report written forty-eight hours before a meeting; she is the only person subject to that requirement. She was the only employee ever reprimanded for being late to a meeting; she was reprimanded for not following an absentee policy no other psychologist is required to follow. When she contested a write-up, favorable evidence was suppressed and the record of the hearing was erased.

This is not a case such as <u>Marwood v. Elizabeth Forward School District</u>, 91 Fed. Appx. 207 (3d Cir. 2004)cited on page 30 of Defendant's Brief where a plaintiff admitted using banned teaching techniques. Plaintiff does not admit any wrongdoing that would have justified the multiple disciplinary actions placed in her file or her termination.

Defendants argue each instance of protected speech was <u>preceded</u> by the employer's criticism of her performance. Indeed, there were a series of complaints by Plaintiff and reprimands by defendant. However, as has been shown, the reprimands actually <u>followed</u> Plaintiff's complaints. To infer otherwise is not permitted at the Summary Judgment stage.

29

There are numerous instances in the record of Mitchell's or Mieczkowski's hostility towards Plaintiff when she spoke up in favor of students, or tried to communicate with parents. Mitchell has admitted she was upset with Plaintiff for not presenting a united front against parents at IEP meetings. (Mitchell depo.p. 58, 100, B-107, 109(a); Hill depo.p. 42-49, B-129, 130) Mitchell wanted her to lie to support the District's position and always support the District. (Yatzus depo.p. 218-219, 231-232, B-97-99)

Hill testified that at a meeting where Plaintiff opposed the District's plan for a student, Mieczkowski was rude and disrespectful to Plaintiff. (Hill depo.p. 39-41, B-128(a)) The antagonism of Mieczkowski and Mitchell towards Plaintiff's advocacy of student rights is clear. While that advocacy in many instances was part of Plaintiff's job and not protected speech, it is certainly circumstantial evidence that these individuals, and the District in general, were antagonistic towards Plaintiff's advocacy of student rights.

Incredibly, Defendant claims no one in the District had any knowledge that Plaintiff was involved with the group of parents who filed OCR complaints. Defendants ignore Plaintiff's conversations about problems with the special education system with a Board member. Defendant ignores testimony of District employees confirming knowledge of Plaintiff's involvement with the parent's group. School psychologist C. Hadley stated, "I was aware that there were some parents that were making complaints and that Ms. Yatzus was in some way involved in that." (Hadley depo.p. 80, B-156(a)); Assistant Principal, John Martin, told Sharon Hill that Plaintiff was associated with the group that was bringing OCR complaints or lawsuits. (Hill depo.p. 90-92, B-137) The head of the Special Education Department, Defendant

30

Mieczkowski, testified she had heard that Plaintiff was involved with that group of parents. (Mieczkowski depo.p. 119-120, B-120(a))

Plaintiff, herself, saw Proffitt observing her with some of the PACT parents from that group at a meeting to "meet the candidates". (Yatzus Aff. B-7)

Perhaps most telling, however, is Defendant's illegally hacking into Plaintiff's personal AOL account where they had access to the various e-mails she had with the parents group including the proposed press release and correspondence with the union representative. (See e-mails at B-64-73; Hill depo.p. 82-85, B-136)

There is more than sufficient evidence that the Defendants knew of Plaintiff's involvement with the group of parents who were preparing to file claims with the OCR.

                 **iv.**    **Plaintiffs have failed to carry their burden of proving Plaintiff would have been terminated absent her protected speech.**

Defendants claim Plaintiff would have been disciplined and terminated even absent her protected speech, relying upon what they assert are legitimate reprimands in her personnel file. This is a nonsensical circular argument. If, as must be assumed here, the reprimands were not legitimate and were issued in retaliation for protected speech, there would have been no valid reprimands in her file "absent the protected speech". Absent her protected speech, there would have been nothing to justify termination. Defendants cannot rely on reprimands which would not have been put in her file absent her speech, to prove she would have been fired absent that speech.

                 **v.**    **The District is liable for Section 1983 violation because Defendant Marchio is a policy maker with respect to personnel decisions under Delaware law.**

31

Defendants claim there is no statutory provision which indicates the Superintendent of a School District is a policy maker. Defendants state it is the School Board, which under Delaware law is tasked with terminating a teacher and providing notification thereof. (*Citing* 14 <u>Del.C.</u> § 1410.)

In the present case, there was never any notices sent from the Board to Plaintiff. All notifications came from the Personnel Director or the Superintendent. Either they were acting completely outside the law and Defendants must concede there was no valid termination of employment, or the Board had delegated that authority to them or ratified their actions.

It is well settled the authority to make policy can be delegated or policy decisions can be ratified. Clearly in this case, it was not the Board itself, but administrators in the District who had the authority to provide the required notices under Chapter 14 of Title 14 of the Delaware Code. According to Marchio, his recommendations with respect to personnel decisions are normally followed. (Marchio depo.p. 118) He is a *de facto* policy maker with respect to personnel matters.

Defendant has misconstrued or misstated the pertinent statutory provision. The final authority for termination is given to the Superintendent. The process for termination under 14 <u>Del.C.</u> § 1410 requires notice by the District, then the employee requests first written explanation of the reasons for termination, then a final meeting with the Superintendent. The decision of the Superintendent is "final and conclusive". Marchio agrees he made the final decision. (Marchio depo.p. 116, B-165)

32

Plaintiff had such a conference with Marchio. By letter of June 12, 2003, Marchio made the "final and conclusive" decision to uphold Plaintiff's termination. He is a policy maker for the District with respect to this issue and the District is liable under 42 U.S.C. § 1983.

