IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF OLGA A. YATZUS

STATE OF DELAWARE       )
                    )ss.
COUNTY OF NEW CASTLE   )

BE IT REMEMBERED, that on this 30th day of July, 2006, personally came before me, a Notary Public in and for the state and county aforesaid, OLGA A. YATZUS, who being by me duly sworn according to law, did depose and say that:

1. I am the Plaintiff in the captioned action.

2. I was employed as school psychologist by the Appoquinimink School District for the 2001-2002 and 2002-2003 school years. When I was hired, Mr. Vaughn Lauer was my supervisor. A condition upon which I accepted the position was that I would be guaranteed twenty days of work during the Summer of 2002.

-1-

B-1

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

APPENDIX PAGE B2 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

BIGGS AND BATTAGLIA

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

APPENDIX PAGE B3 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

**BIGGS AND BATTAGLIA**

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

APPENDIX PAGE B4 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

BIGGS AND BATTAGLIA

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

20.     When I did not receive a paycheck for the pay period including July 3, 2002, I contacted the Payroll Department and was told that no time slip had been submitted and both the Department and I assumed it had simply been lost and I was instructed to submit a substitute time sheet.

21.     It was only after I submitted the substitute time sheet on or about August 1, 2002 that I learned that Dr. Marchio had withheld my original timesheet.

22.     I was not paid for the time period of July 1 through July 11, 2002 until August 23, 2002, after I had made a complaint to both the union and Terry Cheek.

23.     Dr. Marchio issued a written reprimand to me dated March 3, 2003 due to my being approximately one-half hour late to a meeting which ended up lasting nearly ten hours on February 25, 2003, and that I pursued a grievance proceeding as result of that reprimand.

24.     The grievance hearing with respect to the February 3, 2003 reprimand issued by Dr. Marchio was heard by Assistant District Superintendent Marion Proffitt, and the hearing was tape recorded.

25.     Dr. Proffitt upheld the issuance of the written reprimand, but the tape recording of the hearing was erased. The erasure of the tape was confirmed by an e-mail communication from union representative Vicky Boyd. True and correct copies of that and other communications with union representatives are attached as Exhibit 5.

26.     Part of my function as a school psychologist was to be an advocate for each individual student, especially students with disabilities who, pursuant to the District's rules and regulations and state and federal law, are entitled to participate in the special education process and procedures.

B-5

27.    It is not a responsibility or requirement of my position as an employee of the School District to monitor, evaluate and report on the actions of school administrators, such as the Special Education Director, Mary Ann Mieczkowski, and the principal of the Middletown High School, Donna Mitchell, with respect to how they and the school district administration handled students with special needs. It is part of my ethical responsibility as a school psychologist to speak up for the rights and needs of my students and their parents, including communicating my concerns for student rights to School and District Administrators as set forth in the excerpts from the Professional Conduct Manual as attached as Exhibit 6.

28.    I reported to the School Superintendent and to others, including the School Board, my belief that the Director of Special Education, Mary Ann Mieczkowski, and the principal of Middletown High School, Donna Mitchell, did not comply with legal requirements with respect to special education students and were otherwise rude and disrespectful to both parents and to me. True and correct copies of my communications to Dr. Marchio with respect to the short-comings of these administrators and the School District in general regarding the failure to adequately address the needs of the students requiring special education are attached as Exhibits 7.

29.    I had numerous communications with a group of parents of special education and other students through my personal e-mail account with America Online ("AOL") concerning their pursuing claims against the school district with the OCR and presenting their complaints to the Appoquinimink School Board.    Attached as Exhibit 8 are copies of those e-mail communications.

B-6

30. This group of parents formed a group called "Parents Advisory Council Team" ("PACT"). I participated in many PACT meetings. At one meeting held at the MOT (Middletown, Odessa, Townsend) Senior Center on April 10, 2003, I had a conversation with a woman who said she was an associate or relative of Defendant Proffitt.

31. On April 24, 2003, I, along with several PACT members, attended a school board meeting held to "meet the candidates" for the May 2003 board elections and we were observed together by Marion Proffitt.

32. I became aware that the administration of the Appoquinimink School District on at least two occasions had computer technologists access my private America Online (AOL) e-mail account from my work computer and downloaded and/or reviewed my private AOL e-mail messages, all without my knowledge or consent.

_____
Olga A. Yatzus

Sworn to and subscribed
before me this _13th_ day
of _July_____, 2006.

_____
Notarial Officer

-7-

B-7

# Exhibit 1

D — 7 (a)

# CURRICULUM VITAE

**Olga A. Yatzus, M.A., NCSP**
**101 Lynam St.**
**Wilmington, DE 19804**
**(302) 999-8365**
**olga22@aol.com**

## Educational Background:

- **Antioch University:**  1976 – 1978  **Master of Arts:  Psychotherapy & Counseling Specialty, Adolescents**

- **University of Delaware:** 1973 – 1976  **Bachelor of Arts:  Psychology  (Honors)**

## Certification:

- **NCSP**  **Nationally Certified School Psychologist**
- **School Psychologist State of Delaware**

## Professional Experience:

- **Director**  *The Kids' Couch, Inc*
  **(Present)**

  Counseling and Educational Consulting Services Specializing in Teens, providing individual, family and group counseling; parent, teen & teacher workshops; educational and psychosocial assessments; child/school advocacy training and services.

- **School Psychologist**  *Middletown High School*
  **(2001-2003)**

  Comprehensive school psychological services; IEP team member, child study team leader, psycho educational evaluations, individual, group & family counseling, teacher workshops, parent workshops, teacher consultation, school psychology internship supervisor, school psychology practicum supervisor, school management team, crisis response team leader/program developer/trainer.

- **School Psychologist**  *New Castle County Vo-Tech School District*
  **(1990- 2001)**

  Comprehensive school psychological services (see above), in addition to school management team, crisis response team leader/program developer/trainer, 504 Coordinator, presenter of numerous staff development programs (grades 9-12)

- **School Psychologist**        *John G. Leach School*
  **(1987 – 1990)**

  Comprehensive school psychological services (see above) at a school for orthopedically & visually handicapped students (age 2- 21).

- **School Psychologist/        Richardson Park Intensive Learning**
  **Center        (1979 – 1987)**
  **Educational Diagnostician**

  Educational Diagnostician duties included IEP team leader, IDEA compliance manager in implementation and monitoring of IEPs, development of behavior intervention plans, coordinator of services.

  Comprehensive school psychological services (see above).

- **Adjunct Professor        *University of Delaware***
  **(1998 – present)**

  Graduate and Undergraduate program in Educational Studies and School Psychology.
  - Child Psychopathology
  - Educational Psychology: Cognitive Aspects
  - Educational Psychology: Social Aspects
  - Adolescent Development

- **Adjunct Professor        *Wilmington College***
  **(1994 – 1998)**

  Graduate Programs in School Counseling and the Master's in Special Education
  - Applied Behavior Analysis
  - Family Counseling
  - Group Counseling

## Additional Professional Experiences:

- ❖ 2002 – 2003    DASP Convention Co-Chair
- ❖ 1998 - 2000    Governor's Advisory Counsel for Exceptional Citizen's
- ❖ 1991 - 2003    School Psychology Practicum site-supervisor (UD School Psych
  Program)
- ❖ 1997 - 1998    Committee Co-chair:  Department of Education: State of Delaware
  IDEA '97
  - Evaluation/re-evaluation Committee
  - Behavioral Assessment Committee
- ❖ 1997 – 1999    President: Delaware Association of School Psychologists (DASP)
- ❖ 1996 – 1997    President-Elect DASP
- ❖ 1995 – 1998    Convention Chair (DASP)
- ❖ 1995 – 1997    Crossroads of Delaware (Adolescent Substance Abuse Treatment
  Center)

B-9
P-395

- ❖ 1993 – 1995    Educational Consultant
  Mary Campbell Center
  - • Bereavement Group Leader
  - • . Educational Consultant
- ❖ 1994 – 1996    Criminal Justice Counsel Advisory Board
- ❖ 1989 – 1991    Supporting KIDS (Kids Involved in Death, Divorce and Separation)
  - • Program Planning and Development
  - • Board Member
  - • Group Leader
  - • Volunteer Trainer

- ❖ 1985 – 1987    The Girl's Club: Advisory Board Member

- ❖ 1976 – 1978    Constance Bultman Wilson Center (Adolescent Psychiatric Treatment
  Center)
  - • Graduate Student In- Training
    *Milieu management team member, team leader*
    *Individual, group and family therapy*
    *Psychodiagnostic Evaluations*
    *Crisis Management*
  - • Graduate Intern:  Admissions Unit Coordinator and Staff
    Psychotherapist

## AWARDS AND AFFILIATONS:

- ➤ 1998 Delaware School Psychologist of the Year
- ➤ Delaware Association of School Psychologists
- ➤ National Association of School Psychologists
- ➤ National Association of Counsel for Children

B-423

# Exhibit 2

B- 10(a)



# *Appoquinimink School District*

May 5, 2003

Dear Yatzus,

This letter is your notice that your contract for the school year of 2002/2003 will not be renewed due to the number and nature of letters in your personnel file.

I will be recommending to the Board of Education at their May meeting that your contract be terminated as of June 18, 2003.

Please find enclosed a copy of Chapter 14 of the Delaware State Code.

If you should have any questions, please call me at 376-4128.

