IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 05-103-SLR |
| | ) | |
| APPOQUINIMINK SCHOOL DISTRICT | ) | |
| and TONY MARCHIO, individually and in | ) | **TRIAL BY JURY DEMANDED** |
| his official capacity, MARY ANN | ) | |
| MIECZKOWSKI, individually and in her | ) | |
| official capacity, DONNA MITCHELL, | ) | |
| individually and in her official capacity, and | ) | |
| MARION PROFFITT, individually and in | ) | |
| her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT APPOQUINIMINK SCHOOL DISTRICT'S REPLY BRIEF IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# REDACTED

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

DATED:    July 28, 2006

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

SUMMARY OF ARGUMENT ........................................................................................1

ARGUMENT ...................................................................................................................2

I.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
      YATZUS'S TITLE VII RETALIATION CLAIM...................................................2

A.    Yatzus Has Not Alleged Acts Other Than Reprimands That
      Constitute Retaliation........................................................................................2

B.    Yatzus Has Not Alleged Acts Reflecting "Retaliatory Animus"
      Sufficient To Establish Causation......................................................................4

C.    The Record Establishes Defendant's Legitimate Reasons For Non-
      renewal ...............................................................................................................5

II.   DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
      YATZUS'S FIRST AMENDMENT RETALIATION CLAIM ...........................7

A.    Yatzus's Affidavit Regarding The Scope Of Her Job
      Responsibilities Contradicts Her Deposition Testimony And Must
      Be Stricken From The Record ............................................................................7

B.    Even If Yatzus's Affidavit Is Considered, Her Speech Is Not
      Protected Under *Garcetti* .................................................................................9

C.    Yatzus's Speech Should Not Be Protected Because It Is Of Limited
      Value Under The *Pickering* Balancing .................................................................11

D.    The Record Does Not Support A Finding That Yatzus's Protected
      Speech Was A Substantial Or Motivating Factor In Defendants'
      Adverse Employment Actions ...........................................................................13

III.  IMPLIED COVENANT CLAIM MUST FAIL .....................................................17

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

Cases

*Burlington Northern & Santa Fe Railway Co. v. White,*
  *126 S. Ct. 2405 (2006)* ................................................................................ 2, 3

*Burton v. MBNA America Bank, N.A.,*
  *No 03-915 (GMS), 2005 U.S. Dist.*
  *LEXIS 12154  (D. Del. June 22, 2005)* ........................................................... 3

*Conneen v. MBNA Am. Bank, N.A.,*
  *334 F.3d 318 (3d Cir. 2003)* ...................................................................... 19

*E.I. Dupont de Nemours and Co. v. Pressman,*
  *679 A.2d 436 (Del. 1996)* ....................................................................... 18, 19

*EEOC v. Rite-Aid Corp.,*
  *No. 03-CV-777-GMS, 2005 U.S. Dist.*
  *LEXIS 32898 (D. Del. Dec. 12, 2005)* ........................................................... 8

*Garcetti v. Ceballos,*
  *126 S. Ct. 1951 (2006)* ...................................................................... *passim*

*Hackman v. Valley Fair,*
  *932 F.2d 239 (3d Cir. 1991)* ....................................................................... 8

*Holder v. City of Allentown,*
  *987 F.2d 188 (3d Cir. 1993)* ...................................................................... 12

*Johnson v. W.M.A.T.A.,*
  *883 F.2d 125 (D.C. Cir. 1989)* ..................................................................... 7

*Kinsey v. Salado Indep. Sch. Dist.,*
  *916 F.2d 273 (5th Cir. 1992)* ...................................................................... 12

*Leonard v. Lipsey,*
  *No. 3:04CV7632, 2006 U.S. Dist.*
  *LEXIS 37654 (D. Ohio June 8, 2006)* ........................................................... 12

*Lord v. Souder,*
  *748 A.2d 393 (Del. 2000)* .......................................................................... 18

*Martin v. Merrell Dow Pharmaceuticals, Inc.,*
  *851 F.2d 703 (3d Cir. 1988)* ..................................................................... 8, 9

*Mondzelewski v. Pathmark Stores, Inc.,*
   *162 F.3d 778 (3d Cir. 1998)* ......................................................................................... 4

*Pickering v. Board of Education,*
   *391 U.S. 563 (1968)* ............................................................................................. 11, 12

*Rankin v. McPherson,*
   *483 U.S. 378 (1987)* .................................................................................................. 12

*Robinson v. City of Pittsburgh,*
   *120 F.3d 1286 (3d Cir. 1997)* ...................................................................................... 6

*Rochon v. Gonzales,*
   *438 F.3d 1211 (D.C. Cir. 2006)* .............................................................................. 2, 3

*Ryan v. Shawnee Mission Unified Sch. Dist.,*
   *No. 05-2213-JWL, 2006 U.S. Dist.*
   *LEXIS 4631 (D. Kan. July 7, 2006)* ........................................................................... 12

*Shaner v. Synthes (USA),*
   *204 F.3d 494 (3d Cir. 2000)* .................................................................................. 4, 5