Moreover, it is a disingenuous argument for Defendant to claim that since the Board makes personnel decisions, the District cannot be liable. It is an artificial distinction. The School Board acts for the District and sets policy for the District. To the extent the Board determined Plaintiff should be terminated or ratified Marchio's decisions it certainly is a policy maker which can hold the District liable.

**3.    There are disputed issues of fact precluding Summary Judgment on Plaintiff's breach of the Covenant of Good Faith and Fair Dealing claim.**

In E.I. duPont de Nemours v. Pressman, 679 A.2d 436 (Del. 1996), the Delaware Supreme Court recognized an implied Covenant of Good Faith and Fair Dealing present in every employment contract which would be breached, *inter alia*, where: (1) a termination of employment violated public policy of the State; or (2) the employer falsified or manipulated records to create fictitious grounds for termination. Plaintiff's Complaint (¶¶37-41) asserts that her termination breached the Covenant both of these ways.

**a.    Plaintiff was terminated for advocating student rights in violation of the public policy of this state.**

In its Brief, Defendant correctly points out 2004 amendments to Chapter 7 of Title 19 made statutory procedures the exclusive remedy for pursuing claims of employment discrimination, abrogating the Delaware Supreme Court's ruling in Schuster v. Derocili, 774 A.2d 1029 (Del, 2001). Thus, Plaintiff's claim that she was fired in violation of Delaware's public policy protecting an employee who complains of sexual harassment must be dismissed. However,

33

not all terminations in violation of public policies are covered in Title 19, Ch. 7. (*See e.g.*

Paollela v. BFI, 158 F.3d 183 (D.Del, 1998) – protecting an employee fired for exposing

employer's illegal conduct.)

Here, Defendant ignores the Complaint asserts she was fired in violation of another pulic

policy, one not covered by the anti-discrimination laws. That is, she opposed the District's illegal

actions with respect to special education students and otherwise championed the rights of those

students. It is beyond question that protecting or advancing free public education is an

important public policy of this State. (*See* Title 7 of the Delaware Code and Delaware

Constitution Article X.)

Defendant should be deemed to have waived any argument that this aspect of Plaintiff's

Breach of the Covenant claims should be dismissed by failing to raise it in its Brief.

In any event, there are clearly questions of fact as to whether Plaintiff's termination was

in fact a result of her advocating student rights.

As set forth in Argument II, *supra,* (concerning Plaintiff's First Amendment retaliation

claim) there is significant evidence indicating Defendants harbored ill will against Plaintiff

because of her advocacy of student rights.[4]

Defendants cannot contest that school administrators such as Defendant's Mitchell and

Mieczkowski had significant negative reactions when Plaintiff opposed their dealings with special

education students. This, together with the evidence the reprimands were contrived and

retaliatory demonstrates her termination was due to her advocacy for students.

---

[4] Plaintiff's advocacy of student rights in situations clearly part of her job as an employee of the District is evidence which could be considered in evaluating Plaintiff's Breach of the Covenant claim. This is not a free speech issue as was addressed in Garcetti v. Ceballos, *supra.*

34

b.    Defendant's rationale for terminating Plaintiff was fictitious and manufactured.

The District argues Plaintiff's claim pursuant to <u>Pressman</u>, *supra*, that the District falsified or manipulated records to create fictitious grounds for termination must fail because the reprimands in her personnel file are a legitimate basis for termination. Defendant seems to argue that under this <u>Pressman</u> criteria an employer must either forge or falsify some paperwork. This is an overly narrow reading of <u>Pressman</u>.

In <u>McHugh v. Board of Education of the Milford School District</u>, 100 F.Supp.2d 231 (D.Del 2000) this Court denied Summary Judgment to a defendant because there were issues of fact as to whether the employer's stated rationale for not renewing the plaintiff's position was a fictitious, manufactured rationale. <u>McHugh</u>, *supra*, 100 F.Supp.2d at 245. In that case, the defendant school district claimed the employee's contract was not renewed because of budgetary concerns. The plaintiff claimed his contract was not renewed because of statements he made regarding misconduct of some school administrators.

The present case is similar. Defendant claims Plaintiff's termination was justified because of the "nature and number" of reprimands in her personnel file while she claims the true reason for her termination was her speaking out against sexual harassment and advocating student rights.

Plaintiff does not, as the District asserts, concede that the reprimands in her file were placed there for valid, legitimate reasons. Plaintiff has shown evidence that the reprimands were a contrived manufactured basis to hide the true motive for termination. This is a manipulation of

35

the personnel file within the meaning of <u>Pressman</u> and <u>McHugh</u> and the claims must be allowed to go forward.

## V.    CONCLUSION

Olga Yatzus was a dedicated school psychologist in Delaware public education for 24 years. At the Appoquinimink School District she was subjected to sexual harassment, and she witnessed District administrators violating a host of the rules and regulations designed to protect students with special needs. When she dared to complain about the harassment of her and the violation of students' rights she was attacked and marked for termination. Her claims must be determined by a jury.

BIGGS AND BATTAGLIA

<u>/s/ Philip B. Bartoshesky (#2056)</u>
Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

36

37

## CERTIFICATE OF SERVICE

I, Philip B. Bartoshesky, Esquire, do hereby certify that on July 25, 2006 one true and

correct copy of PLAINTIFF'S ANSWERING BRIEF OPPOSING DEFENDANT APPOQUINIMINK

SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT (REDACTED) were forwarded via

Electronic Filing to the following:

William W. Bowser, Esq.
Adria B. Martinelli, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Bldg., 17th Floor
1000 West St.
Wilmington, DE 19801

**BIGGS AND BATTAGLIA**

_____/s/ Philip B. Bartoshesky
Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Attorney for Plaintiffs