Sincerely,

Zenon J. Marusa, Jr.
Human Resources Director

B-11
P-221

# Exhibit 3

B- 11(a)



# Appoquinimink School District

<div align="right">

**Superintendent**
Tony Marchio

**Board of Education**
Dr. Kent St. Pierre
*President*
Mr. Ed Czerwinski
*Vice President*
Mrs. Joanne Christian
Dr. Joseph English
Mr. William Hutchison

**District Office**
118 South Sixth Street
P.O. Box 4010
Odessa, DE 19730-4010
302.376.4128 Phone
302.378.5016 Fax

**Early Childhood Center**
502 South Broad Street
Middletown, DE 19709
302.376.4400 Phone
302.378.5696 Fax

**Cedar Lane Elementary**
1259 Cedar Lane Road
Middletown, DE 19709
302.378.5045 Phone
302.378.5091 Fa

**Olive B. Loss Ele**
200 Brennan Bo
Bear, DE 19701
302.832.1343 Phi
302.832.3213 Fax

**Silver Lake Eleme**
200 E. Cochran St
Middletown, DE 1
302.378.5023 Phor
302.378.5092 Fax

**Townsend Elemen**
P.O. Box 369
126 Main Street
Townsend, DE 19734
302.378.5020 Phone
302.378.5088 Fax

**Louis L. Redding Middle**
201 New Street
Middletown, DE 19709
302.378.5030 Phone
302.378.5080 Fax

**Everett Meredith Middle**
504 South Broad Street
Middletown, DE 19709
302.378.5001 Phone
302.378.5008 Fax

**Middletown High**
120 Silver Lake Road
Middletown, DE 19709
302.376.4141 Phone
302.378.5268 Fax

**Groves Adult High**
504 South Broad Street
Middletown, DE 19709
302.378.5037 Phone
302.378.0362 Fax

</div>

*Certified Mail*

June 12, 2003

Ms. Olga Yatzus
101 Lynam Street
Wilmington, Delaware   19804

Dear Ms. Yatzus:

This letter is in response to the conference that you requested and received on June 12, 2003 regarding the notice sent to you by the Appoquinimink School District of intention to terminate your services at the end of the 2002/2003 school year.

I listened very closely to your comments and regret to inform you that I will not be recommending renewal of your contract for the 2003/2004 school year. My decision was based on the number and the nature of the items placed in your personnel file.

I wish you the very best in your future endeavors.

Sincerely,

Tony J. Marchio, Ed.D.
Superintendent
Appoquinimink School District

TJM/rao

cc:   Mr. Zenon Marusa, Human Resources Director
      Ms. Vickie Boyd, DSEA UniServ Director
      Ms. Vickie Shaffner, Co-President, AEA
      Ms. Lynn Kebler, Co-President, AEA
      Ms. Mary Ann Mieczkowski, Supervisor of Special Education
      Personnel File

B

# Exhibit 4

B-12(a)

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

APPENDIX PAGE B13 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

**BIGGS AND BATTAGLIA**

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff



*APPOQUINIMINK SCHOOL DISTRICT*
118 South Sixth Street, Box 4010
Odessa, Delaware  19730
Telephone:  (302) 376-4105
Fax:  (302) 378-5016

*Mr. Tony J. Marchio, Superintendent*                              *Mrs. Marion E. Proffitt, Assistant Superintendent*

February 13, 2002

Olga Yatzus, Ph.D.
Appoquinimink School District
District Office
Odessa, DE 19730

Dear Olga,

As a result of our conference on February 12, 2002 I have reported your comments regarding the chronology of events on January 31, 2002 and my recommendations for future actions to the superintendent. It appears that all parties involved are in agreement that the student was acting in a manner that caused concern and required much attention. In an effort to provide the most appropriate treatment, everyone attempted to use their skills to provide the best services possible. Because of the agitated state of the student and the other problems that existed, the student managed to leave the premises unescorted.

In order to memorialize the statements that I made to you and Vicky Boyd, I respectfully remind you to always make every attempt to ensure the safety and security of all students in your care whether it is for counseling or in the event of a crisis. You should make it a rule to check counseling areas or holding spaces to ascertain if there are windows that can be opened, multiple exits and/or available objects that can be used to inflict harm to self or others. If one or all of the aforementioned are present, an alternative space should be secured. I am certain that all of us agree that maintaining student safety is an optimum objective.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Marion E. Proffitt
Assistant Superintendent

MEP/bes

Pc:     Tony J. Marchio, Superintendent
        Vicky Boyd, DSEA Representative
        File

B-14
P-225

*An Equal Opportunity Employer*



### APPOQUINIMINK SCHOOL DISTRICT
118 South Sixth Street, Box 4010
Odessa, Delaware  19730
Telephone: (302) 376-4101
Fax: (302) 378-5016

*Mr. Tony J. Marchio, Superintendent*

<u>*Certified Mail*</u>

August 29, 2002

Ms. Olga Yatzus
101 Lynam Street
Wilmington, Delaware   19804

Dear Olga:

At the very beginning of the summer I met with you, Chet Hadley and Judy Green in my office to discuss summer work schedules for the psychologists.  Because I was not personally involved with the arrangements that were made concerning the summer hours, I asked each of you to submit to me, in advance, a schedule of the number of days that you proposed to work, the number of students you would be evaluating, and the date of submission for those evaluations.  I wanted the schedule to reflect where you would be and what hours you would be working.  Within days of that meeting I received the requested schedules from the other psychologists; I did not receive your schedule.

On July 3, 2002, I requested from you, in writing, a copy of your summer schedule.  I also mentioned that there was an irregularity in one of your workdays and asked you to stop by my office at your earliest convenience to discuss this issue.  A meeting was scheduled for July 9th.  At this meeting you submitted a list of duties that you had completed to that date and a list of student testing yet to be completed.  I explained during the meeting that while this information was useful, it was not the information that I had requested, and I again asked you to submit the requested information to me at your earliest convenience.  You ignored my request a second time.

Finally, via an e-mail that I sent to you on August 5, 2002, I requested that you submit your summer work schedule.  You again chose to ignore my request and did not even respond to my e-mail, and the entire summer has passed without any accounting of the time you were paid through the summer months.

While you have chosen to characterize my request as "harassment" and "targeting you", nothing is further from the truth.  I made the same request of your colleagues, and they complied immediately.  In addition, I required all summer employees, including district office administrators, building principals and assistant principals, to account for their time during the summer.    I personally report my summer work hours along with everyone else.  I never once said that I would deny your workdays in the summer.  As the

*An Equal Opportunity Employer*

-2-

chief administrator of this district, however, I feel that we should all be held accountable for the pay we receive.

The entire summer has passed and you have refused repeatedly to comply with my directive. As a result, consider this to be an official reprimand that will be placed in your personnel file. I ask that you schedule an appointment to meet with me during the week of September 2, 2002 to discuss this issue and to sign this letter. You may submit a written rebuttal at that time and, as always, you are entitled to be accompanied by a representative from the Appoquinimink Educators' Association.

Sincerely,

Tony J. Marchio
Superintendent
Appoquinimink School District

TJM/rao

pc:   Mr. Zen Marusa, Human Resources Director
      Ms. Mary Ann Mieczkowski, Special Ed/ILC Supervisor
      Personnel File

_____
(Signature of Employee Verifies Receipt of This Letter

_____
                    Date

B-16
P-228

**MIDDLETOWN HIGH SCHOOL**
120 Silver Lake Road
Middletown, DE 19709
(302) 376-4141
Fax no. 378-5268

Donna Lee Mitchell, Interim Principal

James Dooley                        Byron G. Murphy                        Nicholas Gibbs
Assistant Principal                 Dean of Math/Science                   Acting Assistant Principal

September 25, 2002

Mrs. Yatzus:

On four separate occasions today, you failed to present a written report explaining the results of the various assessments used to evaluate students for possible placement in a special education program or to assist the team in the development of accommodations to fit a child's educational needs. These reports are expected to be completed prior to the start of the meeting and a copy should be provided for the parent to review during the process. Your negligence in having these reports resulted in the rescheduling of one meeting and caused you to be thirty minutes late for another while you prepared the findings. During a third meeting, I had to leave the parent and the team to retrieve you from your office where you were hurriedly preparing a folder of information to share with the parent but still failed to produce a written report of the findings.

In one of the meetings, an intern was left to review the results of an assessment which she had completed. This presentation occurred without your presence and without your prior review of the documentation she was presenting. Her comment of "I don't know if you want to take a look at this." indicated that you had not previously reviewed the packet that she presented.

Students at Middletown High School who have Individual Educational Plans have a right to a Free and Appropriate Public Education and through the IDEA and ADA, they have the right to ask for the accommodations and modifications listed in their IEPs. In addition, they are entitled to the special education services listed in their IEPs. Failure to comply with this may result in Due Process. Please note that you are negligent in your assignments. Failure to provide the reports described above is considered insubordination and a dereliction of duties. This is cause for disciplinary action. This discipline may include suspension from your present assignment.

Sincerely,

James W. Dooley, Jr.

I have read the above correspondence and understand that it will be placed in my personnel file.

_____          _____          _____          _____
Employees Signature                Date             Administrative Signature          Date

Cc:     Marion Proffitt, Assistant Superintendent
        Zenon Marusa, Director of Personnel
        Mary Ann Mieczkowski, Supervisor of Special Services
        Donna Mitchell, Principal MHS

B-17
P-230

**MIDDLETOWN HIGH SCHOOL**
120 Silver Lake Road
Middletown, DE 19709
(302) 376-4141
Fax no. 378-5268

Donna Lee Mitchell, Interim Principal

James Dooley
Assistant Principal

Byron G. Murphy
Dean of Math/Science

Nicholas Gibbs
Acting Assistant Principal

September 25, 2002

Ms. Yatzus:

Prior to an IEP meeting scheduled this morning at 8:00 a.m., you were approached by administration and asked for a copy of the evaluation report that was to be discussed in the IEP. You indicated that the report "was at home." Over the past few weeks, on several occasions you have had opportunity to meet with both me, and the district supervisor for special education, Mary Ann Mieczkowski. During those meetings our expectations were clear. You are expected to provide written reports that include all key components required by the IEP. Those completed reports are expected prior to the meeting so that we may verify information. During our conversation, I clearly stated that I wanted to see those reports, in writing.