*Visser v. Packer Eng'g Assoc., Inc.,*
   *924 F.2d 655 (7th Cir. 1991)* ..................................................................................... 16

*Washington v. Ill. Dep't of Revenue,*
   *420 F.3d 658 (7th Cir. 2005)* .................................................................................. 2, 3

*Wilcoxon v. Red Clay Consol. Sch. Dist.,*
   *No. 05-524-SLR, 2006 U.S. Dist.*
   *LEXIS 45294 (D. Del. June 30, 2006)* ................................................................. 10, 11

DB01:2157891.1                                                                                                              059265.1007

## SUMMARY OF ARGUMENT

Recognizing that her First Amendment claim is doomed by the recent holding of the U.S. Supreme Court in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006), Plaintiff Olga Alexander Yatzus ("Yatzus") has submitted an eleventh-hour affidavit now alleging that her speech was <u>not</u> made pursuant to her job responsibilities as a school psychologist, and is an about-face from her deposition testimony. This attempt to manufacture a material fact dispute out of thin air reflects the desperation of her case. Even if the Court was to find that her speech was protected, she has offered no evidence that any adverse actions were taken as a result of this speech. Rather than evidence of a causal link, she offers allegations of a vast conspiracy, complete with the erasing of tapes, hacking into her personal email account, and dispatching of "spies." While they make for entertaining reading, none of these allegations are supported by anything other than her vivid imagination.

Her Title VII claim is similarly baseless, as she has failed to establish any causal link between her protected activity and adverse employment actions. She relies on the allegation that there was a "pattern of antagonism" sufficient to establish the link. The "pattern" consists of mere minor annoyances that would not deter a reasonable employee from pursuing her claims, nor sufficient to establish a "pattern of antagonism."

Rather than refute the validity of the Defendants' concerns about Yatzus's performance problems–which she cannot–Yatzus peppers her brief with inflammatory and sensational allegations entirely unsupported by the record. Yatzus asks the Court to ignore critical pieces of uncontested evidence and make illogical inferences based on others. When the rhetoric is filtered and the record reviewed in its entirety, it is clear that Yatzus's allegation of any causal link is supported only by her own subjective beliefs and after-the-fact inference. As such, summary judgment must be granted.

## ARGUMENT

### I.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON YATZUS'S TITLE VII RETALIATION CLAIM

### A.    Yatzus Has Not Alleged Acts Other Than Reprimands That Constitute Retaliation

Yatzus acknowledges that Individual Defendant Tony Marchio's ("Marchio") questioning regarding her attendance at a conference, delay of a paycheck, and moving her office may be "trivial" in some contexts and unlikely to deter a reasonable employee from pursuing her legal rights. Answering Brief ("Ans. Br.") at 19 (D.I. 53). Indeed, these are exactly the types of "petty slights and minor annoyances" that all employees experience and that the U.S. Supreme Court in *Burlington* specifically excluded from protection under Title VII. *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006). These actions are a far cry from those deemed to be "material" or "likely to dissuade a reasonable employee" in *Burlington*, or in the Seventh and D.C. Circuit cases from which the Court in *Burlington* adopted its standard. *See id.* (citing *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005); *Rochon v. Gonzales*, 438 F.3d 1211, 1217-18 (D.C. Cir. 2006)). *Washington*, like *Burlington*, involved an undesired change of shift for the employee. *Washington*, 420 F.3d at 659. *Rochon* involved the FBI's refusal to investigate employee-plaintiff's allegation of a death threat against him and his family by a prison inmate. *Rochon*, 438 F.3d at 1213. The impact of these actions is clear. Certainly, it is hard to argue that a shift change or the exposure of one's family to physical harm would not deter an employee from pursuing his discrimination claim.

Yatzus's allegations simply do not compare. She does not deny, nor could she, the fact that: following a few questions about the conferences, she was permitted to attend the conferences when and where she requested; that she submitted two timesheets with contradicting hours contributing to a delay in her paycheck; or that other employees were affected by each of her office moves. C26-27; 48-49; 44-47; 34-40. As such, these

are not actions which would dissuade a reasonable worker from pursuing her rights, unlike those in *Burlington*, *Rochon*, or *Washington*.

Nevertheless, she urges that when examined "in context," these actions could be construed as acts of retaliation. Notably, she expects the Court to ignore large portions of the "context" and give unreasonable weight to others. Among other significant pieces of the record, Yatzus asks the Court to ignore that: (1) Marchio had made the decision not to renew **[REDACTED: CONFIDENTIAL MATERIAL]** contract before Yatzus made her complaint of **[REDACTED: CONFIDENTIAL MATERIAL]** (C23; 70-71); (2) Yatzus was pleased with the manner and speed with which the **[REDACTED: CONFIDENTIAL MATERIAL]**was completed and thanked Marchio following its conclusion (C24-25; 74); and (3) **[REDACTED: CONFIDENTIAL MATERIAL]** was in the office only three days following the conclusion of the **[REDACTED: CONFIDENTIAL MATERIAL]** and had no involvement with any school psychologists or educational diagnosticians after that point (C23; 72-73). Given these facts, Yatzus's argument that "context" converts these otherwise trivial actions into retaliatory conduct, is hollow. Yatzus should not be permitted "cherry-pick" the best evidence in attempt to distort the record. *See*, *e.g.*, *Burton v. MBNA America Bank, N.A.*, No 03-915 (GMS), 2005 U.S. Dist. LEXIS 12154 at *24 (D. Del. June 22, 2005) (granting defendant's motion for summary judgment).