As a result of being unprepared for the meeting this morning, we were left with no other option but to reschedule the meeting. The parents, already present for the meeting, were willing to come back at 9:30 a.m. to convene the meeting. They indicated that they had taken the day off work for this meeting and were able to accommodate us. This was unfortunate for the family and embarrassing for Middletown High School.

Students at Middletown High School who have Individual Education Plans have a right to a Free and Appropriate Public Education and through the IDEA and ADA, they have the right to ask for the accommodations and modifications listed in their IEPs. Evaluations and assessments required as part of that IEP must be completed and presented to parents in a timely manner. Failure to comply with this may result in Due Process. Please note that you are negligent in your assignments here at Middletown High School as mentioned above. Failure to evaluate students and submit written reports for those IEP meetings to which you are invited will be considered insubordinate and a dereliction of duties. Insubordination is cause for disciplinary action. This discipline may include suspension from your present assignment.

Sincerely,

Donna Lee Mitchell

Donna Lee Mitchell

I have read the above correspondence and understand that it will be placed in my personnel file.

_____  9/25/02
Teacher Signature    Date

Donna Lee Mitchell  9/25/02
Administrative Signature    Date

Cc:  Zenon Marusa, Director of Human Resources
     Mary Ann Mieczkowski, Supervisor of Special Education
     Marion Proffitt, Assistant Superintendent

B-18
P-232



# Appoquinimink School District

Olga Yatzus                                                      September 30, 2002
School Psychologist
Middletown High School
Middletown, Delaware  19730

Dear Olga:

As Supervisor of Special Education Services in the Appoquinimink School District, I attended three IEP meetings on September 25th and found that you were not prepared for them as indicated by absent psychological reports.

As stated in my memo of September 9, 2002, every psychologist must prepare an individual report that includes testing results, findings, and recommendations prior to an initial evaluation or re-evaluation meeting.  This report must be copied and in the hands of the Educational Diagnostician prior to the commencement of the initial evaluation meeting or IEP meeting.  In addition, it is the responsibility of the psychologist to supply the parent with their own copy at the meeting.

As I further researched the issue at hand, I found out that one student was referred for testing by the Child Study Team in January 30, 2002 and testing for him did not occur until the week of September 16th. This is a serious violation of IDEA. In addition, the initial psychological testing was completed by a practicum student from the University of Delaware under your supervision.  However, the information gathered was not complete and a draft report was written by the student that morning due to the fact that she had not been informed that the meeting was being held at that time.  It is my understanding that the testing and report should be reviewed and signed by you as her practicum supervisor. At the time of the meeting the report had not been reviewed or signed.

I understand that we are providing an educational environment for the graduate student, however, an Appoquinimink student who could potentially be identified as a student in need of special educational services should not be jeopardized as a result of your lack of not following procedures and meeting deadlines.

The requests of meetings for the three students indicated above were initiated by you on September 16, 2002 as indicated in an email to Marilyn Sweeney.  In a meeting with you on September 25th, you stated that you did not know that the meetings for these students were scheduled that day.  I am surprised that you were not prepared since you requested the meetings, knew that the meetings were required, received notification of them and the deadline of September 30th was nearing.

If you disagree with any of the information presented, please inform me of your perspective.

Sincerely,

*Mary Ann Mieczkowski*

Mary Ann Mieczkowski
Supervisor of Special Education Services
Appoquinimink School District

Meeting was held on : _October 3, 2002_

Signature: _____    Date: _____

Signature: *Mary Ann Mieczkowski*    Date: _October 3, 2002_    B-193

Cc:    Tony Marchio, Superintendent                    Zenon Marusa, Director of Human Resouces
       Marion Proffitt, Asst. Superintendent           Donna Mitchell, Interim Principal, Middletown High School

MIDDLETOWN HIGH SCHOOL
120 Silver Lake Road
Middletown, DE 19709
(302) 376-4141
Fax no. 378-5268

Donna Lee Mitchell, Interim Principal

James Dooley                          Byron G. Murphy                          Nicholas Gibbs
Assistant Principal                 Dean of Math/Science                 Acting Assistant Principal

October 14, 2002

Ms. Yatzus:

Today during an IEP meeting for a student in an outside agency, it was discovered that you attended, as a representative of MHS on May 16, 2002, an IEP meeting for this student at the alternative setting. During this meeting the child study team recommended that a functional behavior assessment be completed on this student. During the IEP meeting, you indicated that you completed this assessment over the summer by obtaining BASC from the parent, student, and three teachers of the alternative school. You appeared to have a copy of that report with you during the meeting today. When asked if you had a copy for the parent and the administration, you indicated that you would "have to make copies of it."

During our meeting on Sept., 2002 you were directed to submit to administration 48 hours prior, a copy of all reports to be presented during IEP meetings. You did not provide us with a copy of this report. You were also instructed to have a copy of the report available to parents to review as you went over it. This was also not provided.

The administration here has attempted to work with you to refine the process by which we prepare for IEP meetings. We have put into place expectations that should prevent us from appearing ill-prepared for these meetings. However, you have failed to follow those expectations. In addition, the child study process requires that all assessments and follow-up meetings be conducted within a reasonable amount of time. This request for assessment was made on May 16, 2002. The results, submitted only verbally, were shared with the parent only today, October 14, 2002. This is not timely.

You did not provide the administration with a copy of the assessment results at least 48 prior to the meeting and you took five months to complete a functional behavior assessment and present the results to the parents.

Sincerely,

*Donna Lee Mitchell*
Donna Lee Mitchell
Interim Principal

Cc:    Mrs. Marion Proffitt, Assistant Superintendent
       Mr. Zenon Marusa, Director of Human Resources
       Mrs. Mary Ann Mieczkoski, Supervisor of Special Education

B-20
P-234

I have read the above correspondence and understand that it will be placed in my personnel file.

_____          *Donna Lee Mitchell* 10/14/02
Teacher Signature      Date                 Administrative Signature    Date

   

# Appoquinimink School District

Olga Yatzus                                                          November 17, 2002
School Psychologist
Middletown High School
Middletown, Delaware 19730

Dear Olga:

On September 25, 2002 three IEP meetings were held at Middletown High School and attended by either Donna Mitchell, Interim Principal, James Dooley, Assistant Principal, and/or myself where it was noted that you were not prepared as indicated by absent psychological reports. In one instance, you indicated to Donna Mitchell and Mrs. Proffitt, Assistant Superintendent, that "the report was at home". As a result of being unprepared, the meeting was rescheduled. The parents, already present for the meeting, were willing to come back at 9:30 a.m. to convene the meeting after you returned from home.

In a second instance, the Assistant Principal reported that he had to leave the parent and team to retrieve you from your office where you were hurriedly preparing a folder of information to share with the parent but still failed to produce a written report of your findings.

The requests of meetings for the three students indicated above were initiated by you on September 16, 2002 as indicated in an email to Marilyn Sweeney, Educational Diagnostician. In a meeting with you on September 25th, you stated that you did not know that the meetings for these students were scheduled that day. I am surprised that you were not prepared since you requested the meetings, knew that they were required, received notification of them and the deadline of September 30 was nearing.

As stated in my memo of September 9, 2002, every psychologist must prepare an individual report that includes testing results, findings, and recommendations prior to an initial evaluation or re-evaluation meeting. This report must be copied and in the hands of the Educational Diagnostician prior to the commencement of the initial evaluation meeting or IEP meeting. In addition, it is the responsibility of the psychologist to supply the parents with their own copy at the meeting.

As a result of three individual reports of September 25th, a meeting was held on November 6, 2002 with you, Vicky Boyd, a Delaware State Education Association representative, Donna Mitchell, Lynn Keebler, Zen Marusa and myself to discuss the issues at hand. After a lengthy discussion, it is now understood that any information provided by the psychologist during an IEP or 504 meeting regarding any student, in the form of an evaluation, summary or "gathering of data", shall be considered a "report" and copies shall be provided to the administration and Educational Diagnostician at least 48 hours prior to the scheduled meeting. It continues to be your responsibility to provide the parent with a copy at the meeting.

Sincerely,

*Mary Ann Mieczkowski*

Mary Ann Mieczkowski,
Supervisor of Special Education Services

Employee signature: _____        Date: 11/25/02

Cc: Marion Proffitt, Assistant Superintendent
    Zenon Marusa, Director of Personnel
    Donna Mitchell, Interim Principal, MHS
    James Dooley, Assistant Principal, MHS
    Vicky Boyd, DSEA

B-235

**MIDDLETOWN HIGH SCHOOL**
120 Silver Lake Road
Middletown, DE 19709
(302) 376-4141
Fax no. 378-5268

Donna Lee Mitchell, Interim Principal

James Dooley
Assistant Principal

Byron G. Murphy
Dean of Math/Science

Nicholas Gibbs
Acting Assistant Principal

January 8, 2003


Mrs. Yatzus:

On Friday, January 3, 2003, you were asked to provide written reports or written feedback on any progress you have made on four separate student cases. You verbally responded with your interpretation of the situation of each of the students in question. Later the same day, your verbal report was re-stated in a meeting with Mrs. Mitchell, Mrs. Mieczkowski, Mrs. Hill and me. At that time, you were requested to submit to my attention, in writing, any of the requested reports or a description of your interpretation of the current status of each of these students by the end of the day, January 3, 2003.