Yatzus has offered no motive as to why, in light of these facts, the District began retaliating against her six months after her complaint of **[REDACTED: CONFIDENTIAL MATERIAL]**and continuing for a year after that, culminating in her eventual termination. Her only suggestion of a motive is Marchio's unhappiness with Yatzus because she "contributed to **[REDACTED: CONFIDENTIAL MATERIAL]**not being there." Ans. Br. at 19. Yet, Marchio had already made the determination to remove **[REDACTED: CONFIDENTIAL MATERIAL]** prior to Yatzus's complaint.

Thus, there is simply nothing in the record to support allegiance to **[REDACTED: CONFIDENTIAL MATERIAL]** on behalf of any other Individual Defendant.

The fact that Yatzus was pleased with the investigation and personally thanked Marchio for how it was conducted further dispels any notion that Marchio bore any resentment toward Yatzus based on her complaint.  Finally, any suggestion that Marchio did not act on any alleged misconduct of **[REDACTED: CONFIDENTIAL MATERIAL]** is debunked by the fact that Marchio terminated **[REDACTED: CONFIDENTIAL MATERIAL]** work responsibilities after only three days of work following the investigation's conclusion.

**B.    Yatzus Has Not Alleged Acts Reflecting "Retaliatory Animus" Sufficient To Establish Causation**

Absent these trivial and insignificant actions, there is a six-month gap between her allegation of harassment and the first arguably retaliatory act (her first written reprimand).  Yatzus argues that the above-described actions are evidence of "retaliatory animus" that serve to establish causation even though the gap of time between the protected activity and adverse action is considerable.  Ans. Br. at 21-22.  Not every "petty slight or minor annoyance" experienced by a plaintiff constitutes a "pattern of animus" sufficient to establish causation.  *See Burlington*, *supra*.  Where, as here, the plaintiff's complaints are trivial, and factual accuracy of the reprimands is uncontested or supported by contemporaneous records, there can be no finding of "retaliatory animus." *See Shaner v. Synthes (USA)*, 204 F.3d 494, 505 (3d Cir. 2000).

In *Shaner*, the Third Circuit rejected plaintiff's claim that denial of training, poor performance evaluations, uncomfortable office temperature, and eventual termination established retaliatory animus.  *Id.* at 497.  The Court held that these "minor or trivial actions" are not sufficient to qualify as retaliation.  *Id.* at 506 (quoting *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir. 1998).  The Court further found that Shaner's poor performance evaluations were well-supported and

cautioned against discouraging employers from making legitimate performance evaluations based on the fear of a retaliation claim:

> [W]e are well aware that some employees do not recognize their deficiencies and thus erroneously may attribute negative evaluations to an employer's prejudice. Accordingly, in a case like this in which the circumstances simply cannot support an inference that the evaluations were related to the EEOC charges, a court should not hesitate to say so.

*Id.* at 505. Here, as in *Shaner*, the actions Yatzus complains of simply do not establish "retaliatory animus" when viewed in light of the entire record. Even when viewed in the light most favorable to the plaintiff, they cannot support an inference that the reprimands and termination were related to her protected activity under Title VII. Contrary to Yatzus's argument, the Court can and should grant summary judgment on the issue of causation where the record is devoid of evidence inferring retaliatory intent. *See, e.g.*, *Shaner, supra*; *Burton*, 2005 U.S. Dist. LEXIS, at *16.

**C.     The Record Establishes Defendant's Legitimate Reasons For Non-renewal**

The support for Yatzus's written reprimands is provided, not by District testimony alone as alleged by Yatzus, but by contemporaneous documents and her own admission of their accuracy. *See* Opening Brief ("Op. Br.") (D.I. 46). The District's depiction of events is logical and well-supported by the record, unlike Yatzus's version which is illogical and at times in contradiction to her own portrayal of events at the time. Op. Br. at 7-8, n.2; C4; 28-29. As Yatzus points out, Delaware law requires that an employee receive written notice of any performance concerns before their contract can be non-renewed on that basis. This fact does not support that the Individual Defendants had to fabricate reprimands; it merely supports the point that the Individual Defendants had to document Yatzus's performance problems in order to ensure that a poorly performing employee was not retained.