As of Wednesday, January 8, 2003, this written documentation has not been submitted.


Sincerely,

James W. Dooley, Jr.


Your signature below indicates that you have received this letter, not that you agree with its contents. A copy of this letter will be placed in your personnel folder.

_____        _____        _____    _____
Administrative Signature            Date          Employee's Signature          Date


Cc:    Marion Proffitt, Assistant Superintendent
       Mary Ann Mieczkowski, Supervisor of Special Services
       Zenon Marusa, Personnel Director
       Donna Lee Mitchell, Principal Middletown High School

B-236



## M E M O R A N D U M

<div style="float:right">
Superintendent
Tony Marchio

Board of Education
Dr. Kent St. Pierre
*President*
Mr. Ed Czerwinski
*Vice President*
Mrs. Joanne Christian
Dr. Joseph English
Mr. William Hutchison

District Office
118 South Sixth Street
P.O. Box 4010
Odessa, DE 19730-4010
302.376.4128 Phone
302.378.5016 Fax

Early Childhood Center
502 South Broad Street
Middletown, DE 19709
302.376.4400 Phone
302.378.5696 Fax

Cedar Lane Elementary
1259 Cedar Lane Road
Middletown, DE 19709
302.378.5045 Phone
302.378.5091 Fax

Olive B. Loss Elementary
200 Brennan Boulevard
Bear, DE 19701
302.832.1343 Phone
302.832.3213 Fax

Silver Lake Elementary
200 E. Cochran Street
Middletown, DE 19709
302.378.5023 Phone
302.378.5092 Fax

Townsend Elementary
P.O. Box 369
126 Main Street
Townsend, DE 19734
302.378.5020 Phone
302.378.5088 Fax

Louis L. Redding Middle
201 New Street
Middletown, DE 19709
302.378.5030 Phone
302.378.5080 Fax

Everett Meredith Middle
504 South Broad Street
Middletown, DE 19709
302.378.5001 Phone
302.378.5008 Fax

Middletown High
120 Silver Lake Road
Middletown, DE 19709
302.376.4141 Phone
302.378.5268 Fax

Groves Adult High
504 South Broad Street
Middletown, DE 19709
302.378.5037 Phone
302.378.0362 Fax
</div>

**TO:**       Olga Yatzus
          School Psychologist

**FROM:**   Tony J. Marchio
          Superintendent

**DATE:**    March 3, 2003

**SUBJECT:**    <u>REPRIMAND</u>

On Tuesday, February 25, 2003, you were scheduled to participate in an IEP meeting in our district office beginning at 10:00 a.m. While you were notified of the meeting in writing, and even reminded of it verbally that morning by Mrs. Mieczkowski, you did not appear at the meeting until 10:30 a.m. Again, our district was in the embarrassing position of trying to locate you and waiting for you to appear before we could begin our business. The student's parents, two attorneys, and several school district officials managed to report to this meeting on time only to be delayed by our lack of punctuality.

Olga, you and I have had discussions of this nature several times, and I am upset that you fail to respond to my concerns. It is my goal that our district be represented in the most professional manner possible, and that cannot be accomplished without your cooperation. While you mentioned that you had another important matter that required your attention, I am certain that Middletown High School personnel could have assisted you with that situation allowing you to attend the IEP meeting on time.

Please consider this an official reprimand that will be placed in your personnel file. I am asking that you schedule a time to come to my office within ten school days to discuss and sign this document.

TJM/rao

pc:  Mrs. Mary Ann Mieczkowski, Special Ed/ILC Supervisor
    Mr. Zen Marusa, Human Resources Director
    Personnel File

*An Equal Opportunity Employer*





Middletown High School 120 Silver lake Road  Middletown  DE  19709  302-376-4141  fax 302-378-5268

April 2, 2003

Dear Mrs. Yatzus:

On March 8, 2003 following an absence for personal illness, we met in my office to discuss procedures MHS staff are expected to follow when they are absent from school. At that time, I shared with you my expectations. I made it clear that you were expected to call the substitute caller before 6:30 a.m. when you were out for personal illness. I also indicated following your questions, that you were to indicate "no substitute needed" and when the report came through from the sub caller, the administration would ascertain whether we needed a substitute psychologist for the day.

We had seven IEP meetings scheduled today, and planned on a psychologist attending.

You did not report to work today and you did not contact the substitute caller. At 12:58 p.m. today you contacted Sue Poore and indicated that you had stopped by your son's school and got tied up longer than you had anticipated, so you were just going to take the day. As discussed in my office on March 8, 2003, you are not to contact secretaries to notify them of your absence. If you are not able, for whatever reason to contact the sub caller, you need to contact an administrator.

Sincerely,

Donna Lee Mitchell
Principal

I have read the above correspondence and understand that it will be placed in my personnel file.

_____                    _____
Teacher Signature        Date                       Administrative Signature      Date

Cc:     Tony Marchio, Superintendent
        Marion Proffitt, Assistant Superintendent
        Zenon Marusa, Personnel Director

Donna Lee Mitchell          Nick Gibbs                  Felecia Duggins             John C. Martin              Byron Murphy
Principal                   Assistant Principal         Assistant Principal         Assistant Principal         Dept Math / Science
376-4141                    302-376-4147                302-376-4143                302-376-4142                302-376-4161
na.mitchell@appo.k12.de.us  Nick.gibbs@appo.k12.de.us   Felecia.duggins@appo.k12.de.us  John.martin@appo.k12.de.us  Byron.murphy@appo.k12.de.us

B-24



Middletown High School  120 Silver lake Road  Middletown  DE  19709  302-376-4141 fax 302-378-5268

April 2, 2003

Dear Mrs. Yatzus:

During a manifestation meeting on Monday, March 31 it came to my attention that you attended an IEP on December 13, 2002 for a student at Middletown High School. This was his initial IEP, as he was classified as needing special services at that time. Although the minutes, of which you signed, do not reflect that this student had any behavior issues, the box in the IEP was checked affirmative indicating that he "exhibited behaviors that impede his learning or the learning of others". In addition, there were no behavior objectives included in this IEP, nor was there evidence in the minutes that a request had been made for a Functional Behavior Assessment.

Because this IEP was not complete, the team had no choice on March 31, 2003 but to conclude that this student's violation of the district discipline code of conduct (possession of a controlled substance) was a manifestation of his disability. More importantly, this students has not received the benefit of support for his behavior since being identified for support services on December 13, 2002. It is imperative that all aspects of an IEP are complete and included prior to signing.

Sincerely,

Donna Lee Mitchell
Principal

I have read the above correspondence and understand that it will be placed in my personnel file.

_____          _____
Teacher Signature        Date                        Administrative Signature        Date

Cc:    Tony Marchio, Superintendent
       Marion Proffitt, Assistant Superintendent
       Zenon Marusa, Personnel Director

Donna Lee Mitchell          Nick Gibbs                  Felecia Duggins            John C. Martin              Byron Murphy
Principal                   Assistant Principal         Assistant Principal        Assistant Principal         Dean/Math/Science
302-376-4141                302-376-4147                302-376-4143               302-376-4142                302-376-4161
Donna.mitchell@appo.k12.de.us   Nick.gibbs@appo.k12.de.us   Felecia.duggins@appo.k12.de.us   John.martin@appo.k12.de.us   Byron.murphy@appo.k12.de.us

B 252



# Appoquinimink School District

**Superintendent**
Tony Marchio
**Board of Education**
Dr. Kent St. Pierre
*President*
Mr. Ed Czerwinski
*Vice President*
Mrs. Joanne Christian
Dr. Joseph English
Mr. William Hutchison
**District Office**
118 South Sixth Street
P.O. Box 4010
Odessa, DE 19730-4010
302.376.4128 Phone
302.378.5016 Fax

**Early Childhood Center**
502 South Broad Street
Middletown, DE 19709
302.376.4400 Phone
302.378.5696 Fax

**Cedar Lane Elementary**
1259 Cedar Lane Road
Middletown, DE 19709
302.378.5045 Phone
302.378.5091 Fax

**Olive B. Loss Elementary**
200 Brennan Boulevard
Bear, DE 19701
302.832.1343 Phone
302.832.3213 Fax

**Silver Lake Elementary**
200 E. Cochran Street
Middletown, DE 19709
302.378.5023 Phone
302.378.5092 Fax

**Townsend Elementary**
P.O. Box 369
126 Main Street
Townsend, DE 19734
302.378.5020 Phone
302.378.5088 Fax

**Louis L. Redding Middle**
201 New Street
Middletown, DE 19709
302.378.5030 Phone
302.378.5080 Fax

**Everett Meradith Middle**
504 South Broad Street
Middletown, DE 19709
302.378.5001 Phone
302.378.5031 Fax

**Middletown High**
120 Silver Lake Road
Middletown, DE 19709
302.376.4141 Phone
302.378.5268 Fax

**Groves Adult High**

To:     Olga Yatzus

From:   Mary Ann Mieczkowski

Date:   April 9, 2003

Re:     Request schedule of testing

On Thursday, March 27, 2003, I requested a schedule of the initial evaluations, re-evaluations and any other testing that you are completing for students in Middletown High School to be submitted to me by the end of the day. I again made the request on Tuesday, April 1, 2003 and Tuesday April 8, 2003. Each time the request was made, you responded that you would complete it by the end of the day and submit it to me. I have yet to receive your schedule of testing.

Please consider this memo an official reprimand that will be placed in your personnel file. Please schedule a time to discuss this matter and submit the requested document.