Her argument that she was singled out for harassment and treated unlike any other school psychologist is similarly unsupported. Yatzus had only been in her position five months when she received her first written reprimand. C1. Thus, the fact she received no reprimands prior to her protected activity is not indicative that the write-ups were unfounded. Moreover, during her employment, Yatzus was the only school psychologist at Middletown High School. C56-57. Individual Defendant Maryann Mieczkowski ("Mieczkowski"), the Director of Special Education, had the authority to delegate District-wide requirements for school psychologists, but individual school principals had the authority to set their own requirements, as long as they were not more lenient than those of the District. C80-81. Thus, there were no "similarly situated" employees as far as Individual Defendant Donna Mitchell's ("Mitchell"), Middletown High School's principal, requirement that Yatzus call out sick via the "sub caller" line; or provide reports 48 hours in advance. Yatzus could have avoided any of these reprimands based on these straight-forward requirements simply by complying with them.

When the rhetoric is filtered out, it can be seen that Yatzus's case relies entirely on her own assertions, unsupported by admissible evidence or documents. Her "post-hoc, ergo propter hoc inference" from the fact she suffered adverse job actions after filing her complaint is not sufficient to establish a causal link. *See, e.g., Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997).[1] Especially where, as here, a plaintiff's claims and the inferences she seeks to draw from them do not hold up under logical analysis, summary judgment is appropriate.

> Judges may, under certain circumstances, lawfully put aside testimony that is so undermined as to be incredible. The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the

---

[1] Yatzus clearly feels she was wronged, but has struggled to pinpoint an illegal cause for her perceived unfair treatment. In her Charge of Discrimination filed with the Delaware Department of Labor, she alleged not only discrimination based on her **[REDACTED: CONFIDENTIAL MATERIAL]** but also based on her race (reverse discrimination by Proffitt) and disability (ADD). C21.

> plaintiff's own self-serving testimony, unsupported by
> corroborating evidence, and undermined either by other
> credible evidence, physical impossibility or other
> persuasive evidence that the plaintiff has deliberately
> committed perjury.  (citations omitted).

*Johnson v. W.M.A.T.A.*, 883 F.2d 125, 128 (D.C. Cir. 1989).

## II.     DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON YATZUS'S FIRST AMENDMENT RETALIATION CLAIM

### A.     Yatzus's Affidavit Regarding The Scope Of Her Job Responsibilities Contradicts Her Deposition Testimony And Must Be Stricken From The Record

In what can be viewed only as a desperate attempt to avoid summary judgment based on the holding of *Garcetti*, Yatzus has submitted an affidavit in conjunction with her Answering Brief, which directly contradicts her earlier deposition testimony regarding her job responsibilities as school psychologist.  At her deposition in March and April of 2006, Yatzus testified affirmatively that she was acting pursuant to her job as school psychologist when she reported concerns about the special education department:

> Q.     Did you think it was part of your job as school psychologist to report this concern?
>
> A.     I think it's part of the role of the school psychologist to be an advocate for children and to see what we could do to make sure we're doing everything that we can to address the law and the needs of the student . . .
>
> Q.     So in your role . . .as student advocate, you thought it was important to report what you perceived as illegal behavior?
>
> A.     Yes.
>
> Q.     Did you think that it was a part of your job?
>
> A.     I felt that it was part of my job.

C41-42.

Now, five months later, apparently dissatisfied with her earlier sworn deposition testimony–which she then said was "true and correct" . . . "under penalty of perjury"–Yatzus attempts to change her story by submitting a self-serving affidavit that flatly contradicts her prior sworn deposition testimony. In her recently proffered affidavit, she claims that: "It is *not* a responsibility or requirement of my position as an employee of the School District to monitor, evaluate and report . . . with respect to how [school administrators] . . . handled students with special needs." July 13, 2006, Affidavit of Olga A. Yatzus ("Yatzus Aff.") at ¶27 (D.I. 55) (emphasis added). While she claims this to be a "clarification" of her earlier testimony, it is a straightforward contradiction

The Third Circuit has held that "[w]hen, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991) (rejecting plaintiff-employee's belated affidavit and affirming the district court's grant of summary judgment for defendant-employer). The Third Circuit also reasoned that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir. 1988) (finding that plaintiff's attempt to defeat summary judgment by proffering an affidavit which contradicted her earlier sworn deposition testimony was properly disregarded by the district court and insufficient to create a genuine issue of material fact).

This Court has also noted that it would be unfair to allow a plaintiff to "pick and choose" its most favorable version of the facts by way of an "eleventh-hour" affidavit. *EEOC v. Rite-Aid Corp.*, No. 03-CV-777-GMS, 2005 U.S. Dist. LEXIS 32898, at *17, n.3 (D. Del. Dec. 12, 2005) (citing *Hackman* and granting defendant-employer's

motion for summary judgment). Yatzus neither claims that she was confused, nor that she, for some other reason, misspoke at her earlier deposition. *See Martin*, 851 F.2d at 705. In fact, she offers no explanation for her sudden contradiction. Yatzus had more than 30 days to correct any testimony via an errata sheet, yet she failed to do so. The only explanation for her about-face in testimony is a desperate attempt to avert certain dismissal based on *Garcetti*. Accordingly, Yatzus's attempt to create a genuine issue of fact through her newly submitted affidavit must be rejected.