Cc:     Tony Marchio, Superintendent
        Donna Mitchell, Principal MHS
        Zen Marusa, Human Resources Director


An Equal Opportunity Employer

P-294



# Appoquinimink School District

To:    Olga Yatzus

From:  Mary Ann Mieczkowski

Date:  April 9, 2003

Re:   · Manifestation Determination Meeting

On Tuesday, April 8, 2003, I came by the Special Education office at Middletown High and entered a manifestation determination meeting for a student (T. McG.). In attendance were you as the psychologist, Sharon Hill, as the ED, and Mrs. Lyles, the student's mother via telephone. After investigating further, it was determined that the student transferred to MHS in December, 2002. The IEP that was in the audit file was developed by the Colonial School District but sent by Mount Pleasant High School on December 9, 2002.

After an offense of possession of an illegal substance on March 20, 2003, a notice for a manifestation determination meeting was sent out on March 24th for a meeting on March 26th. At this meeting the manifestation was never done, however, an IEP was partially developed with goals and objectives missing. The previous IEP contained a Functional Behavior Assessment and a Behavior Support Plan. After reviewing the minutes of the meeting and in a discussion with you, it was stated that since the team didn't have enough information, they would reconvene the meeting at a later date. Classroom data, assessments, and report card information over four. months and a previous IEP with goals, objectives and a Behavior Support Plan should be enough information to determine the manifestation, develop an appropriate IEP and a Behavior Support Plan. During our discussion, you stated that the team, including yourself, messed this one up! "What do you want us to do?" was your next question. I requested that an IEP meeting be scheduled as soon as possible to focus on this issue.

Please consider this a memo an official reprimand that will be placed in your personnel file. Please schedule a meeting to discuss and sign this document.

Cc:    Tony Marchio, Superintendent
       Donna Mitchell, Principal MHS
       Zen Marusa, Human Resources Director

Superintendent
Tony Marchio

Board of Education
Dr. Kent St. Pierre
   President
Mr. Ed Czerwinski
   Vice President
Mrs. Joanne Christian
Dr. Joseph English
Mr. William Hutchison

District Office
118 South Sixth Street
P.O. Box 4010
Odessa, DE 19730-4010
302.376.4128 Phone
302.376.5016 Fax

Early Childhood Center
502 South Broad Street
Middletown, DE 19709
302.376.4400 Phone
302.378.5696 Fax

Cedar Lane Elementary
1259 Cedar Lane Road
Middletown, DE 19709
302.378.5045 Phone
302.378.5091 Fax

Olive B. Loss Elementary
200 Brennan Boulevard
Bear, DE 19701
302.832.1343 Phone
302.832.3213 Fax

Silver Lake Elementary
200 E. Cochran Street
Middletown, DE 19709
302.378.5023 Phone
302.378.5092 Fax

Townsend Elementary
P.O. Box 369
126 Main Street
Townsend, DE 19734
302.378.5020 Phone
302.378.5088 Fax

Louis L. Redding Middle
201 New Street
Middletown, DE 19709
302.378.5030 Phone
302.378.5080 Fax

Everett Meredith Middle
504 South Broad Street
Middletown, DE 19709
302.378.5001 Phone
302.378.5108 Fax

Middletown High
120 Silver Lake Road
Middletown, DE 19709
302.376.4141 Phone
302.378.5268 Fax

Groves Adult High

P 445



Middletown High School  120 Silver lake Road  Middletown  DE 19709  302-376-4141 fax 302-378-5268

April 24, 2003

Ms. Yatzus:

On Tuesday, April 22 I observed you entering the building at 7:55 a.m. I tried to locate you to inform you that we were successful in moving your files and office furniture to the new location. As you entered the building, we had a conversation. Again this morning, I arrived to an IEP that you and I scheduled on Tuesday to be held today at 8 a.m. When I arrived at the meeting I discovered that you had not yet arrived at school. I came to the office to call you and returned to the meeting at 8:30 to find that you had arrived while I was in the office.

In the past we have had conversation about the expectations of when you are to report to work. As discussed in those meetings, you are expected to be at work no later than 7:30 a.m. You were not at work on time these two days.

Please plan to meet with me to discuss this issue and to sign this letter.

Sincerely,

*Donna Lee Mitchell*
Donna Lee Mitchell
Principal

I have read the above correspondence and understand that it will be placed in my personnel file.

_____        _____        *Donna Lee Mitchell* 4/24/03
Teacher Signature       Date                        Administrative Signature       Date

Cc:     Tony Marchio, Superintendent
        Marion Proffitt, Assistant Superintendent
        Zenon Marusa, Personnel Director

B-287

Donna Lee Mitchell            Nick Gibbs                  Felecia Duggins              John C. Martin              Byron Murphy
Principal                     Assistant Principal         Assistant Principal          Assistant Principal          Dean Math I Science
302-376-4141                  302-376-4147                302-376-4143                 302-376-4142                302-376-4161
Donna.mitchell@appo.k12.de.us Nick.gibbs@appo.k12.de.us   Felecia.duggins@appo.k12.de.us  John.martin@appo.k12.de.us   Byron.murphy@appo.k12.de.u

# Exhibit 5

B-28(a)

Subj:     **RE: sorry I missed your call**
Date:     4/1/2003 3:54:20 PM Eastern Standard Time
From:     Vicky.Boyd@DSEA.ORG
To:       Olga22@aol.com
*Sent from the Internet (Details)*

FYI

I just got a call from Ruth Ann in Tony Marchio's office who fell all over herself apologizing because there is no tape of the hearing. She said she tested it and it was working, so the only thing she can think of is that the switch was turned the wrong way, to the "listen" mode, instead of record. I watched her turn it on and saw the wheels moving, so didn't double check. I don't see any subterfuge in this, as they wanted it taped too, and Ruth Ann has always proved to be an honest and upright person. I just think it's one of those things that happens.

There probably wasn't anything terribly important to record, anyway, so I think we're ok.

V

-----Original Message-----
**From:** Olga22@aol.com [mailto:Olga22@aol.com]
**Sent:** Friday, March 21, 2003 12:32 AM
**To:** Boyd, Vicky [DE]
**Subject:** sorry I missed your call

Hi Vicky,

Just to bring you up to speed in case we can't connect tomorrow.

1. The District is starting to feel the heat of parents breathing down their necks. This evening nine parents gathered to get organized to file a major class action OCR suit. Things are going to hit the fan in the very near future. Parents are coming in insisting on copies of audit, cum, attendance, discipline and medical records. It seems like watergate....they committed the crime, but the cover up is going to be what really nails them. Parents are coming in with attorneys and advocates and are quickly becoming quite knowledgeable about the law. They are dumb, but they realize that they are in trouble.

2. Knowing that the heat is coming on them, Mitch goes nuts trying to go through all of the audit files. They realize that they are clearly out of compliance with the majority of special education files.

3. They decide that they are going to have all of the case managers sign a form that states that they were given the case management procedures.....Why? Now they have scapegoats.

4. Sharon Hill is fighting with Mitch because of her total disrespect and lack of support, in addition to the fact that she doesn't know the law. Sharon is now making it a racial issue, running to Marion constantly and sending her a letter of complaint regarding Donna and Mitch's behavior. They are

Sunday, April 27, 2003 America Online: Olga22

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | § | |
| | § | |
| Plaintiff, | § | Case No.: 05-103 SLR |
| | § | |
| v. | § | |
| | § | |
| APPOQUINIMINK SCHOOL DISTRICT | § | |
| and TONY MARCHIO, individually | § | **TRIAL BY JURY DEMANDED** |
| and in his official capacity, MARY ANN | § | |
| MIECZKOWSKI, individually and in her | § | |
| official capacity, DONNA MITCHELL, | § | |
| individually and in her official capacity, | § | |
| and MARION PROFFITT, individually | § | |
| and in her official capacity, | § | |
| | § | |
| Defendants. | § | |

APPENDIX PAGE B30 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

**BIGGS AND BATTAGLIA**

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

Subj:     **RE: new round**
Date:     10/7/2002 8:31:15 PM Eastern Standard Time
From:     Vicky.Boyd@DSEA.ORG
To:       Olga22@aol.com
*Sent from the Internet (Details)*

Sorry it's taken some time for me to get back to you; I've been out recovering from surgery. I'm in part-time now and will try to call you tomorrow. Is there a time that's better than others? In the meantime, I've forwarded your email and letters to our attorney to get his opinion. I'll try to get up with you tomorrow.

-----Original Message-----
From: Olga22@aol.com [mailto:Olga22@aol.com]
Sent: Sun 10/6/2002 11:22 PM
To: Boyd, Vicky [DE]
Cc:
Subject: new round

Vicky,

I'm not sure if Lynn was able to catch up with you, but the next round is in full swing. I have decided that I need to proceed with an attorney. Is this something that DSEA can assist with? I'm soooooo tired of this. I just want to be able to do my job without all of the harassment. Any suggestions? My new office phone number is 376-4157.

Olga

B-31
P-257

Sunday, April 27, 2003 America Online: Olga22

| | |
|---|---|
| Subj: | **oops** |
| Date: | 1/15/2003 11:53:57 AM Eastern Standard Time |
| From: | Olga22 |
| To: | vicky.boyd@dsea.org |

Vicky,

Sorry, I sent that last note accidently. I am sure that Lynn told you that I received another letter.

When I came back to work after the holiday, I found my office rearranged and my desk and computer were gone. Evidently, Donna decided that she did not want me to have a space to do my job and moved my desk in a tiny room with the ED and spec ed secretary. My office now was to be a conference room. My files and resource materials were left in the new conference room  At that point I did not have my phone and it took a while to have my computer up and running. Then the next day on Friday, she decided that she was going to move all three of us into the conference room and make that small room a conference area. At that point we had to move back and again did not have access to a computer until the following Friday afternoon. This foolishness took 7 days of productivity away. Also when we returned, the ED that job hired was now part of the conspiracy. She was recruited by Marion and I suspect was offered that job even before Marilyn retired.