**B.    Even If Yatzus's Affidavit Is Considered, Her Speech Is Not Protected Under *Garcetti***

Even if Yatzus's Affidavit is considered, her speech is not protected under *Garcetti*. In her Affidavit, as well as her deposition testimony, Yatzus admits that: "[P]art of [her] function as school psychologist was to be an advocate for each individual student, especially students with disabilities . . . ." Yatzus Aff. at ¶26. In her Answering Brief, Yatzus states, "[c]ertainly when [she] stood up at an IEP meeting and took a stand against other administrators regarding a particular student's rights, that *is* part of her function as an employee of the District." Ans. Br. at 27 (emphasis added). Yet, she attempts to distinguish when she "stood up at an IEP meeting and took a stand against other administrators regarding a particular student's rights," from when she wrote emails to her supervisors "report[ing] on the actions of school administrators . . . with respect to how they and the school district administration handled students with special needs." *Id.* There is simply no basis for this distinction. In both cases, she was acting within her role as advocate for special needs students, and reporting internally what she perceived as problems with the treatment of these students within the organization. Her transparent attempt to tap-dance around the holding in *Garcetti* by drawing an artificial distinction based on the exact wording of her complaints is unavailing.

Moreover, the "emails to her supervisors" are identical the plaintiff's memo in *Garcetti*, which was held to be pursuant to his job responsibilities. In *Garcetti*,

9

DB01:2157891.1                                                                                    059265.1007

the plaintiff, a deputy district attorney, reported via a memo to his supervisor; (1) concerns and problems about an ongoing criminal investigation; (2) allegations of wrongdoing by another public employee, a deputy sheriff, in obtaining a search warrant; (3) opinions on the legality of the search warrant and the deputy sheriff's actions; and (4) recommendations concerning how the investigation should be handled. *Id.* at 1171. Likewise, Yatzus alleged wrongdoing by other District employees (claiming these administrators were "railroading children" and suspending and expelling students "without the right to due process") (C15-17), and rendered her opinion on the legality of the District's actions (stating "you clearly have been in violation of federal law") C11-13.

Therefore, Yatzus's attempt in her Affidavit and brief to distinguish between the different types of speech she made on behalf of special education students is unavailing. All of her speech was pursuant to her self-described (in both her testimony and Affidavit) responsibility as a school psychologist to act as an advocate for special education students, including her comments about the conduct of specific personnel.

Yatzus makes an additional, meaningless distinction between "ethical" versus "job duties." She contends in her Answering Brief that reporting "problems in the operation of [the] special education system . . . is an ethical obligation of a 'school psychologist,' but not a duty as an employee of the District," and cites *Wilcoxon v. Red Clay Consol. Sch. Dist.,* No. 05-524-SLR, 2006 U.S. Dist. LEXIS 45294, at **21-22 (D. Del. June 30, 2006) as the sole case law in support of this proposition. *See* Ans. Br. at 28. Yatzus's attempt to rely on *Wilcoxon* for the proposition that there exists some sort of distinction between "moral or ethical" job obligations versus official employee job obligations as part of the *Garcetti* analysis is baseless. In *Wilcoxon*, which ruled on the defendant's motion to dismiss, the Court determined that plaintiff-teacher's keeping of a private journal containing the absences of a fellow teacher was not pursuant to his official

10

duties as a teacher.[2]  *Id.* at *20.  This is a far cry from Yatzus's speech regarding the treatment of special education students, which she voiced in multiple forums within the District.  At no point in its opinion did the Court in *Wilcoxon* make (or even suggest) that there exists any distinction between ethical and employment duties for purposes of its *Garcetti* analysis.

Moreover, the U.S. Supreme Court implicitly rejected any such distinction in *Garcetti*.  The plaintiff in *Garcetti* was a practicing attorney and therefore bound to speak in his situation, pursuant to the canons of his profession.  *See id.* at 1974 (Breyer, J., dissenting).  Yet, the majority opinion did not consider this fact in determining that his statements were made pursuant to his official duties as an employee.  *Id.* at 1960. Accordingly, Yatzus's attempt to carve out an exception to *Garcetti*'s holding for "ethical responsibilities" must fail.  The fact that certain speech may be ethically obligated by a professional, does not mean it is removed from his job responsibilities.

**C.     Yatzus's Speech Should Not Be Protected Because It Is Of Limited Value Under The *Pickering* Balancing**

Assuming *arguendo* that Yatzus was speaking as a public citizen, Defendant is nonetheless entitled to summary judgment as a matter of law on her First Amendment retaliation claim because the alleged speech cannot survive the balancing required by *Pickering v. Board of Education*, 391 U.S. 563 (1968) and its progeny. *Pickering* identified five factors in determining whether First Amendment rights outweigh the government's interest: (1) the closeness of the relationship between the employer and the employee and the need for personal loyalty or confidence; (2) the effect of the speech on discipline by the employee's immediate supervisors; (3) its effect on harmony among the employee's co-workers; (4) its effect on the employee's job performance; and (5)