She gave Jim Dooley 4 student names that I was supposedly responsible to have something done, without even asking me any questions. I told Jim that I did not owe anything on these students and gave him a status report on what I knew about them. There was nothing in writing that I saw stating what they were talking about. Anyway, Jim told me that I had to send him an email that I did not owe anything. At that point I did not have access to my email for the next week. This Monday, I received a letter about not responding to his request quickly enough.

So they can make stuff up and then make it impossible for me to do my job, and then use that as an excuse to send me letters of reprimand. At this point they are out of control. What is DSEA able to help me with in pursuing a harrassment suit? I cannot continue to work under these conditions and I am looking at another job, however, they cannnot get away with this illegal behavior.

I have the rest of this year and next until I reach my 25th year. At this time I am in the process of starting my own educational consultation business and plan to be fully operational as soon as I retire.

How shall I proceed with holding them accountable?

Olga

B-259

| | |
|---|---|
| Subj: | **RE: oops** |
| Date: | 1/25/2003 2:21:35 PM Eastern Standard Time |
| From: | Vicky.Boyd@DSEA.ORG |
| To: | Olga22@aol.com |
| CC: | kebler@comcast.net, mary.kebler@appo.k12.de.us |

*Sent from the Internet (Details)*

If you're sure you're going to retire, you could start the paperwork, but I wouldn't commit your self to anything right now. '04 is quite a ways away and a lot can happen between now and then. If it was THIS spring, I'd give you different advice.

I'm still interested in talking to Jim Dooley to get "the lay of the land". If you received the letter the 13th, we have until Tuesday to file a grievance if that's the direction we need to go. I'll let Lynn know to be ready to do that in case it's necessary.

Did you explain to Jim about the computer situation, etc.? What was his response? Let me know if I can call him and then we'll see where we are.

**Thanks**

V

-----Original Message-----
**From:** Olga22@aol.com [mailto:Olga22@aol.com]
**Sent:** Friday, January 24, 2003 4:42 PM
**To:** Boyd, Vicky [DE]
**Subject:** Re: oops

Vicky,

I recieved the letter on the 13th. I was out "sick" on 1/6 and 1/8 and then again on 1/15. The working conditions were unbearable during the week of the 6th. Aside from the continual verbal and emotional abuse, I was not able to access my computer or phone and did not have a place to work. My desk was a total mess from the unexpected double move, one during winter break and the other on the 7th. The following Monday, I received the letter. I was so disgusted with the whole place that I needed to regroup before going back in.

Let me know what I need to do. I am definitely planning to retire at the 25 year mark, which will be in June '04. I was advised that I should file the

B-34

Thursday, February 20, 2003 America Online: Olga22

papers for retirement so that they know that I am planning to retire.  What do you think?  Have you had a chance to talk to Jeff Tashner?

Thanks for your help.

Olga

B-261

Subj:    **oops**
Date:    1/15/2003 11:53:57 AM Eastern Standard Time
From:    Olga22
To:      vicky.boyd@dsea.org

Vicky,

Sorry, I sent that last note accidently. I am sure that Lynn told you that I received another letter.

When I came back to work after the holiday, I found my office rearranged and my desk and computer were gone. Evidently, Donna decided that she did not want me to have a space to do my job and moved my desk in a tiny room with the ED and spec ed secretary. My office now was to be a conference room. My files and resource materials were left in the new conference room At that point I did not have my phone and it took a while to have my computer up and running. Then the next day on Friday, she decided that she was going to move all three of us into the conference room and make that small room a conference area. At that point we had to move back and again did not have access to a computer until the following Friday afternoon. This foolishness took 7 days of productivity away. Also when we returned, the ED that job hired was now part of the conspiracy. She was recruited by Marion and I suspect was offered that job even before Marilyn retired.

She gave Jim Dooley 4 student names that I was supposedly responsible to have something done, without even asking me any questions. I told Jim that I did not owe anything on these students and gave him a status report on what I knew about them. There was nothing in writing that I saw stating what they were talking about. Anyway, Jim told me that I had to send him an email that I did not owe anything. At that point I did not have access to my email for the next week. This Monday, I received a letter about not responding to his request quickly enough.

So they can make stuff up and then make it impossible for me to do my job, and then use that as an excuse to send me letters of reprimand. At this point they are out of control. What is DSEA able to help me with in pursuing a harrassment suit? I cannot continue to work under these conditions and I am looking at another job, however, they cannnot get away with this illegal behavior.

I have the rest of this year and next until I reach my 25th year. At this time I am in the process of starting my own educational consultation business and plan to be fully operational as soon as I retire.

P-262

Subj:      **updates**
Date:      2/28/2003 4:04:51 PM Eastern Standard Time
From:      Olga22
To:        vicky.boyd@dsea.org
File:      **letter to donna.ZIP (8834 bytes) DL Time (721662 bps): < 1 minute**

Vicky,

Things have gotten a bit interesting at work.  Last Tuesday we had a 10 hour long non-stop meeting with a student, his parents and their attorney.  The reason for this marathon was Mitch's unprofession behavior and her lack of knowledge of the law.  During the meeting she was extremely verbally abusive to me, as usual, but also to Sharon Hill as well.  Earlier that morning,  she was extremely rude and disrespectful to several black students that came into our office to see Sharon. These students immediately called their parents who then called Marion. Well, since Sharon has the ear of Marion, things have been a bit on the explosive side, because Sharon will "not be talked to that way" and neither will the African American students......

In that marathon meeting, we spent 2 1/2 hours discussing a behavior manifestation.  Since everyone in attendance must vote, my opinions were in opposition to the districts position. I did not believe this young man's IEP was appropriate at the time, and stated so for very specific reasons.  In talking with Donna briefly the following day, I was told by Donna that regardless of my professional opinion, that I need to be on the same page as the district.

I tried to file a complaint with OCR regarding the violation of the school district's disciplining of IDEA and 504 children.  They said that they only take complaints from parents and that I should file a complaint with DOE.  I don't think that will be a great idea....what do you think?

Please review the three letters that I wrote and please feel free to fix anything you want.  I could write these letters on a daily basis, but I think that this summarizes the critical issues that have been representative of all of our interactions to date.

Also, in Mitch's letter, I volunteered you to assist with a conflict resolution meeting.  If you are not comfortable with this, let me know.  Is this something Jeff could also attend?

See how much one can accomplish on a "snow day?"

Olga

B-37
P-265

having screaming matches and the plot thickens.

5. Another minority teacher is totally disrespected and insulted in an IEP meeting. Now the racial card gets flipped again.

6. Phyllis is being blamed for all of the woes of the record keeping. She has never received any form of training. She should "just know" these things, I guess.

7. Last week they try pulling a fast one on a parent. They want to schedule a behavior manifestation meeting without inviting the parent. I said, "I know this parent would want to be here". They said, we don't need to have her here since she canceled the last one (parent had to be in court with son). Then they said to me, we only need 5 minutes to complete the form. I said, "I don't think so. Where is our accountability here? We need to answer several questions that address the appropriateness of his program. He hasn't been in school long enough with all of his suspensions to be able to provide an educational program for him."

8. Behind my back, they call Chet and tell him that I couldn't be available due to a conflict in my schedule (lie) and could he cover the meeting. I happen to see him in Dooley's office and ask why he is there. He tells me and said that when he asked to see the student's file, he was told that they couldn't find it. They also told him that that was the only suspension this student had. At that point I told Chet what they were up to and he refused to participate.

9. Today we have a behavior manifestation on a student that has been suspended over 43 days thus far and his mother told the school in August that he had a 504 plan. It was never implemented. Now they wanted to have a behavior manifestation on this student and wanted to recommend alternative placement. Donna talks to me and I said that it is not right to send a student to an alternative school because we didn't do our job.

10. The parents show up and I'm talking to the parents. Donna has Byron Murphy escort the parents away from me and Donna tells me that she needs to "talk" to me for a second. She then proceeds to tell me that since this is a 504 meeting, that a school psychologist isn't required to be there by law and that I am now "uninvited" and am forbidden to attend the manifestation meeting to discuss whether his behavior was a manifestation of his disability, even though I have been working closely with him since October. This is a child who has been diagnosed and treated for Tourettes' and ADHD.

Vicky,
What is going on here is the worst nightmare that I have ever seen and the system is totally corrupt from the top down. Now they want to beat up on all of the teachers because they don't know what they are doing and are feeling the heat. Mitch is totally incompetent. She doesn't know the law and has zero people skills. Donna knows more but she is controlling and is blatantly deifying federal law. Then they want to set up teachers because they are sensing lawsuits may be coming their way.

The News Journal has also been contacted and they have been doing the investigation. This story will break within hours of the OCR complaint once it is filed. They will then assign a school reporter that will be assigned to follow this story. This staff is in dire need of protection. As for me, I can't wait until they fire me..........They the battle will begin.

I do want to nail them for their blatant unethical and illegal behavior. I was thinking of documenting these two events and copying them to Marchio and the Board. What do you think?

2.



B-38
P-277

Subj:    **RE: mad.....**
Date:    4/4/2003 10:14:38 AM Eastern Standard Time
From:    Vicky.Boyd@DSEA.ORG
To:      Olga22@aol.com
*Sent from the Internet (Details)*

Sorry I couldn't take your call yesterday, it's been crazy here too. I found out from Sharon that she never did get a letter; that Mitch threatened it , but never gave her one. That's why we didn't see anything about that. My bigger concern is that she didn't deal with the priority setting you did--kid's well-being as opposed to exact punctuality. I may call her as I have another issue to discuss with her anyway.