---

[2]Moreover, as the *Wilcoxon* decision was on a motion to dismiss, there was no record on this issue.  Certainly, there was no statement by the plaintiff in his deposition regarding whether or not keeping this private journal was part of his job responsibilities.

its impact on the general operation of the employer's enterprise. *Id.* at 570-73, *see also Rankin v. McPherson*, 483 U.S. 378, 388 (1987).[3]

In applying the *Pickering* test, the Third Circuit has taught that courts should look to the "extent to which the . . . speech . . . disrupts the working of the office . . .," as well as whether "the employee uses the public speech [simply] to resolve an essentially private grievance." *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993). Where the bulk of a plaintiff's concerns are not matters of public concern, but internal affairs, they should not be protected. *See, e.g., Leonard v. Lipsey*, No. 3:04CV7632, 2006 U.S. Dist. LEXIS 37654 at *13 (D. Ohio June 8, 2006); *Ryan v. Shawnee Mission Unified Sch. Dist.*, No. 05-2213-JWL, 2006 U.S. Dist. LEXIS 4631, at *44 (D. Kan. July 7, 2006). Here, Yatzus's protected speech, which consists primarily of her emails to Individual Defendants in April of 2004, was in response to criticisms about her performance. The majority of her allegedly protected emails consist of multiple pages defending her performance or describing a particular situation with a student, concluded by a sentence or two citing "compliance issues" or stating that "you clearly have been in violation of federal law." C8; 11-13.

Her primary concern was a personal one, even though at times it was carefully couched in terms of her concerns about the treatment of special education students. Her emails consisted of generalized rhetoric and offered little in the way of specific problems or solutions. Vague allegations that the school was being run like a "police state" and that kids were "falling through the cracks" offer little in the way of public concern. C18-19. Nor do accusations that her supervisor is disrespectful or unprofessional. C18. As such, their value is limited and should not be protected.

---

[3]The factors identified in *Pickering* are not, however, exclusive. *Kinsey v. Salado Indep. Sch. Dist.*, 916 F.2d 273, 279 n.6 (5th Cir. 1992) ("We do not suggest that the factors enumerated in *Pickering* and its progeny are meant to be exclusive of all others. Each individual set of facts may suggest new avenues of analysis.").

**D.    The Record Does Not Support A Finding That Yatzus's**
**Protected Speech Was A Substantial Or Motivating Factor**
**In Defendants' Adverse Employment Actions**

On page 25 of her Answering Brief, Yatzus for the first time identifies the

exact communications constituting her "protected speech." Her "association with" or

assistance to members of the "PACT" group does not constitute "speech."[4]  Yatzus has

not identified any communications from Yatzus to members of the PACT group, other

than emails which she alleges that Defendants viewed by illegally hacking into her AOL

account.  Ans. Br. at 25.  The former sole support she offers for this sensational allegation

is the testimony of Sharon Hill, a former District employee and officemate of Yatzus's.

Hill makes no suggestion whatsoever that anyone at the District reviewed any

correspondence between Yatzus and parents of special education students.  Hill testified

only that she walked into her office one day to find two District computer technicians,

with Marion Proffitt's supervision, reviewing information on Yatzus's computer.  C67-68.

Hill believed she saw an AOL account on Yatzus's screen.  C68.

Of course, access to anyone's personal AOL account would require

knowledge of a password.  This is apparently why Yatzus claims that the District

"illegally hacked" into her account.  It strains credulity that District personnel would

"illegally hack" into her account and review her email communications in the presence of

witnesses, since this could be accomplished from any computer.  Proffitt testified that she

was summoned by Mieczkowski to retrieve student records she required in Yatzus's

absence.  C53-54.  Yatzus fails to mention that according to her own reports, another

employee's, Phyllis Waecker, computer was reviewed at the same time.  C14.  Waecker,

the Special Education secretary, never alleged **[REDACTED: CONFIDENTIAL**

**MATERIAL]**, nor engaged in any speech protected by the First Amendment.  The fact

that Waecker's computer was also "broken into" supports the District's version of events

---

[4]Although Yatzus now refers to her "association with" the parents' group, her complaint
does not include any freedom of association allegations.

13

and refutes any allegation of impropriety. Yatzus's assertion that this "illegal hacking" is "perhaps the most telling," is revealing only of the weakness of her case.

The remaining communications identified by Yatzus as protected by the First Amendment constitute her email communications to Individual Defendants attached as Exhibit 7 to her Affidavit.[5] Rather than providing any factual evidence in support of her argument that these emails were related to her reprimands, she makes inflammatory and unsupported allegations, distorts the record, and cites to "rude and disrespectful behavior" by Mieczkowski and the pure speculation of two other employees as to the District's motive. In addition to the allegation that Defendants illegally "hacked" into Yatzus's email account, Yatzus makes further sensational and unsupported allegations that Defendants erased, suppressed, or manufactured evidence.