Your letter to Donna was very good documentation. I'm concerned about the repercussions of the last paragraph and would probably advised you to delete that, had I had the chance. Again, I'm sorry I wasn't available yesterday.

What is it you want to do about these two letters?  I need to see them anyway, so please fax them to me. Then we'll talk strategy. It will also give you the opportunity to collect your wits a little over the weekend.   The work situation there is clearly preposterous. Sharon called me yesterday, too, so I need to get back to her also. I'm sure it's more of the same.

V

>-----Original Message-----
**From:** Olga22@aol.com [mailto:Olga22@aol.com]
**Sent:** Friday, April 04, 2003 12:54 AM
**To:** Boyd, Vicky [DE]
**Subject:** mad.....

VICKY,

IN CASE YOU HAVEN'T FIGURED IT OUT, I HAVE REACHED MY LIMIT. I RECEIVED 2 LETTERS TODAY.
1. MY SON HAD A SENIOR PROJECT PRESENTATION AT HODGSON YESTERDAY AND HE NEEDED ME TO BRING HIS THINGS TO SCHOOL. HE THEN WANTED ME TO STAY FOR HIS PRESENTATION. I TOLD PHYLLIS WHILE MITCH AND DONNA WERE STANDING THERE. I SAID THAT I WOULD BE IN AS SOON AS I COULD GET IN. BY THE TIME EVERYTHING WAS OVER, IT WAS ALMOST 1:OO. AT THAT POINT I CALLED INTO THE OFFICE AND TOLD THE SECRETARY THAT THERE WAS NO POINT IN MY COMING IN THAT DAY. I WAS WRITTEN UP FOR NOT FOLLOWING PROCEDURES.

2. JAKE......SHE TRIED TO WRITE ME UP FOR NOT HAVING BEHAVIORAL GOALS ON THE IEP AND

P-279

Sunday, April 27, 2003 America Online: Olga22

THAT THE MINUTES WERE NOT COMPREHENSIVE ENOUGH TO DESCRIBE OUR CONCERNS.

AS YOU CAN SEE, I HAVE KEPT MY TRUMP CARDS CLOSE TO MY CHEST, UNTIL TODAY. WE DO REACH A LIMIT.

THE ARTICLE WILL BE RUNNING IN SUNDAY'S PAPER. FRONT PAGE OF THE LOCAL SECTION. SINCE THEY KNOW I AM INVOLVED, I DECIDED THAT BECOMING THE "WHISTLER BLOWER" WILL WORK TO MY ADVANTAGE. WHEN THEY FIRE ME, I WILL HAVE PROOF THAT THEY KNEW I "BLEW THE WHISTLE".

THINGS WILL NEVER BE THE SAME IN APPO. WHO KNOWS, MAYBE WE WON'T BE CONSUMING 90% OF YOUR TIME.

IF IT BLOWS UP IN MY FACE, SO BE IT.

WHAT A SURPRISE, MARION RULED IN TONY'S FAVOR. DID YOU NOTICE THAT SHE NEVER RESPONDED TO THE CONCERN REGARDING INEQUITABLE TREATMENT. BY THE WAY, THE REASON JOHN WASN'T WRITTEN IN THE APPOINTMENT BOOK WAS THAT PHYLLIS HELPED ME RECALL THAT HE CAME IN AS AN EMERGENCE. I SCHEDULED HIM IN MY BOOK FOR THE FOLLOWING DAY AS A FOLLOW UP.

SHALL WE GO TO THE NEXT LEVEL OR DO I USE THIS AS A "INEQUITABLE TREATMENT DUE TO RACE?" SHARON SEEMS TO WANT TO USE THAT CARD OFTEN. BY THE WAY, AFTER OUR MEETING ON FRIDAY, MARION HAD HER TECH GUYS GOING THROUGH MY COMPUTER AND PHYLLIS'. ALSO, I ASSUME THAT MARION TOLD SHARON IN NO UNCERTAIN TERMS THAT SHE IS NEVER TO SPEAK NAME AGAIN. SHE HASN'T MENTIONED THE "I TALKED TO MRS. PROFFIT AND SHE DID...".

THE SPECIAL EDUCATION OFFICE WAS 50+ IEPs OUT OF COMPLIANCE FOR JUST THE ANNUAL REVIEW. MARILYN HAD SCHEDULED THEM ALL THROUGH JANUARY, AND SHARON CANCELED ALL OF THEM, AS WELL AS NEVER RESCHEDULING THEM, NOR DID SHE SCHEDULE FEB OR MARCH'S. THE OFFICE IS IN TOTAL CHAOS. MITCH AND DONNA HAVE BEEN IN OUR OFFICE ACTING LIKE TOTAL PSYCHOS. THEY WERE INFORMED ABOUT THE RUMBLINGS AND THE ACTIVITIES OF THE PARENTS. FINALLY TODAY, THEY HAVE BEEN BEHAVING THEMSELVES AND ACTUALLY WERE BEHAVING LIKE PROFESSIONALS. I CAN SEE THAT THEY ACTUALLY KNOW HOW TO BEHAVE.

P-280

Subj:     **the saga continues**
Date:     8/8/2002 5:55:09 PM Eastern Standard Time
From:     Olga22
To:       vicky.boyd@dsea.org

Vicky,

i hope i can talk to you before saturday since i will be leaving to go on vaction until the 17th. the reason i am writing is that when we spoke earlier about the hostile work environment from tony, i was hoping things would settle down. unfortunately, i am really upset about the fact that one of my time sheets for my summer work hours "disappeared" and i was not paid for two weeks of my summer work on the previous paycheck. when i checked in with payroll, they said that they never received the time sheet. the other people in my department were paid and my sheet was turned in to kathy bromwell at the same time....i was extremely upset because i had just mailed out bills with the understanding that i would be paid that day, and the money was not deposited into my account, which resulted in a bunch of bounced checks. when i was inquiring about where the time sheet had disappeared, no one knew. i then submitted another time sheet and it was signed by tony. he never said anything about what had happened to it. he did say that he had asked me for my summer schedule, but that i hadn't given it to him. when chet and i met with him, earlier in the summer, i gave him a list of everything that i had done up to that point, and what else needed to be completed during the rest of my time. i left my schedule with chrissy, although i continued to test additional kids without updating my schedule with chrissy, since i told her that i would be available to work monday though thursday, once my teaching committment with UD was finished for the summer session. i have been extremely busy trying to get kids tested and didn't realize that he wanted something more. the main thing here is that none of the spec ed coordinators that were given the same days as i was, were expected to jump through a thousand hoops......they just put the time in without prior schedules and explanations on how they were spending their time. i am attaching my email to tony and two that he responded to me. i know you won't be able to ingore his tone of hostility. my guess is that he removed my time sheet and never let me know anything about it, since he is now in possesion of both ( the original one and the one that i had to put together in a real hurry). i presume now that he has held up processing the new time sheet as well, and that i won't be paid again until the end of the month...if ever. i have tried to just do my job and have been working my butt off this summer, and this is just not going to go away.

this, in conjunction with his statement that he thinks that i deliberately didn't get my work done during the school year because i needed a reason to get paid for summer work is outrageous. he hasn't even talked with ann thomas about why there were so many kids that needed to be tested at the end of the year. he is questionning every thing i do  like my request to go to a one day

P-286

Sunday, April 27, 2003 America Online: Olga22

conference....accusing me of "taking advantage" of going to all these conferences because i don't have a supervisor!  again, the inequity of the coordinators going on three week long out of state conferences was never questionned, but my three one day conferences were "excessive".  i really need your help with this asap!  please advise.....i am ready to hire an attorney......but i would rather not.  i'm not sure who else to turn to since this system seems to be so corrupt.

B-42
P-287

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

OLGA ALEXANDRA YATZUS,                  §
                                        §
        Plaintiff,                      §        Case No.: 05-103 SLR
                                        §
            v.                          §
                                        §
APPOQUINIMINK SCHOOL DISTRICT           §
and TONY MARCHIO, individually          §        **TRIAL BY JURY DEMANDED**
and in his official capacity, MARY ANN  §
MIECZKOWSKI, individually and in her    §
official capacity, DONNA MITCHELL,      §
individually and in her official capacity, §
and MARION PROFFITT, individually       §
and in her official capacity,           §
                                        §
        Defendants.                     §

APPENDIX PAGE B43 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

**BIGGS AND BATTAGLIA**

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff

# Exhibit 6

B-43(a)

Revised 1992



# PROFESSIONAL CONDUCT MANUAL

- *Principles for Professional Ethics*
- *Standards for the Provision of School Psychological Services*

National Association of School Psychologists

B 846

# PRINCIPLES FOR PROFESSIONAL ETHICS

PREFACE ........................................................................................ 3

I) Introduction ........................................................................... 5

II) Professional Competency ................................................... 6
   A) General ................................................................................ 6

III) Professional Relationships and Responsibilities ............. 6
   A) General ................................................................................ 6
   B) Students ............................................................................... 7
   C) Parents ................................................................................ 8
   D) Service Delivery ................................................................. 8
   E) Community ........................................................................... 8
   F) Related Professionals ........................................................ 9
   G) Other School Psychologist ................................................ 9

IV) Professional Practices – Public Settings ........................ 10
   A) Advocacy ........................................................................... 10
   B) Assessment and Intervention .......................................... 10
   C) Use of Materials and Computer ....................................... 11
   D) Research and Evaluation ................................................. 11
   E) Reporting Data and Conferencing Results ..................... 11