Yatzus alleges that the District "erased a tape of her [grievance hearing] to make further review impossible." Ans. Br. at 10. [6]

Yatzus's sole support for this conspiratorial allegation is hearsay from Vicky Boyd, Yatzus's union representative, stating that Ruth Ann O'Grady, Marchio's former secretary, "fell all over herself apologizing because there is no tape of the hearing" and speculating that she hit "listen" instead of "record" on the tape machine. C9. Far from suggesting a conspiracy to eradicate telling evidence, Boyd's email suggests quite the opposite. Boyd tells Yatzus that she "didn't see any subterfuge in this, as they [the District] wanted it taped too" and that "[t]here probably wasn't anything terribly important to record, anyway." *Id.* There is little reason to doubt this interpretation from Yatzus's union representative, in whom Yatzus confided every detail of her perceived

---

[5]Yatzus acknowledges that when she "stood up at an IEP meeting and took a stand against other administrators regarding a particular student's rights, that this is part of her function as an employee of the District" and therefore not protected speech under *Garcetti*. Ans. Br. at 27.

[6]Grievance hearings are generally not recorded, but they would be at the union's request. C75.

mistreatment and sought advice on how to pursue her claims and who apparently requested the tape recording herself. C30.

Yatzus further alleges that the District "suppressed" evidence that should have been considered during her grievance hearing. The "suppressed" evidence was an email from the Waecker to Mitchell stating that she had never emailed a notice of the meeting to which Yatzus arrived late and was disciplined for. C7. Whether or not this email was sent is immaterial. Yatzus does not deny that she received notice of the meeting in advance and had planned on attending. Op. Brief at 12; C33. Rather, she claims that she got tied up with a "manicky" student and then could not locate the meeting. C31-32. The fact that this email was produced for the first time in response to a discovery request, following a comprehensive search of the email system for relevant communications, in no way suggests that this immaterial "evidence" was earlier suppressed or ignored.

Yatzus again claims that the District "manufactured" evidence by placing false communications in Yatzus's and Hill's personnel files. The District's Human Resources Director during Yatzus's employment was Zen Marusa, who authored all the "fabricated" documents referred to in Op. Br. at 12, fn. 2. The fact there were two letters in Yatzus's file signed by Marusa, with the same content, but one addressed to "Yatzus" instead of "Mrs. Yatzus" hardly suggests a conspiracy to "manufacture[] . . . false letters" as argued by Yatzus. *Id.* At best, it reflects sloppy recordkeeping by retaining multiple drafts of the letter, explicable given the terminal and debilitating illness from which Marusa was suffering at the time. C78.

Similarly, the fact that a termination letter to Hill remained in the file, despite the fact the District allowed her to resign following her acceptance of another position, is also not suggestive of any improper motives. If the District were trying to create a different record, it would not have left multiple versions in her file, but retained

only the version which supported its position. Again, this reflects sloppy recordkeeping, not the manufacturing or destruction of evidence.

Yatzus also alleges other employees (Hill and Gary Berg, another Educational Diagnostician) were asked to spy and/or report on Yatzus's activity to Individual Defendants. There is no admissible evidence to support this accusation. Yatzus's support for the allegation that Marchio asked Berg to report on Yatzus's activities is based solely on inadmissible hearsay.[7]

Proffitt's alleged request of Hill to "get this back into shape and to tell us what Olga is doing" is hardly suggestive of retaliatory intent. Even Hill's description that Proffitt's statement reflected a "gotcha mentality" and that the environment at the District was "toxic" does not reflect retaliatory intent. No one, including Hill, provided any factual evidence that this alleged environment had anything to do with Yatzus's protected activity. Hill, Waecker, Sweeney, and Green apparently all suffered from the same environment, and yet none has alleged they were **[REDACTED: CONFIDENTIAL MATERIAL]** or made First Amendment protected speech. C65-66. To the extent such an environment existed, it is logically explained by the frustration on behalf of District administrators that Yatzus was not doing her job.

Hill's and Green's speculation as to the District's motivation for the alleged hostile work environment should not be considered as evidence supporting the District's intent. Neither witness reports admissions from Defendants about their motive, nor do they report primary facts from which a reasonable person would infer a discriminatory motive. "Discrimination law would be unmanageable if disgruntled employees–friends of the plaintiff and often people in the same legal position as plaintiff–could defeat summary judgment by . . . speculating about the defendant's motives." *Visser v. Packer Eng'g Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991) (granting summary judgment for

---

[7]Chet Hadley testified that Berg told him, that Marchio told him, to gather the information. C61-63.

defendant and rejecting as evidence of discrimination speculation by other employees as to the employer's discriminatory motive).  As such, Hill's and Green's speculations as to motive must be disregarded.

Yatzus further claims that Mitchell and Mieczkowski were hostile toward Yatzus because she spoke in favor of students, or tried to communicate with parents. Ans. Br. at 30.  Yet, she offers no support as this for the cause other than her own speculation and those of other disgruntled employees or ex-employees.  Her allegation that Mitchell told her to lie is based on Yatzus's self-serving testimony alone.  She claims that Mitchell admitted to being upset with Yatzus for not presenting a united front against parents in IEP meetings, but Mitchell's complete testimony reflects that she was upset by being blind-sided in the meetings by not knowing Yatzus's feelings and being unable to line up the services the student would require based on Yatzus's opinion in advance of the meeting.  C58-59.  Her general allegations of "rude or disrespectful behavior" on the part of Mitchell and Mieczkowski (Ans. Br. at 30) similarly reported by other employees who had not engaged in protected activity are simply insufficient to establish causation.