V) Professional Practices – Private Setting .......................... 12
   A) Relationships with School Districts ................................. 12
   B) Service Delivery ............................................................... 12
   C) Announcements/Advertising ............................................ 13

# PROCEDURAL GUIDELINES FOR THE
# ADJUDICATION OF ETHICAL COMPLAINTS

SECTION I. Responsibility and Function ..................................... 14
SECTION II. Scope and Authority ............................................... 14
SECTION III. Receipt and Acknowledgement of Complaints
            and Inquiries ................................................... 15
SECTION IV. Conduct of an Informal Inquiry ............................. 16
SECTION V. Recommendations of the Ad Hoc Committee ......... 18
SECTION VI. Conduct of a Formal Investigation ....................... 19
SECTION VII. Recommendation of the Fact-Finding Committee ....20
SECTION VIII. Conduct of the Hearing Committee ..................... 21
SECTION IX. Recommendations of the Hearing Committee ........21

REFERENCES ........................................................................... 23

P-822

# I. INTRODUCTION

The formal principles that guide the conduct of a professional school psychologist are known as *Ethics*. By virtue of joining the Association, each NASP member has agreed to act in a manner that shows respect for human dignity and assures a high quality of professional service. Although ethical behavior is an individual responsibility, it is in the interest of an association to adopt and enforce a code of ethics. If done properly, members will be guided towards appropriate behavior, and public confidence in the profession will be enhanced. Additionally, a code of ethics should provide due process procedures to protect members from potential abuse of the code. These *Principles* have been written to accomplish these goals.

The principles in this manual are based on the assumptions that: 1) school psychologists will act as advocates for their students/clients, and 2) at the very least, school psychologists will do no harm. These necessitate that school psychologists "speak up" for the needs and rights of their students/clients at times when it may be difficult to do so. School psychologists are also restrained to provide only those services for which they have acquired an acknowledged level of experience, training, and competency. Beyond these basic premises, judgement is required to apply the ethical principles to the fluid and expanding interactions between school and community.

There are many different sources of advice for the proper way to behave; local policies, state laws, federal laws, credentialing standards, professional association position statements, and books that recommend "Best Practices" are just a few. Given one's employment situation and the array of recommendations, events may develop in which the proper course of action is unclear.

As a general rule, the Association will seek to enforce the *Ethical Principles* upon members. The NASP *Standards for the Provision of School Psychological Services* are typically not enforced, although all members are encouraged to work towards achieving the hallmarks of quality services delivery that are described therein. Similarly, "position statements" and "best practices" documents are not adjudicated. In other words, one may consider the guidance of *Ethical Principles* to be more general, yet more enduring than other documents that reflect short-term opinions about specific actions that are shaped by local events, popular trends, or recent developments in the field.

The principles in this manual are organized into several sections as a result of editorial judgement. Therefore, principles discussed in one section may also apply to other sections. Every school psychologist, regardless of position (e.g. practitioner, researcher, university trainer, supervisor, state or federal consultant, administrator of psychological services) or setting (e.g. public or private school, community agency, hospital, university, private practice) should examine the theme reflected in each ethical principle to determine the application to her/his individual situation. For example, although a given principle may specifically discuss responsibilities towards "clients", the intent is that the standard would also apply to supervisees, trainees, and research participants. To obtain additional assistance in applying these principles to your particular setting, consult with experienced school psychologists, and seek advice from the National Association of School Psychologists or your state school psychology association.

5

## C) PARENTS, LEGAL GUARDIANS, AND APPOINTED SURROGATES

1. School psychologists explain all services to parents in a clear, understandable manner. They strive to propose a set of options which takes into account the values and capabilities of each parent.

2. School psychologists recognize the importance of parental support and seek to obtain this by assuring that there is direct parent contact prior to seeing the student/client. They secure continuing parental involvement by a frank and prompt reporting to the parent of findings and progress that conforms to the limits of previously determined confidentiality.

3. School psychologists respect the wishes of parents who object to school psychological services and attempt to guide parents to alternative community resources.

4. School psychologists discuss recommendations and plans for assisting the student/client with the parent. The discussion includes alternatives associated with each set of plans, showing respect for the ethnic/cultural values of the family. The parents are advised as to sources of help available at school and in the community.

5. School psychologists discuss the rights of parents and students regarding creation, modification, storage, and disposal of confidential materials that will result from the provision of school psychological services.

## D) SERVICE DELIVERY

1. School psychologists are knowledgeable of the organization, philosophy, goals, objectives, and methodologies of the setting in which they are employed.

2. School psychologists recognize that an understanding of the goals, processes and legal requirements of their particular workplace is essential for effective functioning within that setting.

3. School psychologists attempt to become integral members of the client systems to which they are assigned. They establish clear roles for themselves within that system and the local community.

4. School psychologists who provide services to several different groups may encounter situations when loyalties are conflicted. As much as possible, the stance of the school psychologist is made known in advance to all parties to prevent misunderstandings.

5. School psychologists promote changes in their employing agencies that will benefit their clients.

## E) COMMUNITY

1. School psychologists are also citizens, thereby accepting the same responsibilities and duties as any member of society. They are free to pursue individual interests, except to the degree that these compromise professional responsibilities.

B-47

8

2. School psychologists may act as individual citizens to bring about social change in a lawful manner. Individual actions should not be presented as, nor suggestive of representing the field of school psychology.

3. As employees or employers, in public or private domains, school psychologists do not engage in or condone practices that discriminate against clients based on race, handicap, age, gender, sexual preference, religion, national origin, economic status, or native language.

4. School psychologists avoid any action that could violate or diminish the civil and legal rights of clients.

5. School psychologists adhere to federal, state, and local laws and ordinances governing their practice. If regulations conflict with ethical guidelines, school psychologists seek to resolve such conflict through positive, respected, and legal channels.

## F) RELATED PROFESSIONS

1. To best meet the needs of students and clients, school psychologists cooperate with other professional disciplines in relationships based on mutual respect.

2. School psychologists recognize the competence of other professionals. They encourage and support the use of all resources to best serve the interests of students and clients.

3. School psychologists strive to explain their field and their professional competencies, including roles, assignments, and working relationships to other professionals.

4. School psychologists cooperate with other professionals and agencies with the rights and needs of their client in mind. If a client is receiving similar services from another professional, school psychologists promote coordination of services.

5. The student or client is referred to another professional for services when a condition is identified which is outside the professional competencies or scope of the school psychologist.

6. When transferring the intervention responsibility for a student or client to another professional, school psychologists ensure that all relevant and appropriate individuals, including the student/client when appropriate, are notified of the change and reasons for the change.

7. When school psychologists suspect the existence of detrimental or unethical practices, the appropriate professional organization is contacted for assistance in determining the procedures established by that profession for examining the practices in question.

## G) OTHER SCHOOL PSYCHOLOGISTS

1. School psychologists who employ, supervise, or train other professionals accept the obligation to provide continuing professional development. They also provide appropriate working conditions, fair and timely evaluation, and constructive consultation.

B-489

2. School psychologists who supervise interns are responsible for all professional practices of the supervisees. They assure the students/clients and the profession that the intern is adequately supervised.

## IV. PROFESSIONAL PRACTICES
## PUBLIC AND PRIVATE SETTINGS

### A) ADVOCACY

1. School psychologists consider the students or clients to be their primary responsibility, acting as advocates of their rights and welfare. When choosing a course of action, school psychologists take into account the rights of each individual involved and the duties of the school personnel.

2. School psychologists' concerns for protecting the rights and welfare of students is communicated to the school administration and staff, and is the top priority in determining services.

### B) ASSESSMENT AND INTERVENTION

1. School psychologists will maintain the highest standard for educational and psychological assessment.

   a) In conducting psychological, educational, or behavioral evaluation, or in providing therapy, counseling, or consultation services, due consideration will be given to individual integrity and individual differences.

   b) School psychologists respect differences in age, gender, socioeconomic, cultural, and ethnic backgrounds. They select and use appropriate assessment or treatment procedures, techniques, and strategies.

2. School psychologists collect relevant data using valid and reliable instruments and techniques that are applicable and appropriate for the benefit of the student or client.

3. School psychologists combine observations, background information, and information from other disciplines in order to reach comprehensive conclusions.

4. School psychologists use assessment techniques, counseling and therapy procedures, consultation techniques, and other direct service methods that the profession considers to be responsible, research-based practice.

5. School psychologists do not condone the use of psychological or educational assessment techniques by unqualified persons in any way, including teaching, sponsorship, or supervision.

6. School psychologists develop interventions which are appropriate to the presenting problems and are consistent with data collected. They modify or terminate the treatment plan when the data indicate the plan is not achieving the desired goals.

10

# Exhibit 7

B-49(a)

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

OLGA ALEXANDRA YATZUS, §
§
§
Plaintiff, §
§
v. §
§
APPOQUINIMINK SCHOOL DISTRICT §
and TONY MARCHIO, individually §
and in his official capacity, MARY ANN §
MIECZKOWSKI, individually and in her §
official capacity, DONNA MITCHELL, §
individually and in her official capacity, §
and MARION PROFFITT, individually §
and in her official capacity, §
§
Defendants. §

Case No.: 05-103 SLR

**TRIAL BY JURY DEMANDED**

APPENDIX PAGE B50 TO PLAINTIFF'S ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

REDACTED PAGE
CONFIDENTIAL

BIGGS AND BATTAGLIA

Philip B. Bartoshesky, Esquire
921 Orange Street
P.O. Box 1489
Wilmington DE 19899-1489
(302) 655-9677
Pbarto@batlaw.com
Attorney for Plaintiff