## III.    IMPLIED COVENANT CLAIM MUST FAIL[8]

Yatzus claims in her Answering Brief that her breach of implied covenant claim survives a motion for summary judgment because of a genuine dispute as to whether she was terminated, in violation of public policy, for reporting legal violations concerning special education students.[9]  In order to state a valid public policy implied covenant claim, she must "assert a public interest recognized by some legislative,

---

[8]Yatzus apparently concedes that her claim for intentional infliction of emotional distress must be dismissed.

[9]The fact that this prong (one of three) of Yatzus's implied covenant claim was not addressed in the District's Opening Brief does not mean it is waived.  The District responds here only to the arguments raised in Yatzus's Answering Brief and does not present any new arguments.  Thus, there is no prejudice to Yatzus.

059265.1007

administrative or judicial authority." *Lord v. Souder*, 748 A.2d 393, 401 (Del. 2000)
(*citing E.I. Dupont de Nemours and Co. v. Pressman*, 679 A.2d 436, 441 (Del. 1996).

        Yatzus claims that the policy of protecting or advancing free public
education is a legislatively recognized public policy in Delaware and identifies Article X
of the Delaware Constitution and Title 7 of the Delaware Code in support thereof.
Article X of the Delaware Constitution makes no mention of reporting legal violations,
and addresses only the creation of an educational system; Title 7 addresses conservation
issues and is unrelated to education.  Even assuming that the Plaintiff intended to refer to
Title 14, which does address education, the citing to an entire code section does not
support a public interest sufficient to state a public policy implied covenant claim.  *See
Lord*, 748 A.2d at 401.

        In *Lord*, the plaintiff, Lord, an administrative secretary in a nursing home,
became aware that Souder, the executive director of the nursing home, had engaged in
illegal activity and was later terminated.  *Id.* at 396-97.  Lord reported the violations to
the vice-president of human resources, who investigated and reprimanded Souder.  *Id.* at
397.  In support of Lord's implied covenant claim, she pointed to a Delaware law
mandating that employees of a nursing home report any abuse of residents to the
Department of Health and Social Services.  *Id.* at 401.  The court dismissed her implied
covenant claim, holding that this statute was insufficient to implicate a public interest
where it specified the reporting of abuse to the Department of Health, not to a supervisor.
*Id.*

        *Lord* shows the high level of specificity with which a plaintiff must assert
her public policy implied covenant claim.  If the Delaware Supreme Court would refuse
to recognize Lord's claim because her situation did not meet the precise wording of the
statute, it would certainly not recognize, for purposes of a public policy implied covenant
claim, a policy as broad as "advancement of public education," based on nothing more
specific than citation to the entire educational provisions of the Delaware Constitution

059265.1007

and Code.  Such an interpretation would "swallow the doctrine of employment at will" and must not be permitted.  *See Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 334 (3d Cir. 2003) (*citing Pressman*, 679 A.2d at 442).

## CONCLUSION

For the reasons and authorities cited herein, Defendant's motion for

summary judgment should be granted, and Plaintiff's complaint dismissed in its entirety.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli

William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building, 17th Floor
1000 West Street, P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

DATED:    July 28, 2006

059265.1007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OLGA ALEXANDRA YATZUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 05-103-SLR |
| | ) | |
| APPOQUINIMINK SCHOOL DISTRICT | ) | |
| and TONY MARCHIO, individually and in | ) | **TRIAL BY JURY DEMANDED** |
| his official capacity, MARY ANN | ) | |
| MIECZKOWSKI, individually and in her | ) | |
| official capacity, DONNA MITCHELL, | ) | |
| individually and in her official capacity, and | ) | |
| MARION PROFFITT, individually and in | ) | |
| her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Adria B. Martinelli, Esquire, hereby certify that on July 28, 2006, I

electronically filed a true and correct copy of the foregoing **Defendant Appoquinimink School**

**District's Reply Brief in Support of Its Motion for Summary Judgment (REDACTED)** with

the Clerk of the Court using CM/ECF, which will send notification that such filing is available

for viewing and downloading to the following counsel of record:

Philip B. Bartoshesky, Esquire (#2056)
Biggs & Battaglia
912 N. Orange Street
P.O. Box 1489
Wilmington, DE 19899

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Adria B. Martinelli
William W. Bowser, Esquire (Bar I.D. 2239)
Adria B. Martinelli, Esquire (Bar I.D. 4056)
The Brandywine Building
1000 West Street
Wilmington, Delaware 19801
Telephone: (302) 571-6601, 6613
Facsimile: (302) 576-3282, 3314
Email: wbowser@ycst.com; amartinelli@ycst.com

059265.1007